UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ONYX WHITE and SINCERE NORTHCROSS, Plaintiffs, | ) | |
| v. | ) | CIVIL ACTION NO. 1:26-cv-10046-DJC |
| THE COMMONWEALTH OF MASSACHUSETTS, et al., Defendants. | ) | |

**TROOPER YASMIN SOBRINHO SILVA'S MEMORANDUM OF LAW FILED IN SUPPORT OF HER MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff Onyx White ("White") seeks money damages in the amount of $100,000,000 through this civil rights action he has brought in a *pro se* capacity against various public officials and entities, including Tpr. Yasmin Sobrinho Silva ("Sobrinho Silva"), the state trooper who issued White a speeding ticket for operating a motor vehicle at ninety-four (94) miles per hour when the speed limit was sixty-five (65) miles per hour. Sobrinho Silva arrested White for reckless operation (M. G. L. c. 90, § 24) and requested through the Registry of Motor Vehicles that his license be suspended because his driving constituted an Immediate Threat (Doc. No. 1-1, 26).

Acting in his *pro se* capacity, White has added his brother, Sincere Northcross ("Northcross"), to the complaint, although Northcross has not signed the complaint. By law, an individual may appear in federal courts only *pro se* or through legal counsel. See, 28 U.S.C. § 1654. *Pro se* litigants may not appear for others in federal courts, and thus White, who is not an attorney, lacks the representative capacity to sign the complaint on behalf of his brother. Fed. R. Civ. P. 11. Northcross is seeking $3,000,000 in damages for the harm he alleges he suffered when he was the passenger in the motor vehicle being operated by his brother, White.

Plaintiffs have created another insurmountable barrier by naming Sobrinho Silva in her official capacity. The doctrine of Sovereign immunity protects Sobrinho Silva from the official capacity claims. See, Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

Leaving aside the defense to the official capacity claims for a moment, neither Plaintiff makes out a compensable claim through their ten-count complaint. Counts I, II, III, IV, VI, and X, seeks relief for alleged violations of Plaintiffs' constitutional rights utilizing 42 U.S.C. § 1983. Through Count V, Plaintiffs bring a claim of discrimination under the Americans With Disabilities Act ("ADA") alleging discrimination based on a disability. Finally, through Counts VII, VIII, and IX, Plaintiff seek to utilize state-based claims to procure money damages. As fully developed below, Plaintiffs' complaint should be dismissed as it fails to set forth a set a facts upon which recovery may be had. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Finally, Sobrinho Silva is entitled to qualified immunity for any alleged deprivation of a right as both the citation she issued White and the arrest she made of White were based on probable cause. Any action she took toward Northcross did not result in a violation of his rights. Pearson v. Callahan, 555 U.S. 223, 231 (2009); Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004).

## II. STANDARD OF REVIEW

The facts presented below are assessed pursuant to the well-settled standard of review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) obligating the Court to "take the allegations in the complaint as true and grant all reasonable inferences in favor of the plaintiff." Monahan v. Dorchester Counseling Ctr., 961 F.2d 987, 988 (1st Cir. 1992) (internal citation omitted). Defendant Sobrinho Silva reserves her right to challenge Plaintiff's factual allegations in subsequent parts of this proceeding, if any.

To survive a motion to dismiss pursuant to Rule 12

> "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)…Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S. Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 556 U.S. at 678.

Although Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint that does not go beyond "labels and conclusions…, and a formulaic recitation of the elements of a cause of action will not do…" Bell Atl. Corp., 550 U.S. at 555. A court may disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008).

Courts may also consider evidence outside the complaint if the evidence is incorporated by reference into the complaint. Johnson v. City of Atlanta, 107 F.4th 1292, 1300 (11th Cir. 2024) (Unchallenged body camera and dashcam video footage captured the events central to the complaint and were properly considered at the motion to dismiss stage); Bowman v. Monteiro, No. 24-CV-10850-AK, 2025 WL 2174871, at *2 (D. Mass. July 31, 2025) (concluding that properly authenticated body-worn camera footage that is central to plaintiff's claims may be considered for purposes of a motion to dismiss). "[D]ocuments the authenticity of which are not disputed by the parties; ... official public records; ... documents central to plaintiffs' claim; or ... documents sufficiently referred to in the complaint" are properly considered. Flores v. OneWest Bank, F.S.B., 886 F.3d 160, 167 (1st Cir. 2018) (internal citation omitted).

Even granting the *pro se* litigants a liberal reading of this complaint, the Plaintiffs must plead specific facts to back up their claims of civil rights violations. Glaros v. Perse, 628 F.2d 679, 684 (1st Cir. 1980)(internal citations omitted) because "a complaint does [not] suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement'" Ashcroft, 556 U.S. 678, citing Twombly, 550 U.S, at 557.

