UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ONYX WHITE and SINCERE NORTHCROSS,<br>Plaintiffs,<br><br>v.<br><br>THE COMMONWEALTH OF MASSACHUSETTS; CITY OF STURBRIDGE; MASSACHUSETTS STATE POLICE; MASSACHUSETTS REGISTRY OF MOTOR VEHICLES; MASSACHUSETTS PAROLE BOARD; BOSTON SUFFOLK SUPERIOR COURT PROBATION DEPARTMENT; BOSTON MUNICIPAL COURT JUVENILE PROBATION DEPARTMENT; TROOPER YASMIN P. SOBRINHO, Badge #4833; TROOPER CHRISTOPHER TOBIN; PROBATION OFFICER MELINDA RIORDAN; PROBATION OFFICER CURBY; STATE TROOPER INVESTIGATOR JOHN BANIK; JOHN DOES (SUFFOLK SUPERIOR PROBATION SUPERVISORS) 1-10,<br>Defendants. | CIVIL ACTION NO. 1:26-cv-10046-DJC |

**TROOPER CHRISTOPHER TOBIN'S MEMORANDUM OF LAW FILED IN SUPPORT OF HIS MOTION TO DISMISS**

## • INTRODUCTION

Plaintiff Onyx White ("White") seeks money damages in the amount of $100,000,000 through this civil rights action he has brought in a *pro se* capacity against various public officials and entities, including Tpr. Christopher Tobin ("Tobin" or "Tpr. Tobin"), who assisted the state trooper who issued White a speeding ticket and arrested White for reckless operation of a motor vehicle for operating a motor vehicle at ninety-four (94) miles per hour when the speed limit was sixty-five (65) miles per hour.

Acting in his *pro se* capacity, White has added his brother, Sincere Northcross ("Northcross"), to the complaint, although Northcross has not signed the complaint. Northcross is seeking $3,000,000 in damages for the harm he suffered when he was the passenger in the motor vehicle being operated by his brother, White.

Plaintiffs have named Tobin both in his official capacity and his individual capacity. Plaintiffs' claims against Tobin acting in his official capacity are barred under the doctrine of sovereign immunity. See, Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

Leaving aside the defense to the official capacity claims for a moment, both Plaintiffs fail to make out a compensable claim through their ten-count complaint. Through Counts I, II, III, IV, VI, and X, White seeks relief for alleged violations of his constitutional rights utilizing 42 U.S.C. § 1983. Through Count V, both White and Northcross bring a claim of discrimination under the Americans With Disabilities Act ("ADA") alleging discrimination based on a disability. Finally, through Counts VII, VIII, and IX, White seeks to utilize state-based claims to procure money damages. As fully developed below, Plaintiffs' complaint should be dismissed as it fails to set forth a set a facts upon which recovery may be had. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"). See, Fed. R. Civ. P. 12(b)(6).

Additionally, Plaintiff Sincere Northcross, is also seeking compensation through this complaint. Without Northcross's signature on the complaint, he may not proceed in this court as a signature by a party or an attorney acting on behalf of the party is required on all filings. By law, an individual may appear in federal courts only *pro se* or through legal counsel. See, 28 U.S.C. § 1654. *Pro se* litigants may not appear for others in federal courts, and thus plaintiff White, who is not an attorney, lacks the representative capacity to file a complaint on behalf of his brother.

Tpr. Tobin is entitled to qualified immunity for any alleged deprivation of a right as both the citation Trooper Sobrinho ("Tpr. Sobrinho" or "Sobrinho Silva") issued White and the arrest she made of White were based on probable cause. Any limited action Tobin took toward Northcross did not result in a violation of his rights. Pearson v. Callahan, 555 U.S. 223, 231 (2009); Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004). Additionally, Tobin's role in the arrest was minimal in assisting Tpr. Sobrinho, and this is illustrated by Tobin's minimal appearance throughout plaintiff's complaint.

## • STANDARD OF REVIEW

The facts presented below are assessed pursuant to the well-settled standard of review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) obligating the Court to "take the allegations in the complaint as true and grant all reasonable inferences in favor of the plaintiff." Monahan v. Dorchester Counseling Ctr., 961 F.2d 987, 988 (1st Cir. 1992); Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). Defendant Sobrinho Silva reserves her right to challenge Plaintiff's factual allegations in subsequent parts of this proceeding, if any.

To survive a motion to dismiss pursuant to Rule 12

> "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)…Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S. Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 556 U.S. at 678.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 677-678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Nor does a Complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).

In considering a motion to dismiss, the court must "take all factual allegations as true and draw all reasonable inferences in favor of the plaintiff." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007); see also Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009). Although Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint that does not go beyond "labels and conclusions…, and a formulaic recitation of the elements of a cause of action will not do…" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A court may disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008).

