**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

ONYX WHITE v. COMMONWEALTH OF MASSACHUSETTS, et al.

**Civil Action No. 1:26-cv-10046-DJC — Judge Casper**

**PLAINTIFFS' OPPOSITION TO PROBATION OFFICERS RIORDAN AND CURBY'S MOTION TO DISMISS (DOC. 36)**

Opposition to the motion filed October 21, 2026, by Attorney Dayana Donisca for Probation Officer Melinda Riordan and Probation Officer Curby (Docs. 36–37).

Plaintiffs Onyx White and Sincere Northcross, proceeding pro se, respectfully oppose the motion and ask the Court to deny it. In the alternative, Plaintiffs ask the Court to deny it as to all individual-capacity claims and all prospective declaratory and injunctive relief, and, if the Court finds any pleading gap, to grant leave to amend under Rule 15(a)(2) rather than dismiss with prejudice.

## Preliminary statement — the motion answers a complaint Plaintiffs did not file

The motion's central sentence is that the Complaint "includes no factual allegations about any of the Defendants" and that all Plaintiffs allege is that two probation officers "initiated probation violation proceedings." Compl. § III, quoted at Doc. 37 at 8. That sentence survives only by stopping the Complaint at § III. Read as a whole — as Rule 12 requires — the Verified

Complaint alleges that probation officials "knowingly proceeded with violations" despite possessing exculpatory evidence (Compl. § IV.G); that the probation departments "affirmatively relied on [false] reports despite readily available exculpatory evidence, thereby ratifying the unconstitutional conduct" (Compl. § IV.I); that the false reports were allowed to be relied upon "across multiple legal systems — criminal court, probation, parole, and RMV — without independent verification" (Compl. § IV.I(d)); and that no safeguards ensured "exculpatory evidence, including body-worn camera footage, is reviewed accurately before initiating probation … sanctions" (Compl. § IV.I(e)). Initiation is not the claim. Continuation is the claim: continuation, for the better part of a year, of parallel violation proceedings built on a police report that contradicted itself and its own citation, after body-worn camera footage vindicated Plaintiff White, and after — on Plaintiff White's pleaded account — Riordan and her superior acknowledged to him in court that the trooper was wrong.

Plaintiffs do not ask the Court to decide today that every allegation is proved. That is not the Rule 12 standard. Plaintiffs ask the Court to do what Rule 12 requires: take the well-pleaded facts of the Verified Complaint as true, draw every reasonable inference in Plaintiffs' favor, and ask only whether those facts plausibly plead each element of each claim against these two officers. Worked through element by element — the work the motion omitted — they do.

## I. The standard the Court must apply — pro se, verified, and read in Plaintiffs' favor

### A. All inferences run to Plaintiffs, the non-movants

On a motion under Rule 12(b)(6), the Court accepts well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011). The movants concede the same standard for Rule 12(b)(1): the Court must "take as true all well-pleaded facts in the plaintiffs' complaint … and draw all reasonable inferences

therefrom in the plaintiffs' favor." Doc. 37 at 3, citing Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). Plausibility under Twombly and Iqbal is not probability, and it is not a license to weigh the defendants' account of their own paperwork against the plaintiff's sworn one.

## B. Plaintiffs are pro se, and Plaintiff White is a Department of Mental Health client with severe mental-health and cognitive disorders

Plaintiff Onyx White proceeds pro se. He states, and asks the Court to note, that he lives with severe mental-health and cognitive disorders and is currently a client of the Massachusetts Department of Mental Health (DMH). Pro se pleadings are held to less stringent standards and construed liberally. Haines v. Kerner, 404 U.S. 519 (1972); Erickson v. Pardus, 551 U.S. 89 (2007). Plaintiffs respectfully ask the Court to draw all inferences in the light most favorable to the Plaintiffs, as the law requires for the non-moving party, and to read the Complaint — drafted without counsel by a litigant managing the conditions described above — for what it alleges in substance, not for the precision of its citations. Where this Opposition identifies a gap the Court finds material, the pro se remedy the rules supply is leave to amend, not dismissal with prejudice. Part XI.

## C. This is a Verified Complaint — sworn, exhibit-backed, and entitled to be treated as evidence of its facts at this stage

The Complaint is verified under 28 U.S.C. § 1746. Plaintiff White declares under penalty of perjury that he has personal knowledge of the facts alleged, except as to matters stated on information and belief, and expressly submits the Complaint as a sworn affidavit for consideration in connection with motions to dismiss. The Complaint incorporates Exhibits A–M by reference, including the body-worn camera footage (Ex. A), the Dudley District Court dismissal finding materially false evidence (Ex. B), Trooper Sobrinho Silva's police report (Ex. C), and the parole and probation violation proceedings and their consequences (Ex. G). A

verified, exhibit-backed pleading is not a "threadbare recital." It is sworn factual content, and at this stage it is taken as true.

## II. The facts taken as true, and the exhibits that carry them

On April 9, 2025, at approximately 5:00 p.m., Plaintiff White was lawfully driving in Massachusetts with his brother, Plaintiff Sincere Northcross. Compl. § IV.B. Trooper Yasmin Sobrinho Silva — now Yasmin Sobrinho Silva; the April 2025 records predate her May 28, 2026 name change and list her as Yasmin P. Sobrinho — followed Plaintiffs' vehicle for several miles, approached in a hostile and aggressive manner, reviewed Plaintiff White's CORI record, and called for a tow and backup. Compl. §§ IV.B–C. Trooper Christopher Tobin arrived gripping his firearm. The troopers forcibly opened the door, removed Plaintiff White, handcuffed and arrested him. No weapons or contraband were found. Plaintiff Northcross was held on scene, threatened, and stranded for hours. Compl. § IV.C. During transport, the trooper interrogated Plaintiff White about his religion. Compl. § IV.E. After Plaintiff White spoke publicly, the trooper submitted false information to the RMV and his license was suspended. Compl. § IV.E.