## III. RELEVANT FACTUAL ALLEGATIONS

On April 9, 2025, at approximately 5:00 p.m., the Plaintiffs, White and Northcross, were traveling westbound on Interstate 84 in the community of Sturbridge, Massachusetts (Doc. No. 1, 3, B). At the same time and place, Sobrinho Silva was in the midst of a stationary radar enforcement operation monitoring the passing traffic (Doc. No. 1-1, 19). The vehicle being operated by White was recorded by Sobrinho Silva's radar/lidar equipment as travelling at a speed of ninety-four (94) miles per hour when the speed limit on the highway was sixty-five (65) miles per hour (Doc. No. 1-1, 19, Exhibit 1, BWC Video, 2:23–2:48). White's vehicle travelled several miles before Sobrinho Silva could catch up with the vehicle and activate her lights to indicate to White that he needed to pull over (Doc. No. 1-1, 19). White initially pulled over in the far-left lane of the highway. Sobrinho Silva approached White and directed him to pull over into the far-right breakdown lane. White complied (Doc. No. 1-1, 19, Exhibit 1, 00:40–00:42).

Plaintiffs' complaint alleges, without more, that their disabilities were not accommodated during their roadside encounter with Sobrinho Silva (Doc. No. 1, 3, D).

During his transport to the barracks, White declared to Sobrinho Silva that he was a religious person. A short exchange between Sobrinho Silva and White discussing White's beliefs followed (Doc. No. 1, 3, E, Exhibit 1, 34:08–35:00).

As a result of this motorist-law enforcement encounter, White was issued a citation for the civil infraction of speeding and was arrested for reckless operation of a motor vehicle (D.N. 1-3, ¶ 7). In addition, Sobrinho Silva filed a notice with the Registry of Motor Vehicles that resulted in the immediate suspension of White's driving privileges pending the outcome of

proceedings against White. Through his complaint, White alleges that the notice to the RMV was done in retaliation for White speaking out against his arrest (Doc. No. 1, 4).

Because Northcross did not have a valid driver's license, he was not allowed to drive the rental car White was operating (Doc. No. 1-1, 20, 23, Exhibit 1, 11:10–11:34). Instead, he was offered transportation to the barracks so that he could wait for White to be bailed (Doc. No. 1, 3).

## IV. ARGUMENT

### A. Plaintiffs' Claims Against Sobrinho Silva in her Official Capacity Fail as a Matter of Law.

Sobrihno Silva first moves to dismiss the claims against her in her official capacity based on the Eleventh Amendment. Since a defense relying upon the Eleventh Amendment raises a jurisdictional question, see, Fed. R. Civ. P. 12(b)(1) and Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105 (1st Cir. 2015), it should ordinarily be decided first. Northeast Erectors Ass'n of BTEA v. Secretary of Labor, Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995).

Plaintiffs declare, without elaboration, that Sobrinho Silva is being sued in her "official capacity" (Doc. No. 1, 2, III). Sovereign immunity precludes Plaintiffs from pursing any claims against Sobrinho Silva in her "official capacity." "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. at 71 (citations omitted).

State officials, such as Sobrinho Silva, acting in their official capacity are considered to be an extension of the state; therefore, they are entitled to sovereign immunity as they do not constitute a "person" under Section 1983. Id. at 71 (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). The Eleventh Amendment

provides that "[t]he Judicial power of the United States shall not be construed to abrogate the Commonwealth's sovereign immunity. See Quern v. Jordan, 440 U.S. 332, 341–42 (1979) ("[W]e simply are unwilling to believe...that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."). Dismissal of any claim against Sobrinho Silva in her "official capacity" is required because "a state official acting in his official capacity may [not] be sued for damages in a section 1983 action.'" Fantini v. Salem State College, 557 F.3d 22, 33 (1st Cir.2009) (internal citation omitted).

Based on the foregoing, so much of Plaintiffs' complaint seeking damages against Sobrinho Silva for conduct undertaken in her "official capacity" should be dismissed based on a lack of subject matter jurisdiction. Mulero-Carrillo, 790 F.3d at 105; Fed. R. Civ. P. 12(b)(1).

**B. Plaintiff Sincere Northcross's Claims Must Be Dismissed as White May Not Represent His Brother in this Proceeding.**

The Plaintiffs filed an eight-page verified complaint (Doc. No. 1); however, only White signed and attested to the complaint (Doc. No. 1, p. 8). Nowhere within the four corners of the complaint can there be found a signature from Northcross. Pursuant to Fed. R. Civ. P. 11(a), if a party is not represented by an attorney, the party must sign every pleading, written motion, and other paper. The rule directs that "an unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." Fed. R. Civ. P. 11(a). That has not happened here.