Courts may also consider evidence outside the complaint if the evidence is incorporated by reference into the complaint. Johnson v. City of Atlanta, 107 F.4th 1292, 1300 (11th Cir. 2024)

(Unchallenged body camera and dashcam video footage captured the events central to the complaint and were properly considered at the motion to dismiss stage); Bowman v. Monteiro, No. 24-CV-10850-AK, 2025 WL 2174871, at *2 (D. Mass. July 31, 2025) (concluding that properly authenticated body -worn camera footage that is central to plaintiff's claims may be considered for purposes of a motion to dismiss).

In addition, "documents the authenticity of which are not disputed by the parties; ... official public records; ... documents central to plaintiffs' claim; or ... documents sufficiently referred to in the complaint" are properly considered. Flores v. OneWest Bank, F.S.B., 886 F.3d 160, 167 (1st Cir. 2018) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). Where "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

Even granting the *pro se* litigants a liberal reading of this complaint, the Plaintiffs must plead specific facts to back up their claims of civil rights violations. Glaros v. Perse, 628 F.2d 679, 684 (1st Cir. 1980)(internal citations omitted).

Finally, courts may also consider evidence outside the complaint if the evidence is incorporated by reference into the complaint. Johnson v. City of Atlanta, 107 F.4th 1292, 1300 (11th Cir. 2024) (Unchallenged body camera and dashcam video footage captured the events central to the complaint and were properly considered at the motion to dismiss stage); Bowman v. Monteiro, No. 24-CV-10850-AK, 2025 WL 2174871, at *2 (D. Mass. July 31, 2025) (concluding that properly authenticated body-worn camera footage that is central to plaintiff's claims may be considered for purposes of a motion to dismiss).

## 1. RELEVANT FACTUAL ALLEGATIONS

On April 9, 2025, at approximately 5:00 p.m., the Plaintiffs, White and Northcross, were traveling westbound on Interstate 84 in the community of Sturbridge, Massachusetts (Doc. No. 1, 3, B). At the same time and place, Sobrinho Silva was in the midst of a stationary radar enforcement operation monitoring the passing traffic (Doc. No. 1-1, 19). The vehicle being operated by White was recorded by

Sobrinho Silva's radar/lidar equipment as travelling at a speed of ninety-four (94) miles per hour when the speed limit on the highway was sixty-five (65) mile per hour (Doc. No. 1-1, 19). White's vehicle travelled several miles before Sobrinho Silva could catch up with the vehicle and activate her lights to indicate to White that he needed to pull over (Doc. No. 1-1, 19). White initially pulled over in the far left portion of the highway. Trp. Sobrinho Silva approached White and directed him to pull over into the far right breakdown lane. White complied (Doc. No. 1-1, 19). Tpr. Tobin was called in as back-up to assist with the arrest of White, and there is BWC footage available of this encounter. (See Sobrinho Motion to Dismiss, Exhibit 1, at 9:32). The footage shows the entire extent of Tpr. Tobin's contact with the plaintiff, which amounted to a hand being placed near plaintiff White's shoulder to guide him out of the vehicle. This contact lasted roughly two or three seconds, and the footage shows no hostility or any reaction by the plaintiff to suggest resistance in response to Tpr. Tobin's hand placement. (See Sobrinho Motion to Dismiss Exhibit 1, at 9:58-10:00). Tpr. Tobin had no further contact with the plaintiffs after his role as a back-up on the road.

## • ARGUMENT

### A. Plaintiffs' Claims Against Tobin in his Official Capacity Fail as a Matter of Law.

Leaving aside the fact that there is no evidence of a constitutional violation by Tpr. Tobin, given his very limited interaction with White, Tpr. Tobin first moves to dismiss the claims against him in his official capacity based on the Eleventh Amendment. Plaintiff declares, without elaboration, that Tobin is being sued in his "official capacity" (Doc. No. 1, 2, III). Sovereign immunity precludes Plaintiffs from pursing any claims against Tobin in his "official capacity." "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. at 71 (citations omitted).

Since a defense relying upon the Eleventh Amendment raises a jurisdictional question, see, Fed. R. Civ. P. 12(b)(1) and Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105 (1st Cir. 2015), it should

ordinarily be decided first. Northeast Erectors Ass'n of BTEA v. Secretary of Labor, Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995).

State officials, such as Tobin, acting in their official capacity are considered to be an extension of the state; therefore, they are entitled to sovereign immunity as they do not constitute a "person" under Section 1983. See Will, 491 U.S. at 71 (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to abrogate the Commonwealth's sovereign immunity. See Quern v. Jordan, 440 U.S. 332, 341–42 (1979) ("[W]e simply are unwilling to believe...that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."). Dismissal of any claim against Tobin in his "official capacity" is required because "a state official acting in his official capacity may [not] be sued for damages in a section 1983 action.' " Fantini v. Salem State College, 557 F.3d 22, 33 (1st Cir.2009) (quoting Wang v. New Hampshire Board of Registration in Medicine, 55 F.3d 698, 700 (1st Cir.1995).