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | On October 22, 2025, the Dudley District Court allowed Plaintiff White's |

| | | |
|---|---|---|
| | | motion to dismiss, finding materially false information submitted by Trooper Sobrinho Silva, citing Commonwealth v. DiBenedetto and Commonwealth v. Duffy. Compl. §§ IV.F, IV.I. Multiple judges found her testimony not credible after reviewing body-worn camera footage. She failed to appear for court-ordered summonses, prolonging the proceedings. Compl. § IV.I. Despite possessing that exonerating evidence, the probation departments continued to rely on the false narrative. Compl. §§ IV.F, IV.G, IV.I. |

**Exhibit**

**What it is (Compl. Exhibit List)**

**What it proves at the pleading stage**

A

Body-worn camera footage / stills of the stop

The actual stop and the trooper's conduct; contradicts the police report; the evidence probation had and had a duty to weigh

B

Dudley District Court dismissal / finding of materially false evidence (Oct. 22, 2025)

A court found the predicate for every April 9 proceeding materially false; favorable termination

C

Police report and arrest narrative, Case #2025-CTrp-3190, with Citations Nos. 329626AD and 330121AD (appended to this Opposition)

False statements, omissions, and internal contradictions on the face of the only predicate the violation proceedings had

G

Parole / probation violation proceedings and consequences

The violation proceedings themselves: initiation, continuation, compelled appearances, and the restrictions imposed

I

Mental-health documentation from a licensed social worker

Plaintiff White's disability, DMH treatment, and the psychological injury the prolonged proceedings caused

L

Social-media posts on the incident / the trooper's prior conduct

The protected speech that preceded the retaliatory administrative actions

## The predicate contradicted itself — and probation's duty was to see it

The police report — Exhibit C, appended — is the document on which the violation proceedings rested, and it contradicts itself in its own words. In a single paragraph the narrative claims: RADAR locked Plaintiff's vehicle at 95 mph in a posted 65 mph zone; LIDAR confirmed 92 mph, then 94 mph, then 94 mph a third time; Plaintiff was "tailing another vehicle … (less than 1

car length behind the vehicle) at a high rate of speed"; in about 10 minutes of speed enforcement, "no other vehicles … were on RADAR or LIDAR going more than 75 mph"; and the trooper "clocked and estimated its speeds to be over 100 mph" while taking "almost 3 miles" to catch up. Ex. C ¶ 1.

Those statements cannot all be true, and the arithmetic is the kind any reviewer could do on the face of the report. A vehicle traveling at 95 mph behind traffic traveling at no more than 75 mph is closing at roughly 20 mph — about 29 feet per second. A gap of less than one car length — roughly 15 feet — closes in about half a second. A driver cannot simultaneously sustain 92–95 mph, sit less than a car length behind a vehicle traveling at least 20 mph slower, and continue down the highway. Either the speeds are false, or the following distance is false, or both. And the citation issued on the same stop removes any doubt that the paperwork was unreliable: the Speeding block on the associated citation records no speed at all and checks no measurement method, while the narrative claims three separate LIDAR readings to the mile per hour.

Plaintiff White's pleaded account adds what the Court must credit at this stage. All of the probation officers had the April 9, 2025 video recording showing he was innocent. Probation Officer Melinda Riordan and her superior probation officer both told him in court that the officer was wrong; they told him Trooper Sobrinho Silva had avoided all of their calls and had been extremely disrespectful. The trooper was ordered to court by summons from the Suffolk Superior Court Probation Department and refused to come to any court date. The underlying case was dismissed because Trooper Sobrinho Silva presented materially false material — yet the proceedings against Plaintiff White continued for the better part of a year. He was forced into court two to three times a month. The Suffolk Superior Court Probation Department and the Juvenile Court Probation Department, working hand in hand, imposed travel restrictions on him.

Two separate probation violations were ultimately dismissed. These are Plaintiff White's allegations, pleaded from his own presence at his own proceedings; Defendants may contest them at summary judgment or at trial, but on Rule 12 they are taken as true.

## III. The governing duty: liberty may be taken only on proof, by a preponderance, on reliable evidence — and commencement is a decision, not a reflex

Probation is liberty on conditions. A probationer's liberty is conditional, but it is liberty, and the Fourteenth Amendment protects it. Morrissey v. Brewer, 408 U.S. 471 (1972), and Gagnon v. Scarpelli, 411 U.S. 778 (1973), set the federal floor for revocation: written notice of the claimed violations, disclosure of the evidence, an opportunity to be heard and to present evidence, a neutral decisionmaker, and a written statement of the evidence relied on and the reasons for the decision. Those minimums are not paperwork formalities. They exist so that a liberty decision rests on evidence, not on an accusation copied from another agency's file.

- Finding by a preponderance. Under Massachusetts law a violation must be proved, not presumed. Rule 8 of the District / Boston Municipal Court Rules for Probation Violation Proceedings provides that if probation has failed to prove by a preponderance of the evidence that the probationer committed the violation alleged, the court shall not revoke or extend probation on that allegation. The Superior Court Guidelines for Probation Violation Proceedings and Trial Court Standing Order 2-16 impose the same uniform expectation across the Superior, District, Boston Municipal, and Juvenile Court departments: proceedings conducted in accordance with applicable law, on proof.
- Reliability as a due-process requirement. In Commonwealth v. Durling, 407 Mass. 108 (1990), and its progeny, including Commonwealth v. Kelsey, 464 Mass. 315 (2013), and Commonwealth v. Sargent, 486 Mass. 638 (2021), Massachusetts requires that the

evidence on which a violation rests be reliable, because a liberty decision made on unreliable hearsay or an unexamined document is not due process at all. A police report that contradicts itself and its own citation is the opposite of reliable evidence.