Rule 11 also applies in cases where multiple *pro se* plaintiffs are involved. In such circumstances, each plaintiff must sign each pleading, written motion and other paper. See cf., e.g., Casanova v. Dubois, 289 F.3d 142 (1st Cir. 2002)(all defendants required to sign notice of appeal).

White's signature and verification of his complaint do not carry over to meet Northcross's independent obligation to sign the complaint because as a matter of law, a *pro se* litigant may not represent others in federal court. See Herrera–Venegas v. Sanchez–Rivera*,* 681 F.2d 41, 42 (1st Cir.1982) ("federal courts have consistently rejected attempts at third-party lay representation"). "Accordingly, *a pro se* party cannot represent people other than him or herself." Hootstein v. Amherst-Pelham Reg. Sch. Comm., 361 F. Supp. 3d 94, 101 (D. Mass. 2019)(internal citation omitted).

Northcross's signature is not the only thing that is missing as Rule 11 is clear in the requirement that "[t]he paper must state the signer's address, e-mail address, and telephone number." See, Fed. R. Civ. P. 11. Northcross's failure to provide such information has made it impossible for counsel to confer with him. See attached L.R. 7.1 Certification.

Based on the foregoing, all claims as asserted by Northcross should be dismissed based on his failure to comply with Fed. R. Civ. P. 11.

**C. Count I Fails to Make Out a Fourth Amendment Violation as Plaintiff's Detention Was Based on Probable Cause**

Plaintiffs have utilized 42 U.S.C. § 1983, a statute providing "remedies for deprivations of rights established elsewhere" Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985), quoting Baker v. McCollan, 443 U.S. 137 (1979) as the vehicle through which they seek to pursue claims for their alleged harms. Through Count I, Plaintiffs seek to recover damages for alleged violations of rights as conferred through the Fourth Amendment. A review of the complaint does nothing to support their claim for compensation based on a Fourth Amendment violation. If anything, the body worn camera video of the encounter undermines any claim that Plaintiffs' rights under the Fourth Amendment were interfered with through the stop (Exhibit 1, 2:26–2:29, White: "I don't know if I was going that fast. I know I was going fast").

Sobrinho Silva's decision to effect the traffic stop of White was justified because Sobrinho Silva had both reasonable suspicion and probable cause that White had committed a traffic violation (Doc. No. 1-1, 19). Commonwealth v. Ramirez, 92 Mass. App. Ct. 742, 744–45, (2018). See, Commonwealth v. Rodriguez, 472 Mass. 767, 776 (2015). Both the United States Supreme Court and the Commonwealth's Supreme Judicial Court have unequivocally declared that a police officer who has reasonable suspicion that a citizen has violated a traffic law may initiate a motor vehicle stop of that citizen. Heien v. North Carolina, 574 U.S. 54 (2014); Commonwealth v. Heughan, 40 Mass. App. Ct. 102, 104 (1996); and see, United States v. Chaney, 584 F.3d 20, 24 (1st Cir. 2009) ("traffic stop constitutes a seizure...and thus must be supported by reasonable suspicion that a traffic violation has occurred" emphasis supplied). In cases dating back to at least 1968, the Supreme Court has found that the stop of a citizen while a police officer investigates a crime or traffic violation does not violate the Fourth Amendment. Terry v. Ohio, 391 U.S. 1 (1968). Here, Sobrinho Silva had the probable cause to issue White a traffic citation for speeding and to arrest him for reckless operation of a motor vehicle (Doc. No. 1-1, 19, n. 1). See, M. G. L. c. 90, § 17; M. G. L. c. 90, § 24; Commonwealth v. Rodriguez, 472 Mass. at 773; ("c. 90C, §§ 2 and 3(A), implicitly authorize police officers to stop motor vehicles in order to issue traffic citations").

Sobrinho Silva was engaged in lawful conduct in furtherance of the "significant government interest of ensuring public safety on our roadways" Commonwealth v. Buckley, 478 Mass. 861, 869 (2018) when she initiated the motor vehicle stop of White after she personally observed Plaintiff travelling at a rate of no less than ninety-four miles (94) per hour when the lawful maximum speed was sixty-five miles (65) per hour (Doc. No. 1-1, 19). "Permitting [motor vehicle] stops based on reasonable suspicion or probable cause that [traffic] laws may have been

violated gives police the ability to immediately address potential safety hazards on the road." Commonwealth v. Larose, 483 Mass. 323 at 327–328 (2019). Sobrinho Silva's efforts to stop White to address a safety issue was most certainly called for and was undertaken in furtherance of the "significant public interest of ensuring public safety on the roads of the Commonwealth."[1] Commonwealth v. Buckley, 478 Mass. at 869; Larose, 483 Mass. at 327–328 (Exhibit 1, 01:26–02:48).