Based on the foregoing, so much of Plaintiffs' complaint seeking damages against Tobin for conduct undertaken in his "official capacity" should be dismissed based on a lack of subject matter jurisdiction. Mulero-Carrillo, 790 F.3d at 105; Fed. R. Civ. P. 12(b)(1).

### B. Plaintiff Sincere Northcross's Claims Must Be Dismissed as White May Not Represent His Brother in this Proceeding.

The Plaintiffs filed an eight-page verified complaint (Doc. No. 1); however, only White signed and attested to the complaint. (Doc. No. 1, p. 8). Nowhere within the four corners of the complaint can there be found a signature from Northcross. Pursuant to Fed. R. Civ. P. 11(a), if a party is not represented by an attorney, the party must sign every pleading, written motion, and other paper. The rule directs that "an unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." Fed. R. Civ. P. 11(a). That has not happened here.

Rule 11 also applies in cases where multiple *pro se* plaintiffs are involved. In such circumstances, each plaintiff must sign each pleading, written motion and other paper. See cf., e.g., Casanova v. Dubois, 289 F.3d 142 (1st Cir. 2002)(all defendants required to sign notice of appeal).

White's signature and verification of his complaint do not carry over to meet Northcross's independent obligation to sign the complaint because as a matter of law, a *pro se* litigant may not represent others in federal court. See Herrera–Venegas v. Sanchez–Rivera, 681 F.2d 41, 42 (1st Cir.1982) ("federal courts have consistently rejected attempts at third-party lay representation"). "Accordingly, *a pro se* party cannot represent people other than him or herself." Hootstein v. Amherst-Pelham Reg. Sch. Comm., 361 F. Supp. 3d 94, 101 (D. Mass. 2019)(internal citation omitted).

Northcross's signature is not the only thing that is missing as Rule 11 requires party to list an address, email address and telephone number. "The paper must state the signer's address, e-mail address, and telephone number." See, Fed. R. Civ. P. 11. Northcross's failure to provide such information has interfered with counsel's ability to confer with him pursuant to L.R. 7.1. See attached certification.

Based on the foregoing, all claims as asserted by Northcross against Tobin and Sobrinho should be dismissed based on his failure to comply with Fed. R. Civ. P. 11.

### C. Count I Fails to Make Out a Fourth Amendment Violation as Plaintiff's Detention Was Based on Probable Cause

Plaintiffs have utilized 42 U.S.C. § 1983, a statute providing "remedies for deprivations of rights established elsewhere" Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985), quoting Baker v. McCollan, 443 U.S. 137 (1979) as the vehicle through which they seek to pursue claims for their alleged harms. Through Count I, Plaintiffs seek to recover damages for alleged violations of rights as conferred through the Fourth Amendment. A review of the complaint does nothing to support their claim for compensation based on a Fourth Amendment violation. If anything, the facts pled undermine any claim that Plaintiffs' rights under the Fourth Amendment were interfered with. In the complaint, the plaintiffs do not allege that Tpr. Tobin followed the plaintiff's vehicle. The plaintiffs do not allege that Tpr. Tobin followed the plaintiff's vehicle. The plaintiffs do not allege that Tpr. Tobin approached the vehicle during the initial

stop, nor do they allege that Tpr. Tobin reviewed White's CORI record or called for a tow. In fact, the sole allegation in the Complaint against Tpr. Tobin is that he "stood gripping his firearm in a threatening posture" and that he assisted Tpr. Sobrinho (as back-up) as they "forcibly opened Plaintiff White's door, removed him from the vehicle, handcuffed, and arrested him without lawful justification." (Doc. No. 1, IV (C). There is no allegation that Tpr. Tobin used excessive force, committed an assault on plaintiff(s), or ever drew his firearm.

Tpr. Tobin's minimal actions during the arrest following the traffic stop were merely to support Sobrinho Silva's decision to conduct the traffic stop of White, which was justified because Sobrinho Silva had both reasonable suspicion and probable cause that White had committed a traffic violation (Doc. No. 1-1, 19). Commonwealth v. Ramirez, 92 Mass. App. Ct. 742, 744–45, (2018). See, Commonwealth v. Rodriguez, 472 Mass. 767, 776 (2015). Additionally, as is shown in the body camera footage, the full extent of Tpr. Tobin's actions are shown to not amount to even minimal force. Tobin places his hand on White's shoulder to guide him from the vehicle, an action which took roughly three seconds and involved no resistance of any kind. The footage from Sobrinho's BWC shows between 9:58-10:00 the complete extent of Tpr. Tobin's actions as vaguely implied in the complaint. (See Sobrinho Motion to Dismiss, Exhibit 1).