- Commencement is a decision, governed by rules — not an automatic reflex. Rules 3 and 4 of the District / Boston Municipal Court Rules govern violation proceedings founded on new charged criminal conduct and on other violations, including the probation officer's own assessment of whether a violation notice should issue at all. An officer who receives a charge is not a conveyor belt. The decision to initiate, the decision to continue after the predicate is impeached, and the decision to seek restrictions in the interim are each exercises of discretion for which the officer is answerable.
- Juvenile probation is not a lower standard. In Commonwealth v. Preston P., 483 Mass. 759 (2020), the Supreme Judicial Court held that even for a juvenile's pretrial probation, due process requires written notice, an opportunity to be heard, and a decision resting on the evidence. Officer Curby's department — the Boston Municipal Court Juvenile Probation Department — works under the same preponderance and reliability floor.

Plaintiffs do not contend that a rule or guideline, standing alone, creates a private damages right. The rules matter for three pleaded purposes: they define the process that was due in these proceedings; they defeat any claim that a reasonable officer could believe a self-contradictory report, contradicted by video, satisfied the standard; and they show that "we followed procedure" cannot be the answer, because the procedure itself required proof by a preponderance on reliable evidence — proof these defendants never had.

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | **IV. Ele me nt by ele me nt: the pro bat ion all eg ati on s cle ar** |

| | | |
|---|---|---|
| | | |
| | | the sta nd ard |

**Element the plaintiff must plausibly plead**

**What the Verified Complaint and Plaintiff's pleaded account allege**

**Exhibit / source**

1. State action and personal involvement of each officer

Riordan (Suffolk Superior Court Probation) and Curby (Boston Municipal Court Juvenile Probation) each initiated violation proceedings against Plaintiff White in their own departments, working hand in hand in parallel proceedings. Compl. § III. Continuation was personal and repeated: compelled appearances two to three times a month for the better part of a year.

Compl. § III; Ex. G

2. A protected liberty interest

Plaintiff White was on probation / supervision. The proceedings exposed him to revocation and incarceration and in fact restricted his liberty: travel restrictions imposed by both probation departments and repeated compelled court appearances. Compl. § IV.G.

Compl. § IV.G; Ex. G

3. A predicate that could not meet preponderance / reliability

The predicate was Sobrinho Silva's report: RADAR 95 mph, LIDAR 92/94/94 mph, "less than 1 car length" behind a vehicle, no other vehicle over 75 mph, "over 100 mph" catching up — statements that cannot all be true — paired with a citation recording no speed at all. Body-worn camera footage contradicted the narrative.

Compl. §§ IV.B–C, IV.I; Exs. A, C

4. Knowledge — actual or constructive — that the predicate was false or unreliable

The officers had the April 9, 2025 video. On Plaintiff's account, Riordan and her superior told him in court the officer was wrong, that the trooper had avoided all their calls and been extremely disrespectful, and the trooper then defied the department's own summons and never appeared. Multiple judges found her testimony not credible. Compl. §§ IV.F, IV.I.

Compl. §§ IV.F, IV.I; Exs. A, B, G

5. Continuation after knowledge — the operative conduct

Despite possessing exculpatory evidence, "probation … officials knowingly proceeded with violations." Compl. § IV.G. The departments "affirmatively relied on those false reports despite readily available exculpatory evidence, thereby ratifying the unconstitutional conduct." Compl. § IV.I. Two probation violations were ultimately dismissed.

Compl. §§ IV.G, IV.I; Ex. G

6. Causation and injury

Months of unlawful liberty deprivation: repeated compelled appearances, travel restrictions, exposure to incarceration, severe anxiety, panic attacks, PTSD symptoms, and the cascading loss of employment and professional opportunity pleaded in Compl. §§ IV.G–H.

Compl. §§ IV.G–H; Exs. G, I

7. No adequate justification — 'procedure' is not proof

Defendants plead no independent investigation and no reliable evidence of their own. A violation proceeding that runs for months on a predicate its own proponent refused to appear and defend does not satisfy preponderance or reliability at any point in its life.

Compl. § IV.I(d)–(e)

Worked through those elements, the movants' sentence — that Plaintiffs allege only that probation "initiated proceedings" — is unsustainable. The Complaint pleads who (Riordan in Suffolk Superior Court Probation; Curby in Boston Municipal Court Juvenile Probation), what (parallel violation proceedings on a single false predicate), what they had (the video, the self-contradictory report, the blank-speed citation), what they knew (on Plaintiff's account, stated to his face: the officer was wrong), what they did anyway (continued for the better part of a year, with travel restrictions and two to three compelled appearances a month), and how it ended (two violations dismissed; the underlying charges dismissed because Trooper Sobrinho Silva presented materially false evidence). That is personal involvement in a constitutional violation, pleaded with the particularity Rule 12 requires of a pro se plaintiff.

## A. Officer Riordan — Suffolk Superior Court Probation

As to Riordan, the personal-involvement allegation is direct, not supervisory. She is the named Suffolk Superior Court probation officer who initiated proceedings against Plaintiff White. Compl. § III. Plaintiff's pleaded account places her in the courtroom, with her superior, acknowledging that the trooper was wrong and that the trooper had avoided the department's calls — and the proceedings in her department nonetheless continued, on the trooper's paper, after the trooper refused the department's own summons. An officer who knows the sole witness against her probationer will not appear, will not answer calls, and has been found not credible, and who nonetheless keeps the violation alive month after month, has not "followed procedure." She has made a series of personal decisions, each of which prolonged a liberty deprivation she had reason to know lacked the proof the law requires.

## B. Officer Curby — Boston Municipal Court Juvenile Probation, and supervision

As to Curby, the Complaint names him as the Boston Municipal Court Juvenile Probation officer who initiated parallel proceedings. Compl. § III. The movants' own memorandum adds the fact that completes the supervisory allegation: it describes Curby as an Assistant Chief Probation Officer. Doc. 37 at 1. A supervisor is not liable for a subordinate's acts by respondeat superior — Plaintiffs do not plead that theory — but a supervisor is liable for his own conduct where he knows of a constitutional violation, has the authority to stop it, and is deliberately indifferent to it. Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The parallel juvenile-court proceedings ran on the same report, the same video, and the same non-appearing trooper, in coordination with Suffolk Superior Court Probation — "working hand in hand," on Plaintiff's account. Curby's own initiation of the parallel proceeding, and his continuation of it in a supervisory role after the predicate collapsed, are his own acts. The Complaint separately names John Does 1–10 as Suffolk Superior Probation Supervisors; the existence of unnamed supervisors does not erase the named officers' own conduct.