Because the motor vehicle stop of White was supported by the reasonable suspicion established when Sobrinho Silva personally observed the traffic offenses as committed by White, he has no Fourth Amendment claim based on the stop itself (Doc. No. 1-1, 19). Commonwealth v. Amado, 474 Mass. 147, 151 (2016) ("Where the police have observed a traffic violation, they are warranted in stopping a vehicle."); Washington, 459 Mass. at 39, n. 14 (reasonable suspicion for motor vehicle stop, probable cause for issuance of citation). White, therefore, fails to set out a deprivation of a Fourth Amendment protected right based on the stop and issuance of a traffic violation and his claim, therefore, fails as a matter of law. Constitutional claims pursued under 42 U.S.C. § 1983 must allege that a person acting under color of state law committed conduct that deprived the plaintiff of a constitutional or federally protected right. Gutierrez-Rodriguez v. Carteagena, 882 F.2d 553, 559 (1st Cir. 1989). Since a motorist, such as White, does not have a constitutional or federally protected right to operate a motor vehicle in violation of the traffic laws of the Commonwealth, his claims based on a deprivation of his Fourth Amendment rights fail. Harper v. Booth, 382 F.Supp.3d 124, 128 (2019)(Exhibit 1, 02:26–02:29).

[1] "As I caught up to the White Chevrolet SUV, I clocked and estimated its speeds to be over 100mph, and I was not able to catch up to the vehicle in the left travel land until almost 3 miles after I originally saw it due to its high speeds. This rate of speed and manner of operation shows an indifference to the motoring public, as any crash that occurs at those speeds will likely result in someone's death or serious injury." (Doc. No. 1-1, 19).

To the extent White relies on his multiple court appearances to establish a deprivation of a Fourth Amendment right, such appearances do not constitute a Constitutional violation. That is particularly true here, as a number of the appearances were made to defend against the civil motor vehicle violations and not the criminal charge (Doc. No. 1, 7). Nieves v. McSweeney, 241 F.3d 46, 55 (1st Cir. 2001).

To the extent that White's Fourth Amendment claim rests on his being arrested for reckless operation of a motor vehicle, since there was probable cause for his arrest (Doc. No. 1-1, 19), the above argument applies and, therefore, White has failed to set out a Fourth Amendment violation.

Should Northcross suggest his rights under the Fourth Amendment were violated, that claim must be dismissed as there are no facts to support it. Ashcroft, 556 U.S. at 677–678. ("Nor does a Complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Furthermore, the detention of "a passenger during a traffic stop, even without a particularized reasonable suspicion that the passenger has committed any crime" does not violate the Fourth Amendment. United States v. Starks, 301 F. Supp. 2d 76, 82 (D. Mass. 2004). Qualified Immunity applies as Sobrinho Silva's conduct "does not violate clearly established statutory authority or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Based on the foregoing, Count I should be dismissed in its entirety.

**D. Count II Fails as Handcuffing a Compliant Subject is Not Excessive Force**

White also alleges that he was subjected to excessive force during his arrest (Doc. No. 1, 3). This claim fails the Fed. R. Civ. P. 12(b)(6) standard as there are no facts alleged that amount

to excessive force. Plaintiffs' "complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft, 556 U.S. at 678.

Here, Plaintiffs have not asserted any facts to support the claim that excessive force was used. This requirement applies even here where White is acting *pro se* and is entitled to a liberal reading of his complaint as that deference does not excuse the Plaintiff from the requirement that he must plead specific facts to back up his claims of a civil rights violation. Glaros v. Perse, 628 F.2d at 684 (internal citations omitted). White only sets forth that he was handcuffed. He does not allege any injury from the handcuffing, nor could he (Doc. No. 1, 3, Exhibit 1, 09:33–11:00).

Under the recently adopted regulations adopted by the Commonwealth's Peace Officer Standards and Training Commission, merely handcuffing an arrestee, as was done here, is not a use of force. "Physically escorting or handcuffing an individual with minimal or no resistance does not constitute a use of force for purposes of 555 CMR 6.04." 555 Code Mass. Regs. § 6.04 (2022) (Exhibit 1, 09:33–11:00).

"To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances." Conlon v. City of Newton, Civil Action 23-10026-FDS (D. Mass. Jun. 21, 2024), quoting Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007) (citing Graham v. Connor, 490 U.S. 386, 397 (1989)). Handcuffing someone who is under arrest is reasonable conduct. Id.