Both the United States Supreme Court and the Commonwealth's Supreme Judicial Court have unequivocally declared that a police officer who has reasonable suspicion that a citizen has violated a traffic law may initiate a motor vehicle stop of that citizen. Heien v. North Carolina, 574 U.S. 54 (2014); Commonwealth v. Heughan, 40 Mass. App. Ct. 102, 104 (1996); and see, United States v. Chaney, 584 F.3d 20, 24 (1st Cir. 2009) ("traffic stop constitutes a seizure...and thus must be supported by reasonable suspicion that a traffic violation has occurred" emphasis supplied). In cases dating back to at least 1968, the Supreme Court has found that the stop of a citizen while a police officer investigates a crime or traffic violation does not violate the Fourth Amendment. Terry v. Ohio, 391 U.S. 1 (1968). Here, Sobrinho Silva had the probable cause to issue White a traffic citation for speeding and to arrest him for negligent operation of a motor vehicle (Doc. No. 1-1, 19). See, M. G. L. c. 89, § 7; M. G. L. c. 90, § 17; M. G. L. c.

90, § 24. Commonwealth v. Rodriguez, 472 Mass. at 773 M. G. L. c. 90C, §§ 2 and 3 (A), implicitly authorize police officers to stop motor vehicles in order to issue traffic citations"). The lack of specific allegations, along with Tpr. Tobin's role as simply a backup to Tpr. Sobrinho, therefore, insulates him from liability, especially since Tpr. Sobrinho had probable cause for the arrest of White.

During all relevant times that Tpr. Tobin's was engaged in assistance in the arrest of White, he was engaged in lawful conduct in furtherance of the "significant government interest of ensuring public safety on our roadways" Commonwealth v. Buckley, 478 Mass. 861, 869 (2018) when Tpr Sobrinho initiated the motor vehicle stop of the Plaintiff after she personally observed White travelling at a rate of no less than ninety-four miles per hour when the lawful maximum speed was sixty-five miles per hour (Doc. No. 1-1, 19). "Permitting [motor vehicle] stops based on reasonable suspicion or probable cause that [traffic] laws may have been violated gives police the ability to immediately address potential safety hazards on the road." Commonwealth v. Larose, 483 Mass. 323 at 327–328 (2019). Sobrinho Silva's efforts to stop White to address a safety issue was most certainly called for and was undertaken in furtherance of the "significant public interest of ensuring public safety on the roads of the Commonwealth."[1] Commonwealth v. Buckley, 478 Mass. at 869; Larose, 483 Mass. at 327–328.

Furthermore, Tpr. Tobin's involvement, in as much as the complaint mentions him, is limited to plaintiff alleging that Tobin "stood gripping his firearm in a threatening posture" and that Tobin "arrested [plaintiff White] without lawful justification." (Doc. No. 1, 3 C). There was, in fact, lawful justification, as stated above. The complaint is primarily framed as a stop and arrest conducted by Tpr. Sobrinho, with Tpr. Tobin only assisting in what was a justified arrest.

Because the motor vehicle stop of White was supported by the reasonable suspicion established when Sobrinho Silva personally observed the traffic offenses as committed by White, he has no Fourth

[1] "As I caught up to the White Chevrolet SUV, I clocked and estimated its speeds to be over 100mph, and I was not able to catch up to the vehicle in the left travel land until almost 3 miles after I originally saw it due to its high speeds. This rate of speed and manner of operation shows an indifference to the motoring public, as any crash that occurs at those speeds will likely result in someone's death or serious injury." (Doc. No. 1-1, 19).

Amendment claim based on the stop itself (Doc. No. 1-1, 19). Commonwealth v. Amado, 474 Mass. 147, 151 (2016) ("Where the police have observed a traffic violation, they are warranted in stopping a vehicle."); Washington, 459 Mass. at 39, n. 14 (reasonable suspicion for motor vehicle stop, probable cause for issuance of citation). White, therefore, fails to set out a deprivation of a Fourth Amendment protected right based on the stop and issuance of a traffic violation and his claim, therefore, fails as a matter of law. Constitutional claims pursued under 42 U.S.C. § 1983 must allege that a person acting under color of state law committed conduct that deprived the plaintiff of a constitutional or federally protected right. Gutierrez-Rodriguez v. Carteagena, 882 F.2d 553, 559 (1st Cir. 1989). Since a motorist, such as White, does not have a constitutional or federally protected right to operate a motor vehicle in violation of the traffic laws of the Commonwealth, his claims based on a deprivation of his Fourth Amendment rights fail. Harper v. Booth, 382 F.Supp.3d 124, 128 (2019).