## C. "We only followed procedure" is a merits defense, and on these allegations it proves Plaintiffs' point

A probation officer's duty is not exhausted by issuing the correct form. Procedure is the vehicle for the preponderance and reliability requirements, not a substitute for them. If the departments' position is that a facially defective police report automatically required them to initiate and maintain violation proceedings for the better part of a year — without weighing the video they possessed, without securing the testimony of the trooper they summoned, and without regard to judicial findings that her evidence was materially false — then the position itself pleads the deliberate indifference the Complaint alleges: a custom of allowing "false police reports to be

relied upon across multiple legal systems … without independent verification," Compl. § IV.I(d), with no "safeguards ensuring that exculpatory evidence … is reviewed accurately before initiating probation … sanctions," Compl. § IV.I(e). Whether the officers in fact investigated is a question of fact. It cannot be resolved against the Plaintiffs on the pleadings.

**The proceedings ended in Plaintiffs' favor.** On July 9, 2025, after the body-worn camera video of the stop (Exhibits Probation 1–4) was admitted, the court found Plaintiff White 'Not found in violation of probation.' (Docket, Case No. 10YO0006RO, p. 12, printed Aug. 7, 2025; Hon. Peter M. Coyne, Presiding.) On August 21, 2025, the court dismissed the probation surrender by order of the court — 'Surrender Dismissed by Order of the Court. Defendant remains on probation.' (Suffolk County Criminal Docket Report, Case No. 1084YO10516, pp. 14–15, printed Aug. 22, 2025; Hon. Christopher Belezos, Presiding.) The Commonwealth could not prove the violation with the information the trooper sent — the report and the video.

## V. "Not present at the stop" answers a claim Plaintiffs did not plead against these officers

The memorandum's Rule 12(b)(6) argument reduces to geography: Riordan and Curby were not at the April 9 stop, so they cannot be liable for what happened there. Doc. 37 at 9. The claims against these officers do not arise from the stop. They arise from what these officers themselves did afterward, for months, in their own departments: initiating and continuing violation proceedings on a predicate they had the means and the duty to test. Section 1983 liability is personal, and personal involvement is measured against the defendant's own conduct. Soto v. Flores, 103 F.3d 1056, 1061–62 (1st Cir. 1997), cited by the movants, requires conduct by the defendant that deprives the plaintiff of a constitutional right. The conduct pleaded here —

knowing continuation of liberty proceedings on false and unreliable evidence — is these defendants' conduct, and no one else's.

The capacity argument fails for the same reason. The movants ask the Court to re-read the Complaint as official-capacity only, citing Pena v. Gardner, 976 F.2d 469 (9th Cir. 1992), and Idaho v. Coeur d'Alene Tribe, 521 U.S. 261 (1997). Doc. 37 at 8–9 & n.4. But the Supreme Court's rule is the opposite of a caption trick in either direction: whether a suit is against an official personally turns on the allegations and the relief sought, and an official sued for his own conduct is liable in his personal capacity even for acts taken under color of his office. Hafer v. Melo, 502 U.S. 21 (1991); Kentucky v. Graham, 473 U.S. 159 (1985). The Complaint alleges personal, knowing conduct by two named officers and seeks damages from them. The movants' own footnote concedes Idaho concerned declaratory and injunctive relief, not the personal-capacity damages analysis Hafer controls. Doc. 37 at 9 n.4. An out-of-circuit district decision, Bradley-Aboyade v. Crozier (E.D. Cal. 2020), cannot displace Hafer in the First Circuit.

Bruyette v. Patrick, No. CA 13-12727-DJC, 2013 WL 6708998 (D. Mass. Dec. 16, 2013), does not carry the movants either. There, the complaint contained "no allegations at all" against a governor whose only connection was his obligation to enforce the laws generally. Here, the Complaint and Plaintiff's account allege specific acts by the two officers who ran the two proceedings that restricted Plaintiff White's liberty: initiation, continuation after knowledge, interim travel restrictions, and months of compelled appearances. Feliciano v. DuBois, 846 F. Supp. 1033 (D. Mass. 1994), is the same point in reverse — a distant official with no role in the specific proceedings. Riordan and Curby had the specific proceedings. That is the whole case against them, and Bruyette's "no allegations" holding has nothing to say about allegations this specific.

## VI. The Eleventh Amendment reaches, at most, official-capacity damages — it does not touch the individual-capacity claims or prospective relief

### A. What Plaintiffs preserve, and what follows from it

Doc. 37 starts from two propositions: a State is generally immune from a private suit for money damages in federal court absent waiver or valid abrogation, and neither the Commonwealth nor a state official in his official capacity is a "person" for § 1983 damages. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991). Plaintiffs do not concede those propositions, and they preserve every count as pleaded — including any count seeking money damages from Riordan or Curby in their official capacities — for the Court to decide. If the Court holds any official-capacity damages claim barred, that is the Court's ruling, not Plaintiffs' concession. The holding would decide almost nothing in this motion, because the claims that matter against these two officers are (1) damages claims against them in their individual capacities, and (2) claims for prospective declaratory and injunctive relief. The Eleventh Amendment bars neither.

### B. Individual-capacity damages are not the Commonwealth's immunity

"[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983" and the Eleventh Amendment does not bar such suits, because the plaintiff seeks recovery from the official personally, not from the state treasury. Hafer v. Melo, 502 U.S. at 30–31; Will, 491 U.S. at 71. The same is true under the MCRA: the Commonwealth itself is not a "person," Commonwealth v. Elm Medical Laboratories, 33 Mass. App. Ct. 71 (1992), but individual officers are persons, and Count VII runs against Riordan and Curby personally for interference with secured rights by the knowing use of false proceedings — conduct the Complaint pleads was backed by the coercive machinery of compelled appearances and threatened incarceration.