Since White does not complain of injury as a result of his being handcuffed, he has failed to meet the 12(b)(6) standard. See, Dean v. City of Worcester, 924 F.2d 364, 368–369 (1st Cir. 1991), citing Graham; and see also, Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015) (extent of injuries proper consideration in assessing if excessive force was used in pre-trial detainee setting); Harlow v. Fitzgerald, 457 U.S. at 818 (failure to establish a violation of a right).

Because there are no facts to back up the allegation of excessive force, Count II should be dismissed. Ashcroft, 556 U.S. at 677–678. ("Nor does a Complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").

**E. Count III Fails as There Was Probable Cause for White's Arrest**

In order for White to prevail on a malicious prosecution claim, he must first establish that there was no probable cause for his arrest as "the absence of probable cause to initiate" the criminal proceedings is a necessary component of the claim, Meehan v. Town of Plymouth, 167 F.3d 85, 89–90 (1st Cir. 1999). Here, probable cause was established at that point when Sobrinho Silva personally observed White operating his vehicle in a reckless manner (Doc. No. 1-1, 19, n.1). Probable cause is a "considerably less exacting" standard than that required to support a conviction at trial. Commonwealth v. O'Dell, 392 Mass. 445, 451 (1984). Probable cause requires "sufficient facts to warrant a person of reasonable caution in believing that an offense has been committed;" it does not require proof beyond a reasonable doubt. Commonwealth v. Levesque, 436 Mass. 443, 447 (2002)(internal citations omitted).

Any effort White might undertake to bootstrap an argument that probable cause was lacking because his charge was eventually dismissed would be unavailing as probable cause is determined at the time of the arrest. Goddard v. Kelley, 629 F. Supp. 2d 115, 130 (D. Mass. 2009) citing to Muniz v. Mehlman, 327 Mass. 353, 359 (1951) (n. 1). "[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." Commonwealth v. Kennedy, 426 Mass. 703, 708 (1998), citing to Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992)(internal quotations omitted). Here, probable cause was established when Sobrinho Silva observed White operating at a speed in

excess of ninety-four (94) miles an hour (Doc. No. 1-1, 19, n.1, Exhibit 1, 02:23–02:48), Harlow v. Fitzgerald, 457 U.S. at 818 (failure to establish a violation of a right).

Based on the foregoing, Count III, alleging that Sobrinho Silva's arrest of White amounted to malicious prosecution should be dismissed.

### F. Count IV Fails as White was Not Deprived of his Due Process Rights

White does not set forth any facts to support a due process violation. To the extent White's due process claim is read to allege Sobrinho Silva fabricated evidence against him, such claim fails as there are no facts to support it. To set forth "[a] fabrication of evidence claim requires: (1) fabrication of inculpatory evidence that is (2) material / causal to the conviction and (3) deliberate deception." Weichel v. Town of Braintree, No. 1:20-CV-11456-IT, 2025 WL 1756871, at *6 (D. Mass. June 25, 2025)(internal citations omitted).

First, and fatal to the claim, White was not convicted of any crime. Turning then to the evidence to charge White with reckless driving, the record before the court is sufficient to establish that Sobrinho Silva had probable cause to arrest White (Exhibit 1, 02:23–02:48, n. 1). Moreover, there was probable cause for the issuance of the civil citations to White. Because probable cause existed for the citation, and the sole criminal charge, White has failed to meet the high burden of conscious shocking conduct that is required. Without such, his claim under Count IV fails.

### G. Count V Fails as Neither Plaintiff Made Known his Disability and there is No Duty to Engage in an Interactive Process During a Law Enforcement Action

The requirement to provide a "reasonable accommodation" under the Americans with Disabilities Act ("ADA") does not apply in the circumstances present here. In law enforcement encounters with persons with a disability, the initial focus must be on public safety. DeBoise v. Taser Intern., Inc., 760 F.3d 892, 899 (8th Cir. 2014).

To the extent Plaintiffs are seeking relief through § 1983 under Count V, other circuits[2] have had cause to address the interplay between the statutes when a § 1983 claim is based on an allegation of a violation of the ADA. [3] In those circuits, the courts have made clear that the ADA does not require police officers performing their law enforcement duties to engage in an interactive process to determine what "reasonable accommodation" might work best. Rather, in applying the ADA to law enforcement actions, the courts do

> "not second guess [an officer's] judgments, where...an officer is presented with exigent or unexpected circumstances." Bahl v. County of Ramsey, 695 F.3d 778, 784–85 (8th Cir. 2012); see also Tucker v. Tennessee, 539 F.3d 526, 536 (6th Cir.2009) ("[W]e rely on and expect law enforcement officers to respond fluidly to changing situations and individuals they encounter. Imposing a stringent requirement under the ADA is inconsistent with that expectation, and impedes their ability to perform their duties."); Hainze v. Richards, 207 F.3d 795, 801 (5th Cir.2000) ("Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life.")."