To the extent White relies on his multiple court appearances to establish a deprivation of a Fourth Amendment right, such appearances do not constitute a Constitutional violation. That is particularly true here, as a number of the appearances were made to defend against the civil motor vehicle violations and not criminal charges (Doc. No. 1, 7). Nieves v. McSweeney, 241 F.3d 46, 55 (1st Cir. 2001).

To the extent that White's Fourth Amendment claim rests on his being arrested for negligent operation of a motor vehicle, since there was probable cause for his arrest (Doc. No. 1-1, 19), the above argument applies and, therefore, Count I should be dismissed in its entirety. Based on the above, any claims against Tpr. Tobin, as minimal and vague as they are, do not constitute a constitutional violation and therefore, Count I should be dismissed.

Should Northcross suggest his rights under the Fourth Amendment were violated, that claim must be dismissed as there are no facts to support it. Ashcroft, 556 U.S. at 677-678. ("Nor does a Complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Furthermore, the detention of "a passenger during a traffic stop, even without a particularized reasonable suspicion that the passenger has committed any crime" does not violate the Fourth Amendment. United States v. Starks, 301 F. Supp. 2d 76, 82 (D. Mass. 2004). Based on the foregoing, Count I should be dismissed in its entirety.

**D. Count II Fails as Handcuffing a Compliant Subject is Not Excessive Force**

White also alleges that he was subjected to excessive force during his arrest (Doc. No. 1, 3). This claim fails the Fed. R. Civ. P. 12(b)(6) standard as there are no facts alleged that amount to excessive force. Plaintiffs' "complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft, 556 U.S. at 678. Here, Plaintiffs have not asserted any facts to support the claim that excessive force was used. This requirement applies even here where White is acting *pro se* and is entitled to a liberal reading of his complaint as that deference does not excuse the Plaintiff from the requirement that he must plead specific facts to back up his claims of a civil rights violation. Glaros v. Perse, 628 F.2d at 684 (internal citations omitted). Here, White only sets forth that he was handcuffed. He does not allege any injury from the handcuffing, or from being removed from the vehicle by Tpr. Tobin and Tpr. Sobrinho (Doc. No. 1, 3 C). Under the recently adopted regulations adopted by the Commonwealth's Peace Officer Standards and Training Commission, merely handcuffing an arrestee and assisting them out of a vehicle, as was done here, is not a use of force. "Physically escorting or handcuffing an individual with minimal or no resistance does not constitute a use of force for purposes of 555 CMR 6.04." 555 Code Mass. Regs. § 6.04 (2022).

"To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances." Conlon v. City of Newton, Civil Action 23-10026-FDS (D. Mass. Jun. 21, 2024), quoting Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007) (citing Graham v. Connor, 490 U.S. 386, 397 (1989)). Handcuffing someone who is under arrest is reasonable conduct. Id.

Since White does not complain of injury as a result of his being handcuffed, he has failed to meet the 12(b)(6) standard. See, Dean v. City of Worcester, 924 F.2d 364, 368–369 (1st Cir. 1991), citing Graham; and see also, Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015) (extent of injuries proper consideration in assessing if excessive force was used in pre-trial detainee setting).

Because there are no facts to back up the allegation of excessive force against Tobin or Sobrinho, Count II should be dismissed. Ashcroft, 556 U.S. at 677–678. ("Nor does a Complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").

**E. Count III Fails as There Was Probable Cause for White's Arrest**

First, based on the complaint, it is clear that plaintiff White alleges (albeit frivolously) that it was Tpr. Sobrinho, not Tpr. Tobin, who "retaliated by submitting false information to the RMV…." and that is was she who submitted "materially false information" to support criminal charges. (Doc. No. 1, 4 E). Therefore, since there is not even an allegation that Tpr. Tobin initiated criminal charges against White, on that basis alone, there can be no claim for malicious prosecution against Tpr. Tobin.

Secondly, in order for White to prevail on a malicious prosecution claim at all, he must first establish that there was no probable cause for his arrest as "the absence of probable cause to initiate" the criminal proceedings is a necessary component of the claim, Meehan v. Town of Plymouth, 167 F.3d 85, 89–90 (1st Cir. 1999). Here, probable cause was established at that point when Sobrinho Silva personally observed White operating his vehicle in a reckless manner (Doc. No. 1-1, 19). Probable cause is a "considerably less exacting" standard than that required to support a conviction at trial. Commonwealth v. O'Dell, 392 Mass. 445, 451 (1984). Probable cause requires "sufficient facts to warrant a person of reasonable caution in believing that an offense has been committed;" it does not require proof beyond a reasonable doubt. Commonwealth v. Levesque, 436 Mass. 443, 447 (2002); citing to Carroll v. United States, 267 U.S. 132, 161 (1923); Gerstein v. Pugh, 420 U.S. 103, 111 (1975).