## C. Prospective declaratory and injunctive relief — Ex parte Young

Under Ex parte Young, 209 U.S. 123 (1908), a suit against a state official alleging an ongoing violation of federal law and seeking relief that governs future conduct is not barred by the Eleventh Amendment. The Complaint's Prayer seeks declaratory and injunctive relief. Compl. § VI. That relief is live as to these defendants in a concrete form: a declaration that violation proceedings maintained on materially false evidence violated Plaintiff White's rights, and an injunction requiring the correction or expungement of probation records that continue to record violations derived from the April 9 predicate — records that, like the RMV record addressed in the Doc. 32 opposition, continue to be consulted and to injure Plaintiff White whenever his supervision history is reviewed. To remove any doubt about the proper party for that relief, Plaintiffs ask, in the alternative and without conceding amendment is necessary, for leave to name Riordan and Curby expressly in their official capacities for Ex parte Young purposes.

## D. The ADA requires the United States v. Georgia analysis, claim by claim

Doc. 37 treats Buchanan v. Maine, 469 F.3d 158 (1st Cir. 2006), as if Title II of the ADA never abrogates immunity. In United States v. Georgia, 546 U.S. 151, 159 (2006), the Supreme Court prescribed an as-applied inquiry: where the conduct alleged also violates the Fourteenth Amendment, Title II validly abrogates immunity as to that conduct. Count V alleges that probation officials, knowing Plaintiff White is a person with mental-health disabilities and a DMH client (Compl. § IV.D), subjected him to months of proceedings that foreseeably and actually aggravated panic attacks, PTSD symptoms, and acute psychological harm, without any accommodation of his disability in the scheduling and conduct of those proceedings (Ex. I). Whether that conduct independently violates the Fourteenth Amendment is the Georgia question, and it cannot be answered against Plaintiffs on a memorandum that never attempts the analysis.

### E. The MTCA arguments do not reach the claims pleaded against these officers personally

Three answers to Doc. 37 at 7–8 & n.3. First, Counts VIII and IX — defamation and false light, and intentional infliction of emotional distress — are pleaded as common-law intentional torts against the individual officers. The MTCA by its terms does not govern intentional torts: Mass. Gen. Laws ch. 258, § 10(c) exempts them from the Act, which is why the movants cite § 10(c) for the Commonwealth's immunity. An intentional tort that is outside the MTCA as against the employer proceeds at common law against the employee who committed it; § 10(c) is a shield for the public employer, not a personal immunity for the tortfeasor. Second, presentment under ch. 258, § 4 is a condition precedent to an action under the MTCA against a public employer. It is not a condition on § 1983, MCRA, ADA, or common-law intentional-tort claims against individuals, and the movants cite no authority applying Gilmore or Drake to claims of those kinds against officers personally. Third, to the extent the Court construes any negligence theory against the officers as an MTCA claim, Mass. Gen. Laws ch. 258, § 2 bars it against employees acting within the scope of employment — as set out in Part IX — and any dismissal on that ground should be without prejudice to the extent Massachusetts law permits the claim to be pursued against the public employer in Superior Court after presentment.

## VII. Qualified immunity cannot carry this motion — the rights were clearly established, and knowledge is a fact question the pleadings resolve for Plaintiffs

The First Circuit's inquiry asks whether the facts alleged show a violation of a constitutional right, whether that right was clearly established at the time, and whether a reasonable official would have understood the conduct to violate it. Penate v. Hanchett, 944 F.3d 358, 366 (1st Cir. 2019). The movants' entire qualified-immunity section is one sentence of substance: Plaintiffs

"fail to plausibly allege that Defendants violated their constitutional rights." Doc. 37 at 11. Parts III and IV answer that premise. What remains is the clearly-established prong, and on the conduct pleaded it is not close:

- You may not obtain or maintain a conviction — or a violation finding that extends supervision and threatens incarceration — through evidence you know to be false. Mooney v. Holohan, 294 U.S. 103 (1935), has held for ninety years that due process forbids the State to proceed on testimony it knows to be perjured or evidence it knows to be fabricated. A probation violation proceeding is not exempt from Mooney because its burden is preponderance rather than proof beyond a reasonable doubt; the lower burden makes the reliability of the evidence more important, not less.
- You may not fabricate or knowingly use materially false evidence to set legal process in motion and keep it in motion. Limone v. Condon, 372 F.3d 39 (1st Cir. 2004), denied qualified immunity at the pleading stage to officials alleged to have framed a man with fabricated evidence and suppressed the exculpatory truth. The First Circuit did not require a case with identical facts; the right not to be proceeded against on evidence the official knows is false was clearly established.
- You may not revoke or extend a probationer's liberty without the Morrissey / Gagnon minimums, including a decision that actually rests on the evidence. Those minimums have been clearly established since 1972 and 1973, and Massachusetts law has required a preponderance finding on reliable evidence throughout the relevant period. Durling, 407 Mass. 108.
- You may not continue a proceeding after its sole supporting witness refuses your own summons, after judges have found that witness not credible on video, and after you have

told the probationer the officer was wrong — and call the continuation a reasonable mistake of law. Qualified immunity protects reasonable mistakes about unsettled law. It has never protected knowingly using false evidence, and it has never protected ignoring a video that vindicates the accused.

Two further points end the inquiry at this stage. First, knowledge is the hinge of this defense, and knowledge is a question of fact. The Complaint pleads knowledge expressly ("knowingly proceeded," Compl. § IV.G; "affirmatively relied … despite readily available exculpatory evidence," Compl. § IV.I), and Plaintiff's account pleads the courtroom acknowledgment in terms. A court cannot find a reasonable-officer mistake on a record it must read as pleading actual knowledge. Second, the movants' burden point (Doc. 37 at 11, citing Escalera-Salgado v. United States, 911 F.3d 38, 41 (1st Cir. 2018)) is a burden to show the defense does not apply — and Parts III, IV, and this Part carry it: a pleaded violation, of rights established by Mooney, Morrissey, Gagnon, and Limone, by officers alleged to have known the predicate was false. If the Court has any doubt, the doubt itself — turning on what these officers knew and when — is a reason to deny the motion and let discovery test it, not to dismiss.