DeBoise, 760 F.3d at 899.

Although the term "reasonable accommodation" as set forth in the ADA suggests an interactive process, such a process is not compatible with a road side traffic stop and arrest. In cases addressing the response of law enforcement officers to citizens with a disability, the focus is on securing the scene and making sure everyone is safe (Doc. No. 1-1, 19, n. 1). Id. That is exactly what Sobrinho Silva did here when she took White into custody and placed him in her cruiser for transport back to the barracks so that he could be processed and released.

---

[2] The First Circuit declined to address this issue when it decided Gray v. Cummings, 917 F.3d 1, 17–18 (1st Cir. 2019).

[3] 42 U.S. Code § 12132 - Discrimination
Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. (Pub. L. 101–336, title II, § 202, July 26, 1990, 104 Stat. 337).

> The reasonableness of any accommodation necessarily takes account of both the context and the facts and circumstances known to the officers when they acted. See Sheehan v. City and County of San Francisco, 743 F.3d 1211, 1232 (9th Cir. 2014) ("[C]ircumstances inform the reasonableness analysis under the ADA, just as they inform the distinct reasonableness analysis under the Fourth Amendment."), rev'd in part, cert. dismissed in part sub nom. City and County of San Francisco v. Sheehan, 575 U.S. 600, 610, 135 S.Ct. 1765, 191 L.Ed.2d 856; Bahl v. County of Ramsey, 695 F.3d 778, 784 (8th Cir. 2012) (noting that "[e]ven if the ADA applied to [a] traffic stop," the defendant-officer was not required to accommodate the plaintiff's disability during the traffic stop); Roell v. Hamilton County, 870 F.3d 471, 489 (6th Cir. 2017) ("In the context ... surrounding Roell's arrest, ... Roell cannot make out a viable ADA claim under her failure-to-accommodate theory."); Bircoll v. Miami-Dade County, 480 F.3d 1072, 1085 (11th Cir. 2007) (noting that the circumstances "presented by criminal activity and the already onerous tasks of police on the scene go ... to the reasonableness of the requested ADA modification").

Conlon v. Scaltreto, 158 F.4th 211, 225–26 (1st Cir. 2025).

The only reference in Plaintiffs' complaint to a disability is an allegation that each has one and that neither Plaintiff received an accommodation (Doc. No. 1, 3 D.). Under the ADA, the duty to accommodate is triggered when a disabled person's need for an accommodation becomes known, either because (1) he requests an accommodation or (2) his disability and concomitant need for an accommodation are open and apparent. Montanez v. Price, 154 F.4th 127, 148 (3d Cir. 2025), cert. denied sub nom. Pennsylvania v. Montanez, 146 S. Ct. 2731 (2026), citing to Chisolm v. McManimon, 275 F.3d 315, 330 (3d Cir. 2001); Robertson v. Las Animas Cnty. Sheriff's Dep't, 500 F.3d 1185, 1197-98 (10th Cir. 2007) (collecting cases). Here, there is nothing open and obvious about Plaintiffs' alleged disability.

Based on the foregoing, Count V, seeking relief under the ADA, should be dismissed.

### H. Count VI Fails as Plaintiff Does Not Set Forth a Valid First Amendment Claim

White alleges that his First Amendment rights were violated when he was interrogated about his religion, post arrest. A party, such as White, who brings a § 1983 claim alleging that he was being prosecuted in retaliation for First Amendment activity must prove that his conduct

was: (1) constitutionally protected; (2) a substantial or motivating factor for the retaliatory decision; and (3) that probable cause did not exist for the resulting criminal charge. See Gericke v. Begin, 753 F.3d 1, 6 (1st Cir. 2014).

While the BWC video establishes the context of the conversation, a conversation begun by White, it also establishes that White was neither interrogated nor discriminated against White because of his religion (Exhibit 1, 34:08–35:00). What is missing from the complaint is any description of an adverse action taken against White because of this conversation. Importantly, White was already under arrest at the time of the conversation.

At the point of White being arrested and handcuffed, Sobrinho Silva had determined that she had probable cause to cite White for three motor vehicle citations and one criminal offense (n. 1). Because there was probable cause for the stop and arrest there can be no claim that Sobrinho Silva's conduct post arrest was retaliatory for a conversation that had yet to take place. See, Nieves v. Bartlett, 587 U.S. 391, 402 (2019) ("[A] plaintiff pressing a retaliatory arrest claim must [also] plead and prove the absence of probable cause for the arrest.").