White cannot rely upon the eventual dismissal of his charges to bootstrap an argument that because the charges were dismissed, there was no probable cause as the mere fact that the Plaintiff's charges were dismissed is insufficient to infer a lack of probable cause. Goddard v. Kelley, 629 F. Supp. 2d 115, 130 (D. Mass. 2009) citing to Muniz v. Mehlman, 327 Mass. 353, 359 (1951). When assessing the appropriateness of an arrest, probable cause must be established at the point of arrest. "[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or

was committing an offense." Commonwealth v. Kennedy, 426 Mass. 703, 708 (1998), citing to Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992), (internal quotations omitted). Here, probable cause for the arrest was established when White was observed operating at a speed in excess of ninety-four miles an hour by Sobrinho Silva (Doc. No. 1-1, 19).

Based on the foregoing, to the extent that there is even a claim against Tpr. Tobin for malicious prosecution, there is no factual basis for it in the complaint. Should a reading of the complaint support a claim against Tpr. Tobin, the above argument in support of Tpr. Sobrinho's arrest applies to Tpr. Tobin as well. For the above reasons, Count III should be dismissed as it may apply to Tpr. Tobin.

### F. Count IV Fails as White was Not Deprived of his Due Process Rights

White does not set forth any set of facts that he suggests amounted to a due process violation on the part of Tpr. Tobin. Without such, his claim under Count IV fails.

### G. Count V Fails as Neither Plaintiff Made Known his Disability and there is No Duty to Engage in an Interactive Process During a Law Enforcement Action

The Americans with Disabilities Act ("ADA") requires the person seeking an accommodation to make his disability known; however, the ADA does not apply in the circumstances present here. To the extent Plaintiffs are seeking relief through § 1983 under Count V, other circuits[2] have had cause to address the interplay between the statutes when a § 1983 claim is based on an allegation of a violation of the ADA.[3] In those circuits, the courts have made clear that the ADA does not require police officers engaging in their law enforcement duties to engage in an interactive process to determine what "reasonable accommodation" might work best. Rather, in applying the ADA to law enforcement actions, the courts do

[2] The First Circuit declined to address this issue when it decided Gray v. Cummings, 917 F.3d 1, 17–18 (1st Cir. 2019).

[3] 42 U.S. Code § 12132 - Discrimination
Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. (Pub. L. 101–336, title II, § 202, July 26, 1990, 104 Stat. 337).

> "not second guess [an officer's] judgments, where...an officer is presented with exigent or unexpected circumstances." Bahl v. County of Ramsey, 695 F.3d 778, 784–85 (8th Cir.2012); see also Tucker v. Tennessee, 539 F.3d 526, 536 (6th Cir.2009) ("[W]e rely on and expect law enforcement officers to respond fluidly to changing situations and individuals they encounter. Imposing a stringent requirement under the ADA is inconsistent with that expectation, and impedes their ability to perform their duties."); Hainze v. Richards, 207 F.3d 795, 801 (5th Cir.2000) ("Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life.")."

DeBoise v. Taser Intern., Inc., 760 F.3d 892, 899 (8th Cir. 2014).

Although the term "reasonable accommodation" as set forth in the ADA suggests an interactive process, such a process is not compatible with a roadside traffic stop and arrest. In cases addressing the response of law enforcement officers to citizens with a disability, the focus is on securing the scene and making sure everyone is safe (Doc. No. 1-1, 19 and n. 1, above). Id. That is exactly what Tobin did here when he backed-up Tpr. Sobrinho in her arrest of White and assisted Tpr. Sobrinho take White into custody.

Plaintiffs do not allege that either of them alerted Tobin to their need for a reasonable accommodation. In fact, the only reference in Plaintiffs' complaint is an allegation that each has a disability and that neither Plaintiff received an accommodation (Doc. No. 1, 3 D.). This is insufficient, as a matter of law, to state a claim under the ADA.

> The reasonableness of any accommodation necessarily takes account of both the context and the facts and circumstances known to the officers when they acted. See Sheehan v. City and County of San Francisco, 743 F.3d 1211, 1232 (9th Cir. 2014) ("[C]ircumstances inform the reasonableness analysis under the ADA, just as they inform the distinct reasonableness analysis under the Fourth Amendment."), rev'd in part, cert. dismissed in part sub nom. City and County of San Francisco v. Sheehan, 575 U.S. 600, 610, 135 S.Ct. 1765, 191 L.Ed.2d 856; Bahl v. County of Ramsey, 695 F.3d 778, 784 (8th Cir. 2012) (noting that "[e]ven if the ADA applied to [a] traffic stop," the defendant-officer was not required to accommodate the plaintiff's disability during the traffic stop); Roell v. Hamilton County, 870 F.3d 471, 489 (6th Cir. 2017) ("In the context ... surrounding Roell's arrest, ... Roell cannot make out a viable ADA claim under her failure-to-accommodate theory."); Bircoll v. Miami-Dade County, 480 F.3d 1072, 1085 (11th Cir. 2007) (noting that the circumstances "presented by criminal activity and the already onerous tasks of police on the scene go ... to the reasonableness of the requested ADA modification").