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | **VIII. Count by count — every element, against Riordan and Curby** |

The Complaint pleads ten counts. Compl. § V. The movants addressed none of them count by count; they asserted globally that no facts support any of them. The table below does the work the motion omitted. It states the governing elements in summary form and the Complaint allegations that plausibly satisfy each as to Riordan and Curby in their individual capacities (and, for prospective relief, in their official capacities). A claim that clears the standard in either capacity may not be dismissed wholesale. Plaintiffs state candidly, in the table itself, where a count is directed principally at the troopers at the stop; candor about allocation is not a

concession that the count fails against these defendants on the continuation theory the Complaint actually pleads.

**Count**

**Elements (summary)**

**Pleaded as to Riordan and Curby**

I — Fourth Amendment, § 1983 (unreasonable seizure / false arrest)

State action; seizure; absence of probable cause; personal causation

The April 9 seizure did not end at the roadside. Violation proceedings maintained without a lawful predicate extended the seizure into months of compelled appearances and restrictions — a continuing seizure effected by these officers' own process.

II — Excessive Force, § 1983

Force in effecting a seizure; unreasonableness under Graham v. Connor

Directed principally at the troopers at the stop (forcible removal; firearm posture). As to these defendants, Plaintiffs rest this count on the coercive force of the proceedings themselves only in the alternative and do not ask the Court to sustain it against Riordan and Curby on force they did not personally apply.

III — Malicious Prosecution, § 1983

Proceedings initiated / continued without probable cause; favorable termination; malice or reckless disregard inferable

Violation proceedings initiated and continued on a report the officers had the video to test; two probation violations dismissed and the underlying charges dismissed Oct. 22, 2025 on materially false evidence — favorable termination under Thompson v. Clark, 596 U.S. 36 (2022). Continuation after knowledge supplies the culpable state of mind.

IV — Fourteenth Amendment Due Process

Protected liberty interest; state action; process or substantive conscience-shocking conduct

The core count against these officers: Morrissey / Gagnon process denied in substance — proceedings maintained for months on unreliable, self-contradictory evidence, after knowledge, in defiance of the preponderance and reliability floor (Part III). Knowing use of false evidence also states a substantive violation under Mooney.

V — ADA Discrimination (42 U.S.C. § 12132)

Qualified individual with a disability; exclusion / discrimination by a public entity; as-applied Georgia analysis

Plaintiff White is a DMH client with severe mental-health and cognitive disorders (Compl. § IV.D; Ex. I). Months of compelled appearances, without accommodation, foreseeably aggravated the pleaded psychological injuries. Immunity requires the claim-by-claim Georgia analysis of Part VI.D.

VI — First Amendment Retaliation and Religious Discrimination

Protected speech / religious exercise; adverse action; causal connection

The violation proceedings were one arm of the multi-agency reliance on the false narrative that followed Plaintiff White's public speech about the stop (Compl. §§ IV.E–F, IV.I(f)). As to the religious interrogation itself, the count is directed principally at the trooper; as to these defendants it is pleaded on the retaliation-by-continuation theory.

VII — MCRA (Mass. Gen. Laws ch. 12, §§ 11H–11I)

Interference with secured rights by threats, intimidation, or coercion; defendant is a "person"

Individual officers are "persons" under the MCRA (Part VI.B). Compelled appearances under threat of revocation and incarceration, maintained on known-false evidence, are coercion within the Act's meaning.

VIII — Defamation and False Light

False statement of fact published to third parties; fault; damages

Each violation filing and each month of continuation republished the false narrative of the April 9 charges to courts, supervisors, and agencies (Compl. § IV.I(d)). Pleaded as a common-law intentional tort against the officers personally; outside the MTCA (Part VI.E).

IX — Intentional Infliction of Emotional Distress

Extreme and outrageous conduct; intent / recklessness; causation; severe distress

Maintaining liberty proceedings for the better part of a year against a DMH client the officers knew to be innocent on the video — after acknowledging the officer was wrong — is plausibly extreme and outrageous. Distress is documented (Ex. I): panic attacks, PTSD symptoms, night terrors.

X — Cruel and Unusual Punishment, § 1983

Punishment without lawful basis / deliberate indifference to a protected person

Pleaded in the alternative: restrictions and threatened incarceration imposed and maintained without a lawful predicate, on a probationer whose innocence the evidence in the officers' possession established. Plaintiffs acknowledge this count's principal doctrinal home is the Eighth Amendment and ask that it be read with Count IV, which carries the same facts under the Fourteenth Amendment.

Massachusetts constitutional claims — preserved and pleaded in the alternative. In addition to the federal counts, the Complaint invokes Massachusetts law, including the MCRA (Count VII)

and violations of the Massachusetts Declaration of Rights — including Article 12 (no subject shall be deprived of liberty or property but by the judgment of his peers or the law of the land) and Article 14 (freedom from unreasonable searches and seizures) — arising from the same pleaded facts. Those claims are within the Court's supplemental jurisdiction, 28 U.S.C. § 1367(a). If the Court declines supplemental jurisdiction over any state claim it dismisses on immunity grounds, Plaintiffs ask that the dismissal state that ground and be without prejudice to refiling in the Superior Court.

| | | |
|---|---|---|
| | | |
| | | **IX. Negligence — pleaded in the alternative as to Riordan and Curby** |

Plaintiffs plead knowing and deliberate conduct, and Parts III through VIII are written on that pleading. In the alternative, and without conceding anything about knowledge, the same facts plead negligence, and Plaintiffs ask that the negligence showing not be lost in the immunity argument. A probation officer owes a probationer reasonable care in the exercise of the discretion the rules confer: reasonable care to examine the predicate before initiating a violation, reasonable care to weigh exculpatory evidence while a violation is pending, and reasonable care not to maintain interim restrictions after the predicate has collapsed. On the pleaded facts, each duty was breached: the report's internal contradictions and the blank-speed citation were visible on the face of the paperwork; the video was in the officers' possession; the trooper's refusal to answer calls or obey the summons was known to the department that issued it; and the proceedings nonetheless continued for months.