The presence of probable cause generally defeats a First Amendment retaliatory arrest claim. Id. at 405. White has failed to show that this general rule does not apply to his claim, particularly when there is no claim or evidence of disparate treatment. Conversely, Sobrinho Silva established that she had probable cause to arrest White based on her personally observing White speeding and operating in a reckless manner (Exhibit 1, 02:23–02:48, n. 1). Mann v. Cannon, 731 F.2d 54, 62 (1st Cir. 1984) ("To prove a section 1983 false arrest claim, ... [the plaintiff] must show at minimum that the arresting officers acted without probable cause."). Plaintiff must also plead the retaliatory act. The complaint does not address that.

In addition to religious discrimination, White alleges that his First Amendment rights were violated when Sobrinho Silva retaliated against him for making certain postings on social media regarding his arrest (Doc. No. 1, 4). Here, White fails again because he alleges only a temporal connection between his social media postings and Sobrinho Silva's filing of a Request for Immediate Threat License Suspension with the Registry of Motor Vehicles. The complaint does not contain any facts detailing what the postings were or even an allegation that Sobrinho Silva knew of the posting and reacted to it by filing the Immediate Threat request with the RMV. Gericke, 753 F.3d at 6. Given its most liberal reading, the complaint asks one to infer that Sobrinho Silva had knowledge of these undescribed postings based on speculation alone. That is insufficient as a matter of law. Twombly, 550 U.S. at 555.

Nonetheless, the subjective motive of Sobrinho Silva, as alleged by White, does not overcome the objective facts known to Sobrinho Silva when she filed the paperwork (Doc. No. 1-1, 19, n. 1, Exhibit 1, 01:36–02:48). Sobrinho Silva was engaged in legitimate law enforcement duties when she encountered White. That is, she was monitoring traffic on Interstate 84 in an effort to detect motorists who were operating in violation of the Commonwealth's traffic laws. Her decision to file the request with the RMV was appropriate.

Importantly, White does not suggest that others who committed similar violations in front of members of the State Police, such as he did, were not subject to the same treatment he was. Without the disparate treatment argument, White's First Amendment claims fail as an arrest based on probable cause can only be challenged as retaliatory if plaintiff "presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Nieves, 587 U.S. at 407. Count IV should be dismissed.

## I. Count VII Fails as Plaintiffs' MCRA Claim Does Not Allege the use of Threats, Intimidation, or Coercion by Sobrinho Silva

The MCRA, like 42 U.S.C. § 1983, is not a source of any rights.[4] Rather, it is a mechanism through which relief may be sought for a violation of a federal or state right that is interfered with or attempted to be interfered with through the use of threats, intimidation, or coercion. McEntee v. Beth Israel Lahey Health, Inc., 685 F.Supp.3d 43, 51–52 (D.Mass. 2023), citing to Howcroft v. Peabody, 51 Mass. App. Ct. 573, 747 N.E.2d 729 (2001) (emphasis supplied). "A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion." Longval v. Comm'r of Corr., 404 Mass. 325, 333, 535 N.E.2d 588 (1989); Morse v. Commonwealth of Massachusetts Executive Office of Public Safety Department of State Police, 123 F.Supp.3d 179 (2015), affirmed in part, appeal dismissed in part 869 F.3d 16. The use of force or the violation of a right complained of must be undertaken to achieve some further purpose in order for it to be a MCRA violation. Turkowitz v. Provincetown, 914 F. Supp. 2d 62, 76 (D.Mass. 2012). Here, there was no use of force or use of threats, intimidation, or coercion. Without such, Plaintiffs' MCRA claims fail. Bally v. Northeastern Univ., 403 Mass. 713, 718, 532 N.E.2d 49 (1989). Simply put, Plaintiffs point to no conduct that they had a lawful right to engage in that they were prevented from engaging in by Sobrinho Silva through the use of threats, intimidation, or coercion. Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 565, (1995). Plaintiff Northcross' claim of being threatened fails to state a claim because it does not go beyond "labels and conclusions…" Bell Atl. Corp., 550 U.S. at 555 (Doc. No. 1, 3C).

[4] The MCRA is found at M. G. L. c. 12, § 11H while M. G. L. c. 12, § 11I provides for a private action to enforce those rights.

To the extent White bases his MCRA claim on the argument that Sobrinho Silva lacked probable cause to act as she did in arresting him, wrongful arrest does not, standing alone, give rise to a claim under the MCRA." Ciolino v. Eastman, 128 F.Supp.3d 366, 380 (D. Mass. 2015).