Conlon v. Scaltreto, 158 F.4th 211, 225–26 (1st Cir. 2025).

Based on the foregoing, Count V, seeking relief under the ADA, should be dismissed.

### H. Count VI Fails as Plaintiffs Do Not Allege Only a Temporal Connection and Not Knowledge of White's Social Media Postings

There is no evidence that Tpr. Tobin arrested plaintiff White. Nor is there evidence to support any of the claims, as shown by the BWC during the time Tpr. Tobin made his minimal contact with the plaintiff (See Sobrinho Motion to Dismiss, Exhibit 1 at (9:58-10:00). Similarly, there is no evidence that Tpr. Tobin was involved in any First Amendment Retaliation or Religious Discrimination. Plaintiff has failed to allege any connection with Tpr. Tobin on this point or that Tpr. Tobin was aware of any social media posting by the plaintiff. Without that action and reaction even being alleged, White has failed to make out a claim of retaliation against Tpr. Tobin.

### I. Count VII Fails as Plaintiffs Do Not Allege the use of Threats, Intimidation, or Coercion by Trooper Tobin

The MCRA, like 42 U.S.C. § 1983, is not a source of any rights.[4] Rather, it is a mechanism through which relief may be sought for a violation of a federal or state right that is interfered with or attempted to be interfered with through the use of threats, intimidation, or coercion. McEntee v. Beth Israel Lahey Health, Inc., 685 F.Supp.3d 43, 51–52 (D.Mass. 2023), citing to Howcroft v. Peabody, 51 Mass. App. Ct. 573, 747 N.E.2d 729 (2001) (emphasis supplied). "A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion." Longval v. Comm'r of Corr., 404 Mass. 325, 333, 535 N.E.2d 588 (1989); Morse v. Commonwealth of Massachusetts Executive Office of Public Safety Department of State Police, 123 F.Supp.3d 179 (2015), affirmed in part, appeal dismissed in part 869 F.3d 16. The use of force or the violation of a right complained of must be undertaken to achieve some further purpose in order for it to be a MCRA violation. Turkowitz v. Provincetown, 914 F. Supp. 2d 62, 76 (D.Mass. 2012). Here, there was no use of force and the other allegations raised by Plaintiffs do not amount to a violation of any right.

[4] The MCRA is found at M. G. L. c. 12, § 11H while M. G. L. c. 12, § 11I provides for a private action to enforce those rights.

To succeed on a MCRA claim, Plaintiffs must prove that Tobin threatened, intimidated, or coerced them into refraining from doing something they had a lawful right to do or to force them to do something that they had a lawful right to refrain from doing. Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 565, 646 N.E.2d 139 (1995). Plaintiffs fail to establish a violation of their rights because neither points to any right that Tobin violated or attempted to violate through the use of threats, intimidation or coercion as is required under the MCRA. Bally v. Northeastern Univ., 403 Mass. 713, 718, 532 N.E.2d 49 (1989). Simply put, Plaintiffs point to no conduct that they had a lawful right to engage in that they were prevented from engaging in by Tobin through the use of threats, intimidation, or coercion. Beyond assisting in an arrest for motor vehicle infractions, and Tobin allegedly gripping his firearm in a "threatening" posture, White does not set forth any conduct that he was told to engage in against his will, or to refrain from engaging in against his will. (Doc. No. 1, 3 C).

Once the lawfulness of a stop is established, as it has been here (Doc. No. 1-1, 19), law enforcement officers are empowered with complete command of the situation. Arizona v. Johnson, 555 U.S. at 330–31, 129 S. Ct. 781, 786, (internal quotations and citations omitted). At that point, Plaintiffs must comply with the directives of a law enforcement officer. Id.

To the extent White bases his MCRA claim on the argument that Sobrinho Silva lacked probable cause to act as he did, which subsequently impacts Tpr. Tobin's ability to assist with Sobrinho Silva's acts, there is no right to resist an arrest, even an illegal one.