**Officer**

**Duty of reasonable care, as pleaded**

**Breach pleaded in the alternative**

Probation Officer Melinda Riordan

To exercise reasonable care before initiating, and while continuing, Suffolk Superior Court Probation violation proceedings that restrict a probationer's liberty — including examining the report, the citation, and the body-worn camera footage the department possessed.

Negligent initiation and continuation of violation proceedings for the better part of a year without examining the self-contradictory report against the citation and the video, and without securing the testimony of the trooper who defied the department's summons.

Probation Officer Curby

The same duty in the Boston Municipal Court Juvenile Probation proceedings, heightened by his supervisory role as Assistant Chief Probation Officer (per Doc. 37 at 1): reasonable care to ensure parallel proceedings in his department rested on reliable evidence.

Negligent initiation and continuation of the parallel juvenile-court proceedings on the same untested predicate, and negligent supervision in allowing those proceedings to run in coordination with Suffolk Superior Court Probation after the predicate was impeached.

The MTCA framework is as follows. Mass. Gen. Laws ch. 258, § 2, channels negligence liability to the public employer under the MTCA, subject to presentment. Whether it bars negligence claims against Riordan and Curby personally is for the Court to decide, and Plaintiffs preserve those claims as pleaded. In the alternative, Plaintiffs ask that any negligence dismissal as to them be without prejudice to a presented MTCA claim against the public employer in Superior Court. The negligence showing retains its force in this motion regardless: an officer who did not

exercise even reasonable care to read the report against the video cannot claim the protection of a reasonable-officer standard under qualified immunity for the knowing conduct pleaded in the first instance.

## X. Damages — compensatory damages against all defendants, and punitive damages against Riordan and Curby individually

Plaintiff White directs the Court's attention to the relief the Complaint actually prays for, because Doc. 36 asks for dismissal of the case without ever addressing it. The Prayer seeks compensatory damages, punitive damages, declaratory and injunctive relief, and fees and costs. Compl. § VI. A motion to dismiss tests whether a claim is plausibly pleaded, not what the claim is worth; compensatory damages under § 1983 compensate actual injury proved in evidence, Carey v. Piphus, 435 U.S. 247 (1978), and the Complaint pleads the injury inventory in detail: months of liberty deprivation and compelled appearances, travel restrictions, exposure to incarceration, severe anxiety, panic attacks, PTSD symptoms and night terrors, physical symptoms, lost employment and professional opportunities, and reputational harm. Compl. §§ IV.G–H. Compensatory damages are sought against all defendants, in every form the law allows as to each.

| | |
|---|---|
| | |
| | |
| | Punitive damages are sought against the individual defendants, including Riordan and Curby in their individual capacities. Under *Smith v. Wade*, 461 U.S. 30 (1983), punitive damages under § 1983 are available against an individual whose conduct is motivated by evil motive or intent, or involves reckless or callous indifference to the federally protected rights of others. Whether punitive damages run against the |

| | |
|---|---|
| | Commonwealth or its agencies, or against any defendant in an official capacity, is a question Plaintiffs preserve for the Court to decide on *Will*. The punitive prayer against these two officers personally is exactly the form *Smith v. Wade* permits: |

**Individual defendant**

**Pleaded conduct from which a jury could find evil motive or reckless / callous indifference**

Probation Officer Melinda Riordan

Initiating and continuing violation proceedings for the better part of a year on a report contradicted by body-worn camera footage in the department's possession; continuing after — on Plaintiff's account — acknowledging in court that the trooper was wrong and that the trooper had avoided the department's calls; continuing after the trooper defied the department's own summons and after judges found her testimony not credible.

Probation Officer Curby

Initiating and continuing the parallel Boston Municipal Court Juvenile Probation proceedings on the same false predicate, in a supervisory capacity as Assistant Chief Probation Officer, in coordination with Suffolk Superior Court Probation, after the same exculpatory evidence and the same judicial findings were available to his department.

Whether that standard is met is a question for the factfinder on evidence, not for Rule 12 on a memorandum that denies the allegations exist. The Court should deny any request to strike or cap the damages prayer at the pleading stage, and, to the extent the Court finds the prayer's allocation among defendants and capacities requires clarification, grant leave to amend under Rule 15(a)(2) to state that allocation in terms.

## XI. Jurisdiction and venue are pleaded and satisfied

Subject-matter jurisdiction rests on 28 U.S.C. § 1331 (federal questions under 42 U.S.C. § 1983, the ADA, and the First, Fourth, Eighth, and Fourteenth Amendments) and 28 U.S.C. § 1343 (civil rights), with supplemental jurisdiction over the Massachusetts claims under 28 U.S.C. § 1367. Compl. § II. Venue is proper under 28 U.S.C. § 1391(b) because all events occurred in Massachusetts. The only jurisdictional dispute is immunity, and Part VI shows why immunity, properly scoped to official-capacity damages, does not end the case against these officers.

## XII. If the Court finds any gap, the remedy is leave to amend — not dismissal with prejudice

Federal Rule of Civil Procedure 15(a)(2) directs that the Court "should freely give leave [to amend] when justice so requires." That direction carries special force for pro se litigants, whose complaints must be read liberally. If the Court finds any element under-pleaded as to either officer — including the allocation of capacities, the identification of the John Doe supervisors, or the attachment of the Exhibit G proceeding records — Plaintiffs respectfully ask for leave to amend to plead it in terms, rather than dismissal with prejudice of claims the Verified Complaint's substance already states.

## Conclusion

Probation Officers Riordan and Curby ask the Court to hold that a verified, exhibit-backed complaint — alleging violation proceedings maintained for the better part of a year on a police report that contradicted itself (95 mph on RADAR for Plaintiff alone, no other vehicle above 75 mph, "less than 1 car length" behind slower traffic, "over 100 mph" catching up) and its own citation (which records no speed at all), contradicted by body-worn camera footage the officers possessed, by a trooper who refused their own summons, and by judicial findings that her

evidence was materially false — pleads nothing at all against the two officers who ran those proceedings. It pleads their names, their departments, their knowledge, their continuation, and Plaintiff White's months of restricted liberty. The motion should be denied.