> "However, even accepting that any arrest attended by force is intrinsically coercive, 'there still must be under MCRA some allegation that the defendant's conduct was intended to coerce [the plaintiff] into refraining from the exercise of a right or privilege secured by law.' Barbosa v. Conlon, 962 F.Supp.2d 316, 332 (D. Mass. 2013).

Mercurio v. Town of Sherborn, 287 F. Supp. 3d 109, 123 (D. Mass. 2017).

In short, Plaintiff cannot "rely on the arrest as both the constitutional violation and the evidence of threats, intimidation, or coercion." Santiago v. Keyes, 890 F.Supp.2d 149, 156 (D. Mass. 2012).

Because the MCRA claim is based on a violation of the same rights as Plaintiffs' 1983 claim, the same qualified immunity analysis applies. Jakuttis v. Town of Dracut, 95 F.4th 22, 35 (1stCir. 2024). Sobrinho Silva is entitled to qualified immunity because neither Plaintiff suffered a deprivation of a right; therefore, Count VII should be dismissed, Graham, 490 U.S. 386.

### J. Count IX Fails as Plaintiffs Have Not Suffered an Underlying Constitutional Harm

On its face, the allegation against Sobrinho Silva does not meet the extreme and outrageous standard required of an intentional infliction of emotional distress ("IIED") claim. In Massachusetts, in order for a plaintiff to recover on an intentional infliction of emotional distress claim, the conduct must be "extreme and outrageous." Agis v. Howard Johnson Co., 371 Mass. 140 (1976) ("one who, by extreme and outrageous conduct and without privilege, causes severe emotional distress to another is subject to liability for such emotional distress…"). Id. at 144.

It is for the court to decide in the first instance if the conduct alleged meets the "extreme and outrageous standard." Caputo v. Boston Edison Co., 924 F.2d 11, 14 (1st Cir. 1991). In the

context of an excessive force claim, the Plaintiff must allege something beyond hurt feelings (Doc. No. 1, 3C). Miller v. Pugliese, 693 F.Supp. 3d 163, 184 (D.Mass. 2023)("[Defendant], "unprovoked punched [Plaintiff] in his head and back, such behavior is not necessarily extreme and outrageous"). Here, there is no claim of any physical injury as Sobrinho Silva's contact with White was limited to handcuffing him and escorting him to a cruiser. Moreover, there is no allegation at all that Sobrinho Silva ever came in contact with Northcross (Doc. No. 1, 3C). Simply put, Plaintiff's complaint fails to set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678.

The conduct of a law enforcement officer who is merely carrying out her duties "as a matter of law cannot be deemed extreme and outrageous." Sietins v. Joseph, 238 F. Supp. 2d 366, 379 (D. Mass. 2003). In the circumstances pled by Plaintiffs, the conduct of Sobrinho Silva falls far short of that required to establish "extreme and outrageous" conduct. Id.

Based on the foregoing, Count IX should be dismissed.

### K. Count X Fails as Plaintiffs Have Not Made Out a Claim Under the Eighth Amendment

The Eighth Amendment reads as follows: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eighth Amendment's proscription against the infliction of "cruel and unusual punishment" applies only to prisoners. Wilson v. Seiter, 501 U.S. 294, 297 (1991). The punishment with which the Eighth Amendment is concerned, therefore, does not arise until after a formal adjudication of guilt in accordance with due process of law is made. Gonzalez-Mercado v. Municipality of Guaynabo, 206 F. Supp. 2d 257, 260–61 (D.P.R. 2002). Since none of the conduct White complains of occurred post-conviction, the Eighth Amendment does not apply.

## V. CONCLUSION AND REQUESTED RELIEF

Based on the foregoing, Yasmin Sobrinho Silva respectfully requests that her motion to dismiss be granted, and that the Plaintiffs' complaint be dismissed, with prejudice and costs awarded to Sobrinho Silva.

Respectfully submitted,

The Defendant,
YASMIN SOBRINHO SILVA,
By her attorneys,
ROGAL & DONNELLAN, P.C.

/s/ Joseph G. Donnellan
Joseph G. Donnellan, BBO# 558060
100 River Ridge Drive, Suite 203
Norwood, Massachusetts 02062
(781) 255-1200
jdonnellan@rogalanddonnellan.com

**November 22, 2026**

## CERTIFICATE OF SERVICE

I, Joseph G. Donnellan, hereby certify that I served a copy of the foregoing Memorandum in Support to all parties and counsel of record, via ECF, and to those not so registered via email this 22nd day of November 2026.

/s/ Joseph G. Donnellan
Joseph G. Donnellan