> "However, even accepting that any arrest attended by force is intrinsically coercive, 'there still must be under MCRA some allegation that the defendant's conduct was intended to coerce [the plaintiff] into refraining from the exercise of a right or privilege secured by law.' Barbosa v. Conlon, 962 F.Supp.2d 316, 332 (D. Mass. 2013). Resisting the arrest itself cannot constitute the requisite "right or privilege" in this context, even if the suspect believes the arrest is illegal, because '[t]here is no right under state or federal law to resist an arrest or search, even one that is illegal from its inception.' Farrah v. Gondella, 725 F.Supp.2d 238, 248 (D. Mass. 2010). For that reason, the majority of courts have held that an allegation of excessive force or wrongful arrest does not, standing alone, give rise to a claim under the MCRA. Ciolino v. Eastman, 128 F.Supp.3d 366, 380 (D. Mass. 2015)."

Mercurio v. Town of Sherborn, 287 F. Supp. 3d 109, 123 (D. Mass. 2017).

Reviewing the totality of the circumstances, it is clear that Plaintiffs have failed to allege that Tobin undertook an effort to threaten, intimidate, or coerce either of them from engaging in the exercise of a lawful right or to prevent either of them from exercising a lawful right. Freeman, 419 Mass. at 565, 646 N.E.2d 139.

Because the MCRA claim is based on a violation of the same rights as Plaintiffs' 1983 claim, the same qualified immunity analysis applies. Jakuttis v. Town of Dracut, 95 F.4th 22, 35 (1st Cir. 2024). Under the Graham analysis, Tpr Tobin is entitled to qualified immunity. Count VII should be dismissed.

**J. Count IX Fails as Plaintiffs Have Not Suffered an Underlying Constitutional Harm**

On its face, the allegation against Tobin does not meet the extreme and outrageous standard required of an intentional infliction of emotional distress ("IIED") claim. In Massachusetts, in order for a plaintiff to recover on an intentional infliction of emotional distress claim, the conduct must be "extreme and outrageous." Howard Johnson Co., 371 Mass. 140, 355 N.E.2d 315 ("one who, by extreme and outrageous conduct and without privilege, causes severe emotional distress to another is subject to liability for such emotional distress…") Id. at 144.

It is for the court to decide in the first instance if the conduct alleged meets the "extreme and outrageous standard." Caputo v. Boston Edison Co., 924 F.2d 11, 14 (1st Cir. 1991). In the context of an excessive force claim, the Plaintiff must allege something beyond hurt feelings. Miller v. Pugliese, 693 F.Supp. 3d 163, 184 (D.Mass. 2023)("[Defendant], "unprovoked punched [Plaintiff] in his head and back, such behavior is not necessarily extreme and outrageous"). Here, there is no claim of any physical injury as Tobin's contact with White was limited to his assistance in helping Tpr. Sobrinho as she was removing him from the vehicle, after he refused to exit, handcuffing him and escorting him to a cruiser. Moreover, there is no allegation at all that Tobin ever came in physical contact with Northcross. Simply put, Plaintiff's complaint fails to set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678.

The conduct of a law enforcement officer who is merely carrying out his duties "as a matter of law cannot be deemed extreme and outrageous." Sietins v. Joseph, 238 F. Supp. 2d 366, 379 (D. Mass.

2003). In the circumstances pled by Plaintiffs, the conduct of Tobin falls far short of that required to establish "extreme and outrageous" conduct. Id.

Based on the foregoing, Count IX should be dismissed.

### K. Count X Fails as Plaintiffs Have Not Made Out a Claim Under the Eighth Amendment

The Eighth Amendment reads as follows: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eighth Amendment's proscription against the infliction of "cruel and unusual punishment" applies only to prisoners. Wilson v. Seiter, 501 U.S. 294, 297 (1991). The punishment with which the Eighth Amendment is concerned, therefore, does not arise until after a formal adjudication of guilt in accordance with due process of law is made. Gonzalez-Mercado v. Municipality of Guaynabo, 206 F. Supp. 2d 257, 260–61 (D.P.R. 2002). Since White was not convicted as a result of his arrest, the Eighth Amendment does not apply.

## V. CONCLUSION AND REQUESTED RELIEF

Based on the foregoing, Christopher Tobin respectfully requests that his motion to dismiss be granted, and that the Plaintiffs' complaint be dismissed, with prejudice and costs awarded to Tobin.

Respectfully submitted,

The Defendant,
CHRISTOPHER TOBIN,
By his attorney,

/s/ Daniel J. Moynihan
DANIEL J. MOYNIHAN (BBO # 546346)
Law Office of Daniel J. Moynihan, PC
271 Main Street, Suite 302
Stoneham, Ma. 02180
Moynihanlaw@verizon.net

**November 22, 2026**

**CERTIFICATE OF SERVICE**

I, Daniel J. Moynihan, hereby certify that on this 22d day of November 2026, the foregoing Motion to Dismiss was served on all parties by means of electronic filing via the Electronic Case Filing (ECF) system.

Signed under pains & penalties of perjury:

/s/ Daniel J. Moynihan
Daniel J. Moynihan, Esq.