WHEREFORE, Plaintiffs respectfully request that the Court:

1. DENY Probation Officers Riordan and Curby's Motion to Dismiss (Doc. 36);
2. In the alternative, DENY the motion as to all individual-capacity claims and as to all claims for prospective declaratory and injunctive relief, including correction of probation records derived from the April 9, 2025 predicate, and as to Count V pending the claim-by-claim analysis required by United States v. Georgia;
3. PRESERVE the damages pleaded in the Complaint (Part X): compensatory damages against all defendants in every form the law allows as to each, and punitive damages against Probation Officers Riordan and Curby in their individual capacities under Smith v. Wade, 461 U.S. 30 (1983); DENY any request to strike, cap, or dismiss the damages prayer at the pleading stage;
4. Order that any dismissal of a state-law claim on Massachusetts Tort Claims Act grounds be WITHOUT PREJUDICE to refiling or presentment as Massachusetts law permits;
5. To the extent the Court finds any pleading gap, GRANT leave to amend under Rule 15(a)(2);
6. Set a hearing on the motion; and
7. Grant such other and further relief as the Court deems just.

Respectfully submitted,

[signature]

Onyx White, Plaintiff, Pro Se

- Ex parte Young, 209 U.S. 123 (1908); Will v. Michigan Department of State Police, 491 U.S. 58 (1989); Hafer v. Melo, 502 U.S. 21 (1991); Kentucky v. Graham, 473 U.S. 159 (1985) — scope of Eleventh Amendment immunity; official- vs. personal-capacity suits.
- Fothergill v. United States, 566 F.3d 248 (1st Cir. 2009); Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1 (1st Cir. 2011) — plaintiff-favorable Rule 12 standard (Fothergill cited by the movants).
- Gagnon v. Scarpelli, 411 U.S. 778 (1973); Morrissey v. Brewer, 408 U.S. 471 (1972) — due process for probation and parole revocation.
- Limone v. Condon, 372 F.3d 39 (1st Cir. 2004) — fabricated evidence and suppression of exculpatory evidence; qualified immunity denied at the pleading stage.
- Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576 (1st Cir. 1994) — supervisory liability: deliberate indifference plus causation; no respondeat superior.
- Mooney v. Holohan, 294 U.S. 103 (1935) — due process forbids proceedings maintained on evidence the State knows to be false.
- Penate v. Hanchett, 944 F.3d 358 (1st Cir. 2019) — qualified-immunity framework.
- Soto v. Flores, 103 F.3d 1056 (1st Cir. 1997) — personal involvement measured against the defendant's own conduct (cited by the movants).
- Thompson v. Clark, 596 U.S. 36 (2022) — § 1983 malicious prosecution; favorable termination.
- United States v. Georgia, 546 U.S. 151 (2006); Buchanan v. Maine, 469 F.3d 158 (1st Cir. 2006) — as-applied ADA Title II abrogation analysis.
- Carey v. Piphus, 435 U.S. 247 (1978) — compensatory damages under § 1983 compensate actual injury.

- Smith v. Wade, 461 U.S. 30 (1983) — punitive damages under § 1983 against an individual for evil motive or reckless / callous indifference to federally protected rights.

## Massachusetts cases, statutes, and rules

- Commonwealth v. Durling, 407 Mass. 108 (1990); Commonwealth v. Kelsey, 464 Mass. 315 (2013); Commonwealth v. Sargent, 486 Mass. 638 (2021) — preponderance and reliability in probation violation proceedings.
- Commonwealth v. Preston P., 483 Mass. 759 (2020) — juvenile probation due process.
- Commonwealth v. Elm Medical Laboratories, 33 Mass. App. Ct. 71 (1992) — the Commonwealth is not a "person" under the MCRA; individual officers are.
- District / Boston Municipal Court Rules for Probation Violation Proceedings, Rules 3, 4, and 8 — commencement on charged conduct and on other violations; finding and disposition; preponderance; written findings.
- Superior Court Guidelines for Probation Violation Proceedings; Trial Court Standing Order 2-16 — uniform interdepartmental procedures for probation violation proceedings (Superior, District, Boston Municipal, and Juvenile Court Departments).
- Mass. Gen. Laws ch. 12, §§ 11H–11I (MCRA); Mass. Gen. Laws ch. 258 (MTCA), incl. §§ 2, 4, and 10(c); Massachusetts Declaration of Rights, arts. 12, 14.

## Attachments — exhibits appended to this Opposition

The following exhibits are appended so that this Opposition prints as a single package. Plaintiffs will keep these same documents for the remaining oppositions in this case. The police report predates Trooper Sobrinho Silva's May 28, 2026 name change and lists her as Yasmin P. Sobrinho.

50 Causeway Street, Apt. 708, Boston, MA 02114

ogtlwhite3@gmail.com

(857) 247-9359

Date: ~~December 15,~~ 11.24.26 2026

______________________________

Sincere Northcross, Plaintiff, Pro Se

Address: ______________________

Telephone: 857-995-3437

Email: Northcross7286@gmail.com

Date: 11/24/26

## Certificate of service

I, Onyx White, certify that on ~~December 15, 2026~~ 11.24.26, I served a true copy of this Opposition on counsel for Probation Officers Riordan and Curby, Attorney Dayana Donisca, Massachusetts Attorney General's Office, and on counsel for all other defendants of record, by the method indicated in the Court's electronic filing system / by mail as applicable to non-registered participants.

______________________________

Onyx White, Plaintiff, Pro Se

## Appendix — authorities and standards relied on

### Federal cases

- Erickson v. Pardus, 551 U.S. 89 (2007); Haines v. Kerner, 404 U.S. 519 (1972) — liberal construction of pro se pleadings.