**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

ONYX WHITE v. COMMONWEALTH OF MASSACHUSETTS, et al.

**Civil Action No. 1:26-cv-10046-DJC — Judge Casper**

# PLAINTIFFS' OPPOSITION TO THE COMMONWEALTH DEFENDANTS' MOTION TO DISMISS (DOC. 32)

*Opposition to the motion filed October 8, 2026, by Attorney Dayana Donisca for the Commonwealth of Massachusetts, the Massachusetts State Police, the Massachusetts Registry of Motor Vehicles, the Massachusetts Trial Court, and the Massachusetts Parole Board (Doc. 32; memorandum at Doc. 32-1)*

2026 NOV 25 P 1:20

Plaintiffs Onyx White and Sincere Northcross, proceeding pro se, respectfully oppose the motion and ask the Court to deny it. In the alternative, Plaintiffs ask the Court to deny it in part as to all prospective declaratory and injunctive relief, to sever any claim the Court finds misdirected against a Commonwealth agency rather than an official, and to grant leave to amend under Federal Rule of Civil Procedure 15(a)(2) to name the responsible officials in their official capacities for prospective relief and to add the exhibits identified in Part XI. Plaintiffs also ask the Court to preserve in full the damages pleaded in the Complaint — compensatory damages against all defendants in every form the law allows, and punitive damages against the individual defendants — for the reasons in Part XIV, and to deny any request to strike or dismiss the damages prayer at the pleading stage. Plaintiffs request a hearing.

## Preliminary statement — the motion answers a complaint Plaintiffs did not file

The Commonwealth Defendants' central sentence is that the Complaint 'includes no factual allegations about any of the Commonwealth Defendants' and that Plaintiffs have alleged only that state agencies 'carried out their respective established administrative processes.' That is not the Complaint on file. The Verified Complaint alleges, in terms, that after body-worn camera footage contradicted the narrative of Trooper Yasmin Sobrinho Silva (formerly Yasmin P. Sobrinho; name changed May 28, 2026, see Doc. 46) and after judges found her testimony not credible and her information materially false, the Massachusetts State Police, the probation departments, the Massachusetts Parole Board, and the Registry of Motor Vehicles (RMV) continued to rely on that false narrative anyway. Compl. § IV.F. It alleges that the institutional defendants 'affirmatively relied on those false reports despite readily available exculpatory evidence, thereby ratifying the unconstitutional conduct.' Compl. § IV.I. It alleges that 'probation and parole officials knowingly proceeded with violations' despite possessing exculpatory evidence. Compl. § IV.G (Compounding Harm). A motion that does not engage those paragraphs does not carry the movants' burden at the pleading stage.

Plaintiffs do not ask the Court to decide today that every allegation is proved. That is not the Rule 12 standard. Plaintiffs ask the Court to do what Rule 12 requires: take the well-pleaded facts of the Verified Complaint as true, draw every reasonable inference in Plaintiffs' favor, construe a pro se pleading liberally, and ask only whether each element of each claim is plausibly pleaded against each defendant. Worked through element by element — which is how this Opposition proceeds — the Complaint clears that standard. Where the Commonwealth Defendants invoke the Eleventh Amendment, their argument reaches, at most, retrospective money damages against the Commonwealth and its agencies. It does not reach prospective relief

that would stop an ongoing violation, correct a driving record that still carries the April 9, 2025 citations. Where they invoke qualified immunity, they invoke a personal defense that a Commonwealth, a state police department, a registry, a trial-court department, and a parole board do not possess.

One correction matters at the threshold. Doc. 32 defends a generic 'Massachusetts Trial Court.' Plaintiffs did not sue the Trial Court in the abstract. They sued two specific defendants: the Boston Suffolk Superior Court Probation Department and the Boston Municipal Court Juvenile Probation Department. Compl. caption and § III. Those departments are alleged to have worked hand in hand, to have initiated and continued violation proceedings for the better part of a year, and to have done so on evidence that could not meet the preponderance and reliability standards Massachusetts law imposes. Lumping them into a single unnamed agency, and then faulting Plaintiffs for pleading nothing about that agency, is the motion's own creation. The Court should hold the movants to the defendants actually named and the allegations actually made.

## I. The standard the Court must apply — pro se, verified, and read in Plaintiffs' favor

### A. All inferences run to Plaintiffs, the non-movants

On a motion under Rule 12(b)(6), the Court accepts well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011). The Commonwealth Defendants concede the same rule, citing Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009), for both Rule 12(b)(1) and Rule 12(b)(6). Under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), Plaintiffs need plausibility, not proof, and not probability. Threadbare conclusions are not credited — but the Complaint's specific factual allegations about a particular stop, a

particular police report, a particular citation listing no speed at all, particular body-camera footage, particular judicial findings on October 22, 2025, a particular $500 reinstatement payment, and particular months of probation, parole, GPS, and court appearances are not threadbare. They are the kind of concrete, dated, exhibit-backed allegations Twombly and Iqbal credit.

On a facial Rule 12(b)(1) attack, the same plaintiff-favorable standard applies. If the movants mount a factual attack on jurisdiction, Plaintiffs ask for the opportunity to submit the exhibits already incorporated into the Complaint and, if needed, jurisdictional discovery, before any dismissal with prejudice. Immunity, moreover, does not relieve the movants of addressing the relief actually requested. The Prayer seeks not only damages but declaratory and injunctive relief and 'any further relief deemed just.' Compl. § VI. Plaintiff White's license has since been reinstated — on January 12, 2026, after he paid the $500 reinstatement fee documented in Part XI — so Plaintiffs do not ask the Court to restore a license Plaintiff already holds; the prospective relief that remains live is correction of the driving record that still carries the April 9 citations. A jurisdictional argument aimed only at damages cannot dispose of claims for prospective relief without analysis.

## B. Plaintiffs are pro se, and Plaintiff White is a Department of Mental Health client with severe mental-health and cognitive disorders

Plaintiff Onyx White proceeds pro se. He states, and asks the Court to note, that he lives with severe mental-health and cognitive disorders and is currently a client of the Massachusetts Department of Mental Health (DMH). The Complaint itself pleads that Plaintiffs are individuals with mental-health disabilities protected by the Americans with Disabilities Act (ADA), that Plaintiff White receives treatment through DMH, and that Defendants escalated the April 9 encounter despite visible distress, causing panic attacks and acute psychological harm. Compl. §

IV.D. Pro se pleadings are held to less stringent standards and construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction is not a request for a different substantive law. It is a request that the Court read the Complaint for what it fairly alleges — including allegations stated across its introduction, parties, factual, institutional-ratification, and compounding-harm sections — rather than dismiss it because a pro se litigant placed a material allegation in § IV.I instead of repeating it under a count heading. If the Court finds any allegation in the right place but under the wrong label, Plaintiffs ask that the label be corrected by amendment, not that the claim be extinguished.

### C. This is a Verified Complaint — sworn, exhibit-backed, and entitled to be treated as evidence of its facts at this stage

The Complaint is verified under 28 U.S.C. § 1746. Plaintiff White declares under penalty of perjury that he has personal knowledge of the facts alleged, except as to matters stated on information and belief, and that the Complaint, 'including all factual allegations, exhibits, and incorporated statements, is true and correct.' A separate verified affidavit authenticates the exhibits as true and correct copies of official records, contemporaneous documentation, sworn testimony, audiovisual evidence, or business records. At the pleading stage the Court need not weigh that evidence. But the movants may not describe a sworn, exhibit-incorporating complaint as if it were a bare form pleading, and if the Court converts any part of this motion into one for summary judgment under Rule 12(d), Plaintiffs ask for notice and a reasonable opportunity to present all material made pertinent by Rule 56, as the rule requires.

## II. The facts taken as true, and the exhibits that carry them

On April 9, 2025, at approximately 5:00 p.m., Plaintiff White was lawfully driving in Massachusetts with his brother, Plaintiff Sincere Northcross. Compl. § IV.B. Plaintiff White is a

Black Islamic man; Plaintiff Northcross, also Black, wore shoulder-length dreadlocks. Trooper Sobrinho Silva followed the vehicle for several miles, tailgating closely, before activating emergency lights. Fearing for safety on a high-speed highway, Plaintiff White pulled into the breakdown lane. Trooper Sobrinho Silva later falsely claimed he stopped in a travel lane — an assertion the Complaint alleges is contradicted by body-worn camera footage. She approached in a hostile and aggressive manner and questioned Plaintiffs about destination and purpose of travel without lawful basis.

Trooper Sobrinho Silva appeared to review Plaintiff White's CORI record and called for a tow and backup without probable cause. Compl. § IV.C. Trooper Christopher Tobin arrived and stood gripping his firearm in a threatening posture. Sobrinho Silva and Tobin forcibly opened the door, removed Plaintiff White, handcuffed and arrested him without lawful justification. No weapons or contraband were found. Plaintiff Northcross was held on scene, threatened, left not free to leave in any meaningful sense, and stranded in an unfamiliar location for hours, without transportation or shelter, and forced to remain in the state police barracks until bail arrangements could be made for his brother.

During transport, Trooper Sobrinho Silva interrogated Plaintiff White about his religion — whether he was Christian or Catholic and whether he goes to church — inquiries the Complaint alleges were unrelated to any alleged offense. Compl. § IV.E and Exhibit F. After Plaintiff White spoke publicly about the incident, the Complaint alleges, Sobrinho Silva retaliated by submitting false information to the RMV, resulting in an indefinite driver's license suspension. Plaintiff White's account, which the Court must credit at this stage, fixes the sequence that defeats any 'immediate threat' characterization: the suspension came not on April 9 but about two days later, and only after Sobrinho Silva became aware of his social-media posts complaining about the

arrest and the rights violations — a sequence Plaintiff states is shown in the trial transcript among the exhibits. A danger that waits two days, and arrives only after protected speech, is not pleaded as an emergency. It is pleaded as retaliation.

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | On October 22, 2025, the Dudley District Court allowed Plaintiff White's motion to dismiss, finding materially false information submitted by Trooper Sobrinho Silva, citing Commonwealth v. |

| | | |
|---|---|---|
| | | DiBenedetto and Commonwealth v. Duffy. Compl. §§ IV.F, IV.I. Multiple judges found her testimony not credible after reviewing body-worn camera footage. She failed to appear for court-ordered summonses, prolonging proceedings and trauma. Those judicial findings are not Plaintiffs' characterization. They are Exhibit B. The movants' own factual summary, expressly 'taken as true for purposes of this motion only,' recites the October 22 dismissal finding, the not-credible findings, and the continued reliance. The dispute at Rule 12 is therefore not whether these facts are pleaded. They are. The dispute is only whether, if true, they state claims. They do. |

**Exhibit**

**What it is (Compl. Exhibit List)**

**What it proves at the pleading stage**

A

Body-worn camera footage / stills of the stop

Actual stop, demeanor and conduct; contradicts the police report; Fourth Amendment and credibility

B

Dudley District Court dismissal / finding of materially false evidence

A court found Sobrinho Silva presented materially false evidence

C

Police report and arrest narrative, Case #2025-CTrp-3190, with Citations Nos. 329626AD and 330121AD (appended; the report predates the May 28, 2026 name change and lists the trooper as Yasmin P. Sobrinho)

False statements and omissions; the report's speed figures (95 mph RADAR; 92 and 94 mph LIDAR; over 100 mph estimated) contradict its tailing allegation (less than 1 car length) and the citations, whose Speeding blocks record no speed and check no measurement method; malicious prosecution, due process, defamation

D

RMV immediate-threat letter and license suspension notice

Direct consequence of the false submissions; economic and liberty harm; procedural due process

E

Sobrinho Silva request to RMV for license suspension; RMV hearing audio

Same false narrative reused across agencies; recklessness; pattern

F

Body-camera footage of religion inquiry in custody/transport

First Amendment religious discrimination

G

Parole / probation violation proceedings and consequences

Cascading harm from the false statements

H

Statement / emails from State Trooper Investigator John Banik

Failure to act despite clear misconduct; notice, supervision, deliberate indifference

I

Mental-health documentation from licensed social worker

Disability, notice, and damages

J

Vehicle registration cancellation

Collateral administrative harm

K

Emmy Award and Edward R. Murrow Award images

Reputation, professional standing, defamation and lost-opportunity damages

L

Social-media posts about the incident / Sobrinho Silva prior misconduct

Protected speech preceding retaliation; notice of pattern

M

Audio recording of RMV hearing

What the RMV would and would not consider

The speeding citation associated with the report belongs at the center of the Court's plausibility assessment, because it is objective, documentary, and pleaded in Plaintiff White's account of the exhibits: the citation lists no speed at all. The police report alleges speeding; the citation issued with it states no speed whatsoever. A report that charges a speeding offense while its own associated citation records no speed, and that contains, as Plaintiff alleges, numerous internal contradictions, is not a close call on which reasonable agencies simply disagreed. Taken as true,

it is a report no reasonable reviewer, with the body-camera footage also in hand, could credit without investigation. That single pleaded fact — a speeding citation with no speed stated — does work against every Doc. 32 defendant: it gave each of them reason to pause, and the Complaint alleges none of them did.

The contradiction is not only between the report and its citation. The report itself — Exhibit C, the arrest narrative in Case #2025-CTrp-3190, appended to this Opposition — contradicts itself on its own face, in its own numbers. Trooper Sobrinho Silva writes that she "observed my RADAR lock a vehicle's speed at 95mph in a posted 65mph zone," that she "used my LIDAR to confirm the vehicle's speed at 92mph, then 94mph," and that as she caught up she "clocked and estimated its speeds to be over 100mph." Ex. C, Arrest Narrative ¶ 1. In the same paragraph, describing roughly ten minutes of speed enforcement in light traffic, she writes that "none were on RADAR or LIDAR going more than 75mph in a 65mph posted zone" — no other vehicle exceeded 75 miles per hour. And in that same paragraph she writes that she "also observed the vehicle tailing another vehicle in the left travel lane (less than 1 car length behind the vehicle) at a high rate of speed." Those allegations cannot all be true at the same time, and no extrinsic evidence is needed to see it: the inconsistency is internal to the document every Doc. 32 defendant received, held, or relied on. The report predates Trooper Sobrinho Silva's May 28, 2026 name change and lists her as Yasmin P. Sobrinho; Plaintiffs quote it as written.

The arithmetic is the kind any reviewer could do on the face of the report, and Plaintiffs offer it as a pleaded inference, not as expert testimony. A vehicle traveling at 95 miles per hour behind traffic traveling at no more than 75 miles per hour is closing on the vehicle ahead at roughly 20 miles per hour — about 29 feet per second — and at the report's estimated speed of over 100 miles per hour the closing speed is roughly 25 miles per hour or more. Less than one car length is

less than roughly fifteen feet. At that closing speed, a gap of less than one car length is consumed in about half a second or less. A driver cannot sustain 'tailing' at less than one car length behind a vehicle he is overtaking at 20 to 25 miles per hour: within a fraction of a second he must either collide with it, pass it, or slow to its speed — and if he slowed to its speed, he was no longer traveling at 95 miles per hour, and if the vehicle ahead sped up to his speed, it was no longer traveling at no more than 75. One of the report's allegations must give way. Either the speed allegation is wrong, the account of surrounding traffic is wrong, or the tailgating allegation is wrong. A report in that condition — paired, as pleaded above, with a citation that records no speed at all — could not be credited without investigation by any agency that read it, and it could not carry a preponderance, a reliability finding, or an immediate-threat predicate without that investigation.

That is why this contradiction does work against every Doc. 32 defendant, and why Plaintiffs plead it as a duty each of them had, not as a detail only the trooper had to explain. The State Police authored, held, and could have corrected or withdrawn the report. The probation departments could not find a violation by a preponderance on reliable evidence without confronting numbers in the predicate report that cancel each other out. The Parole Board had the same report and the same obligation before it made a liberty finding. And the RMV could not treat the report as a predicate of the nature Mass. Gen. Laws ch. 90, § 22 requires — a violation showing that continued operation will be so seriously improper as to constitute an immediate threat — without asking how a report that cannot keep its own speed and following-distance allegations consistent establishes any violation at all. The Complaint alleges none of them asked. The figures in this Part are quoted from Exhibit C itself, which is appended to this Opposition.

## III. The Complaint pleads institutional policies, knowledge, and ratification — in its own words

Because the motion's Rule 12(b)(6) ground depends entirely on the assertion that nothing is pleaded about these defendants, Plaintiffs set out the operative paragraphs the motion omits. Section IV.I of the Complaint alleges that the institutional defendants maintained policies, practices, customs, or usages that were the moving force behind the violations, including:

- (a) permitting and tolerating racially and religiously discriminatory traffic enforcement, including pretextual stops of Plaintiffs, Black motorists, without reasonable suspicion or probable cause;
- (b) failure to discipline or retrain troopers who fabricate facts, submit materially false police reports, or provide false information to courts, clerks, probation departments, parole boards, and administrative agencies;
- (c) maintaining a custom of ratifying false police narratives, even after body-worn camera footage contradicts those narratives;
- (d) allowing false police reports to be relied upon across multiple legal systems — criminal court, probation, parole, and RMV — without independent verification;
- (e) failure to implement safeguards ensuring that exculpatory evidence, including body-worn camera footage, is reviewed accurately before initiating probation or administrative sanctions; and
- (f) retaliation against individuals who criticize police misconduct, including the use of administrative mechanisms such as RMV license suspensions to punish protected speech.

The Complaint then pleads knowledge and causation, the two elements a 'no allegations' motion must confront:

> *The Massachusetts State Police and State Trooper Investigator John Banik, through supervisors and internal review mechanisms, had actual or constructive knowledge that Trooper Yasmin Sobrinho Silva's version of events was contradicted by body-worn camera footage and judicial findings, yet failed to correct, discipline, or withdraw the false reports. The Massachusetts Parole Board, Boston Suffolk Superior and juvenile probation departments, and the RMV affirmatively relied on those false reports despite readily available exculpatory evidence, thereby ratifying the unconstitutional conduct. These failures were not isolated incidents, but reflected systemic deficiencies in training, supervision, and accountability, demonstrating deliberate indifference to the constitutional rights of Black motorists and individuals under court supervision.*

And § IV.G (Compounding Harm) pleads the human consequence the movants' 'administrative processes' phrase erases: despite possessing exculpatory evidence, probation and parole officials knowingly proceeded; Plaintiff White was subjected to GPS monitoring, curfews, travel restrictions, and repeated court appearances and hearings; he suffered panic attacks, asthma complications, hair loss, skin breakouts, and physical pain; he lost a paid-for CDL preparation path and other employment, including mental-health employment requiring a valid license, because his license was suspended and because he carried an open criminal case; he was restricted from business and from visiting close family in other states, including his quadriplegic younger brother with life-threatening complications. Whether Plaintiffs ultimately prove deliberate indifference is a question for discovery and trial. Whether they have alleged it — with knowledge, a mechanism, a pattern across four systems, and a causal chain — is not a close question. They have.

## IV. The Eleventh Amendment does not dismiss this case as pleaded

### A. What the Amendment bars, and what it does not

Plaintiffs do not quarrel with the starting propositions in Doc. 32-1. A State is generally immune from a private suit for money damages in federal court absent waiver or valid abrogation. Neither the Commonwealth nor a state agency is a 'person' suable for damages under 42 U.S.C. § 1983.

Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989). Those propositions decide a claim for retrospective damages against the Commonwealth itself. They do not decide this motion, for four independent reasons, each of which requires denial or, at most, partial relief and leave to amend.

## B. First: prospective declaratory and injunctive relief — Ex parte Young

Under Ex parte Young, 209 U.S. 123 (1908), a suit against a state official in his official capacity alleging an ongoing violation of federal law and seeking relief that governs future conduct is not barred by the Eleventh Amendment. The inquiry is 'straightforward': whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. Verizon Maryland Inc. v. Public Service Commission, 535 U.S. 635, 645 (2002). Retrospective compensation paid from the treasury is barred, Edelman v. Jordan, 415 U.S. 651 (1974); an order that state officials stop maintaining an unconstitutional record, stop enforcing a suspension derived from materially false evidence, and correct the record going forward is not.

Plaintiffs' Prayer expressly seeks declaratory and injunctive relief. Compl. § VI.A. That relief is live and concrete today in the form of record correction: Plaintiff White has his license back — it was reinstated on January 12, 2026, on payment of the $500 fee documented in Part XI — and Plaintiffs seek no order restoring it. What he does not have is a clean record. The violation is ongoing in the concrete sense Part XI documents: the April 9, 2025 citations remain on Plaintiff White's RMV record today, and he alleges they are being used now to deny or price him out of automobile insurance. An injunction requiring the RMV to remove or correct a record entry that continues to injure him every day he seeks insurance is prospective relief against an ongoing violation, not a damages award dressed in equitable clothing. Doc. 32-1 does not address Ex

parte Young at all. A motion that seeks dismissal of 'all claims' while ignoring the doctrine that preserves the injunctive claims cannot be granted as framed.

To remove any doubt about the proper party for that relief, Plaintiffs ask, in the alternative and without conceding that amendment is necessary, for leave to name in their official capacities the officials who control the prospective relief — the Registrar of Motor Vehicles as to the driving record, the Colonel / Superintendent of the Massachusetts State Police as to correction and withdrawal of the false report, the Chair of the Parole Board as to any parole record derived from the false predicate, and the Commissioner of Probation as to the probation departments' records — for the sole purpose of prospective declaratory and injunctive relief under Ex parte Young. Rule 15 leave for that conforming amendment should be freely given, and granting it moots the movants' best jurisdictional point without dismissing any claim on the merits.

### C. Second: the ADA requires the United States v. Georgia analysis, claim by claim

Doc. 32-1 treats Buchanan v. Maine, 469 F.3d 158 (1st Cir. 2006), as if it held that Title II of the ADA never abrogates immunity. It does not. In United States v. Georgia, 546 U.S. 151, 159 (2006), the Supreme Court prescribed an as-applied, claim-by-claim inquiry: (1) which aspects of the State's alleged conduct violated Title II; (2) to the extent that conduct also violated the Fourteenth Amendment, Title II validly abrogates immunity; and (3) only to the extent the conduct violated Title II but not the Constitution must the court ask whether Title II is nevertheless valid § 5 legislation as to that class. Buchanan itself resolved the case before it without a categorical rule for conduct that independently violates the Fourteenth Amendment. Here, the same conduct pleaded under the ADA — escalation of an encounter with a visibly distressed DMH client, denial of accommodation in proceedings that took his liberty, and

continued sanctions without regard to disability, Compl. §§ IV.D, V (Count V) — is also pleaded as Fourteenth Amendment due-process and equal-protection conduct. The movants must therefore do the Georgia step-two work. They have not attempted it. At a minimum, dismissal of Count V on immunity grounds is premature.

## D. Third and fourth: state-law claims and severance

The Massachusetts Civil Rights Act (MCRA), Mass. Gen. Laws ch. 12, §§ 11H–11I, and Plaintiffs' Massachusetts constitutional and common-law claims are before the Court under supplemental jurisdiction, 28 U.S.C. § 1367. To the extent the Court holds that any state-law damages claim against the Commonwealth belongs in the Superior Court under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258 — including the movants' reliance on Rivera v. Commonwealth, 16 F. Supp. 2d 84 (D. Mass. 1998), and on the intentional-tort exclusion in ch. 258, § 10(c) — the proper disposition is dismissal of that claim without prejudice to refiling in the court the Legislature designated, or severance and retention of the federal claims, not a merits ruling that no violation occurred and not dismissal of the federal counts with it. The movants' MTCA authorities say where a tort claim may be heard. They do not say that a probation department may take a man's liberty for months on evidence that cannot meet Massachusetts' own preponderance standard, or that the RMV may keep a false citation on his record for a decade. Plaintiffs preserve all state-law claims, including under Articles 12 and 14 of the Massachusetts Declaration of Rights, and ask that any state-law dismissal be expressly without prejudice.

## V. Qualified immunity cannot carry this motion — it is not these defendants' defense, and it would fail on these facts in any event

### A. Qualified immunity is personal. Agencies and the Commonwealth do not have it.

Qualified immunity protects individual officials sued in their individual capacities. It does not protect a State, a state agency, or an official sued only in his official capacity. See Will, 491 U.S. at 71; Kentucky v. Graham, 473 U.S. 159, 165–67 (1985) (official-capacity and personal-capacity suits are different claims, against different defendants, with different defenses). The Doc. 32 defendants are the Commonwealth of Massachusetts, the Massachusetts State Police, the RMV, the Trial Court / probation departments, and the Parole Board. None of them may assert qualified immunity. To the extent Doc. 32-1's rhetoric borrows the language of immunity — officials 'just following policy,' agencies merely running 'established administrative processes' — it asks the Court to extend a personal, individual defense to institutional defendants as a general shield for routine. No authority in the memorandum does that, because none can. If any individual later asserts qualified immunity in this case, that assertion must be tested against that individual's own pleaded conduct, as the separate motion addressed to Probation Officers Riordan and Curby (Doc. 36) illustrates. It cannot be decided here, for defendants who do not hold it.

### B. If the Court reaches the underlying rights, they were clearly established

The First Circuit's qualified-immunity inquiry asks whether the facts alleged show a violation of a constitutional right, whether that right was clearly established, and whether a reasonable official would have understood the conduct to violate it. Penate v. Hanchett, 944 F.3d 358, 366 (1st Cir. 2019). On fabricated evidence, the First Circuit has already answered. In Limone v. Condon, 372 F.3d 39 (1st Cir. 2004), the court affirmed the denial of motions to dismiss on

qualified-immunity grounds where plaintiffs alleged that officials deliberately framed innocent people, suborned false testimony, and suppressed exculpatory evidence. Deliberate framing, the court held in substance, violates due process rights established since Mooney v. Holohan, 294 U.S. 103 (1935). No reasonable official in 2025 needed a case with these exact facts to know the following:

- You may not arrest a person without probable cause. The Fourth Amendment's probable-cause requirement is, in the First Circuit's words in Alfano v. Lynch, 847 F.3d 1 (1st Cir. 2017), hornbook law.
- You may not fabricate material evidence, submit it to a clerk-magistrate, a court, a probation department, a parole board, or the RMV, and set prosecutions and sanctions in motion on it. Mooney; Limone; and, for malicious prosecution, Thompson v. Clark, 596 U.S. 36 (2022).
- You may not continue a prosecution, a probation violation, a parole violation, or a license suspension once you possess body-camera footage and judicial findings that the predicate is materially false, and treat the exoneration as irrelevant. Continued detention and continued proceedings after legal process must be justified; deliberate indifference to known exonerating evidence is not a reasonable mistake of law.
- You may not punish a citizen for speaking publicly about alleged police misconduct by reaching for an administrative lever — here, an 'immediate threat' license suspension filed days later — that you did not pull on the day of the alleged danger. Retaliation for protected speech violates the First Amendment, and the existence of an asserted administrative basis does not end the inquiry where, as pleaded here, the plaintiff alleges the basis itself was fabricated and the timing tracks the speech. Cf. Nieves v. Bartlett, 587

U.S. 391 (2019) (recognizing an exception where objective evidence shows differential or retaliatory treatment); Gonzalez v. Trevino, 602 U.S. 653 (2024) (per curiam).

- You may not interrogate a person in custody about whether he is Christian or Catholic and whether he attends church, unrelated to any offense, without implicating the First Amendment's religion clauses and the Fourteenth Amendment's equal-protection guarantee, as pleaded in Count VI and shown in Exhibit F.

Qualified immunity protects reasonable mistakes about unsettled law. It has never protected knowingly using false evidence, and it has never protected ignoring a video that vindicates the accused. The Complaint pleads knowledge — 'knowingly proceeded,' 'despite readily available exculpatory evidence,' 'actual or constructive knowledge' — not negligence in a gray area. Conclusory immunity rhetoric cannot convert pleaded knowledge into a reasonable mistake at Rule 12.

## VI. The probation departments — Boston Suffolk Superior Court Probation Department and Boston Municipal Court Juvenile Probation Department

*The defendants the motion forgot to name.*

### A. The governing duty: liberty may be taken only on proof, by a preponderance, on reliable evidence — after the Morrissey / Gagnon minimums are met

Probation is liberty on conditions. Revoking it, continuing it on harsher conditions, imposing GPS monitoring, curfews, and travel restrictions, or dragging a probationer into court two to three times a month for the better part of a year, as Plaintiff White alleges, is a deprivation of liberty that the Fourteenth Amendment governs. Morrissey v. Brewer, 408 U.S. 471 (1972), for parole, and Gagnon v. Scarpelli, 411 U.S. 778 (1973), extending Morrissey to probation, set the

federal floor: written notice of the claimed violations; disclosure of the evidence against the probationer; an opportunity to be heard and to present witnesses and documentary evidence; a neutral hearing body; and a written statement of the evidence relied on and the reasons for the decision — with confrontation unless good cause is shown to deny it. Massachusetts law builds the evidentiary standard on that floor, and it is the standard Plaintiff invokes:

- Finding by a preponderance. Under Rule 8 of the District / Boston Municipal Courts Rules for Probation Violation Proceedings, if probation has failed to prove by a preponderance of the evidence that the probationer committed a violation alleged in the notice, the court must expressly so find. Rule 8(b). A finding of violation requires proof by a preponderance and, in a contested proceeding, written findings of fact stating the evidence relied on. Rule 8(c). The Supreme Judicial Court states the same rule: the question is whether the probationer 'more likely than not' violated a condition, proved by a preponderance. Commonwealth v. Kelsey, 464 Mass. 315, 324 (2013); Commonwealth v. Durling, 407 Mass. 108, 111 (1990).
- Reliability as a due-process requirement. Durling and its progeny require that the evidence on which a violation rests be reliable; hearsay and documentary predicates must bear indicia of reliability, because a liberty decision is only as constitutional as the evidence beneath it. Commonwealth v. Sargent, 486 Mass. 638 (2021), confirms that evidence that is not what its proponent claims cannot be a reliable basis for revoking probation.
- Commencement is a decision, governed by rules — not an automatic reflex. Rule 3 governs violation proceedings founded on new charged criminal conduct and Rule 4 governs other violations, including the probation officer's decision whether to commence

proceedings in accordance with the rules and regulations of the Office of the Commissioner of Probation, the contents and service of the Notice of Probation Violation and Hearing, and the court's power to terminate proceedings or permit withdrawal of a notice. Trial Court Standing Order 2-16 imposes uniform interdepartmental procedures — timely, informed communication between the criminal court and the probation court — precisely so that a probation department in one department does not proceed in ignorance of what another department knows. The Superior Court Guidelines for Probation Violation Proceedings state their purpose in the same terms: proceedings conducted 'promptly, uniformly, and in accordance with applicable law.'

- Juvenile probation is not a lower standard. In Commonwealth v. Preston P., 483 Mass. 759 (2020), the Supreme Judicial Court held that even for a juvenile's pretrial probation, due process requires written notice, an opportunity to be heard, and a judicial finding; a violation for conduct other than a new offense must be proved by a preponderance at an evidentiary hearing, and a new-offense revocation requires at least a judicial probable-cause finding. The Boston Municipal Court Juvenile Probation Department, working in parallel with Suffolk Superior Probation, was bound by no lesser duty of proof and reliability.

Plaintiffs do not contend that a publicly promulgated internal policy, standing alone, creates a private damages right. The policies and rules matter for three pleaded purposes: they define the process that was due in these Massachusetts proceedings; they defeat any claim that proceeding on an unexamined police report was reasonable or clearly lawful; and they supply the standard against which the departments' alleged deliberate indifference — proceeding for months without the proof Massachusetts itself requires — must be measured. A department that must prove a

violation by a preponderance on reliable evidence has a duty, before and while it seeks to take liberty, to look at the evidence it has. These departments, the Complaint alleges, had the evidence. They looked away.

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | **B. Elem ent by elem ent: the prob ation alleg ation s clear the stand ard** |

**Element the plaintiff must plausibly plead**

**What the Verified Complaint and Plaintiff's pleaded account allege**

**Exhibit / source**

1. State action and personal / departmental involvement

The two named departments — not a generic Trial Court — initiated parallel violation proceedings, worked hand in hand, served notices, summoned Plaintiff repeatedly, and sought continued restrictions. Compl. § III (Suffolk Superior Probation, including Riordan and supervisory John Does 1–10, 'initiated probation violation proceedings'; Juvenile Probation, including Curby, 'initiated parallel proceedings').

Compl. § III; Ex. G

2. A protected liberty interest

Plaintiff was on probation / supervision whose conditions were enforced through GPS monitoring, curfews, travel restrictions, and repeated compelled court appearances — two to three times a month, for the better part of a year, on Plaintiff's account. Morrissey / Gagnon liberty.

Compl. § IV.G; Ex. G

3. A predicate that could not meet preponderance / reliability

The predicate was Sobrinho Silva's report: internally contradictory — alleging 95 mph on RADAR and 92 and 94 mph on LIDAR for Plaintiff alone while no other vehicle went more than 75 mph, yet also alleging he was tailing another vehicle at less than 1 car length, allegations that cannot all be true at a closing speed of roughly 20 miles per hour or more (Part II; Ex. C ¶ 1); associated speeding citation listing no speed at all; contradicted by body-camera footage showing Plaintiff pulled into the breakdown lane, not a travel lane. No weapons or contraband were found.

Compl. §§ IV.B–C, IV.I; Exs. A, C

4. Knowledge / notice of the exonerating evidence

All probation officers had the April 9, 2025 video recording showing Plaintiff was innocent, on Plaintiff's pleaded account. Multiple judges later found Sobrinho Silva not credible after reviewing that footage, and Dudley District Court found her information materially false on Oct. 22, 2025.

Compl. §§ IV.F, IV.I; Exs. A, B

5. Admissions against the false predicate (as Plaintiff alleges)

Plaintiff alleges that Probation Officer Melinda Riordan and her superior told him in court that the officer was wrong, apologized regarding the false charges, and said Sobrinho Silva had avoided all of their calls and been extremely disrespectful. Plaintiff asks the Court to credit that allegation at Rule 12 and to permit him to prove it through testimony and the proceeding records.

Plaintiff's allegation in opposition instructions; Ex. G (proceedings)

6. Failure of the key witness and continuation anyway

Plaintiff alleges Sobrinho Silva was ordered / summoned to court by Suffolk Superior Probation officers, refused to come to any court date, and ignored court orders — non-appearance that ultimately contributed to the judge dismissing the case — yet the violation proceedings continued in the interim instead of being terminated or withdrawn as the Rules permit.

Plaintiff's allegation; Rules 3–4 (termination / withdrawal); Exs. B, G

7. Causation and injury

Months of compelled appearances, GPS, curfew, and travel restriction; lost employment and CDL opportunity; severe mental- and physical-health harm, in a DMH client whose disability was known and visible. Compl. § IV.G catalogues the injuries.

Compl. §§ IV.D, IV.G; Exs. G, I

8. Deliberate indifference / ratification, not mere procedure

The departments 'affirmatively relied on those false reports despite readily available exculpatory evidence, thereby ratifying the unconstitutional conduct,' and 'knowingly proceeded with violations.' That is the pleaded mental state, and it must be taken as true.

Compl. §§ IV.I, IV.G

Worked through those elements, the movants' sentence — that Plaintiffs allege only that probation 'initiated proceedings' — is unsustainable. Initiation is not the claim. Continuation is the claim: continuation after the video, after the citation that listed no speed at all, after the report's own contradictions — 95 mph on RADAR for Plaintiff alone, no other vehicle above 75 mph, yet tailing another vehicle at less than 1 car length — after the witness would not appear, and after judges began finding her not credible. Massachusetts law gave the departments exits at every stage — termination of proceedings, withdrawal of a notice with the court's permission, a finding of no violation where preponderance proof failed, Rule 8(b). The Complaint alleges they took none of them for the better part of a year. That is a plausible Fourteenth Amendment claim, a plausible malicious-continuation claim under Count III's principles, and a plausible MCRA claim, and it is more than sufficient to require discovery into what the departments reviewed, what Riordan and her superior said, what efforts were made to secure Sobrinho Silva's attendance, and why the proceedings were not withdrawn. The restrictions were not abstract, either: on Plaintiff's account the two probation departments together placed travel restrictions on him and had him going in and out of the courthouse again and again for the better part of a year — the lived burden pleaded in element 2 above.

**The proceedings ended in Plaintiffs' favor.** On July 9, 2025, after the body-worn camera video of the stop (Exhibits Probation 1–4) was admitted, the court found Plaintiff White 'Not found in violation of probation.' (Docket, Case No. 10YO0006RO, p. 12, printed Aug. 7, 2025; Hon. Peter

M. Coyne, Presiding.) On August 21, 2025, the court dismissed the probation surrender by order of the court — 'Surrender Dismissed by Order of the Court. Defendant remains on probation.' (Suffolk County Criminal Docket Report, Case No. 1084YO10516, pp. 14–15, printed Aug. 22, 2025; Hon. Christopher Belezos, Presiding.) The Commonwealth could not prove the violation with the information the trooper sent — the report and the video.

### C. 'We only followed procedure' is a merits defense, and on these allegations it proves Plaintiffs' point

A probation department's duty is not exhausted by issuing the correct form. Procedure is the vehicle for the preponderance and reliability requirements, not a substitute for them. If the departments' position is that a facially valid criminal complaint obliges them to commence proceedings and forbids them to assess the evidence, Rule 4's decisional language, Standing Order 2-16's insistence on informed interdepartmental communication, and Rule 8's no-violation finding all say otherwise — and in any event a state procedural rule cannot authorize what the Fourteenth Amendment forbids: taking liberty on evidence the State knows, or is deliberately indifferent to knowing, is false. The departments will have the opportunity to prove at summary judgment or trial that they reviewed the footage, weighed the citation, and reasonably believed a violation could be proved. They may not win that factual argument at Rule 12 by asking the Court to disbelieve the Verified Complaint.

## VII. The Registry of Motor Vehicles — no due process, a failed immediate-threat predicate, and a record that still injures Plaintiff today

### A. The statute the RMV had to satisfy: Mass. Gen. Laws ch. 90, § 22

Section 22(a) permits the Registrar to suspend or revoke a license without a prior hearing only where the holder 'has committed a violation of the motor vehicle laws of a nature which would

give the registrar reason to believe that continuing operation by such holder is and will be so seriously improper as to constitute an immediate threat to the public safety.' The statute then requires written notice specifying the time and place of the violation, and provides that the operator 'shall be entitled to a hearing within thirty days of the suspension or revocation,' of which the Registrar shall advise him. Section 22(b), for non-emergency action, requires due hearing, at least fourteen days' written notice specifying the reasons, and an opportunity to request a hearing before the suspension takes effect. Three features of that scheme matter here. First, 'immediate threat' is a substantive predicate, not a label the Registrar may attach to any police referral: there must be a motor-vehicle violation of a nature supporting a forward-looking finding that continued driving will be so seriously improper as to threaten public safety. Second, the emergency exception excuses only a prior hearing; it guarantees a prompt post-suspension hearing. Third, a hearing that refuses to consider whether the predicate violation occurred at all is not the hearing the statute or the Constitution contemplates.

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | **B. The constitutional elements, applied** |

**Element**

**Application taken as true**

1. Protected property / liberty interest

Once issued, a driver's license is a protected interest that 'may become essential in the pursuit of a livelihood' and may not be taken without Fourteenth Amendment due process. Bell v. Burson, 402 U.S. 535, 539 (1971). Plaintiff's pleaded livelihood harms — lost CDL training and employment requiring a valid license — are Bell's interest in concrete form. Compl. § IV.G.

2. Deprivation by state action

The RMV suspended Plaintiff's license indefinitely on Sobrinho Silva's submission, kept it suspended for about a year on Plaintiff's account, and required $500 to reinstate it even after dismissal. Compl. §§ III, IV.E; Exs. D, E. The $500 payment is now documented: MyRMV receipt dated January 12, 2026, confirmation number 1-238-220-432, 'Reinstatement Fee — $500.00 / Total Paid $500.00.' Part XI, New Exhibit B.

3. A predicate that fails on its own terms

The associated citation listed no speed at all; the police report contradicted itself — alleging 95 mph on RADAR, 92 and 94 mph on LIDAR, and over 100 mph estimated for Plaintiff alone against traffic going no more than 75 mph, yet tailing another vehicle at less than 1 car length (Part II; Ex. C ¶ 1) — and the body-camera footage; the underlying charges were dismissed on a finding of materially false information; the driver was found not responsible for the speeding citation associated with the case, on Plaintiff's account. A citation that states no speed cannot supply a violation 'of a nature' showing that continued operation will be seriously improper. Exs. A, B, C.

4. No immediacy

The suspension came about two days after April 9, not at the roadside or on the day of the alleged danger — and, Plaintiff alleges, only after Sobrinho Silva viewed his social-media posts complaining about the arrest. Delay plus a speech trigger negates the emergency rationale that alone excuses a pre-hearing suspension. Cf. Mackey v. Montrym, 443 U.S. 1 (1979), and Dixon v. Love, 431 U.S. 105 (1977), addressed in Part VII.C.

5. Notice and a meaningful hearing — denied in substance

Plaintiff alleges he received no hearing before suspension, and that in his RMV call / hearing, preserved in Exhibits E and M, he was told that regardless of whether he was innocent, his license would remain suspended. A proceeding in which innocence is declared irrelevant excludes the very question — fault / the existence of the predicate — that Bell held may not be excluded where liability is central to the scheme. Bell, 402 U.S. at 540–41.

6. Failure to revisit after exoneration

Even after the criminal charges were dismissed for materially false evidence, two probation violations were dismissed, and the speeding citation was resolved in his favor, Plaintiff alleges the RMV would not consider any of it, kept the suspension in place, and charged $500 to restore the license. Post-deprivation process that cannot correct a known error is not due process under Mathews v. Eldridge, 424 U.S. 319, 335 (1976): the private interest is at its highest, the risk of erroneous deprivation on a false report is demonstrated, not hypothetical, and the burden of reviewing the bodycam, the citation, and the dismissal order was minimal.

7. Retaliatory motive (Count VI as to the RMV mechanism)

Plaintiff spoke publicly; Sobrinho Silva saw the posts (as shown, Plaintiff alleges, in the trial transcript in the exhibits); only then was the RMV mechanism used. The RMV's alleged refusal to examine that sequence, and its mechanical enforcement of the referral, is pleaded as ratification of retaliation through an administrative mechanism — policy (f) in Compl. § IV.I.

8. Continuing deprivation

The citation remains on the driving record and continues to be used against Plaintiff in the insurance market. Part XI. Standing for prospective correction is therefore present today, not merely in 2025.

## C. Dixon and Mackey do not save this suspension

The Commonwealth may argue that summary license suspensions have been upheld. They have — on predicates this case does not have. Dixon v. Love upheld a suspension triggered by a record of convictions, where the operative facts were undisputed and the risk of error was low. Mackey v. Montrym upheld Massachusetts' implied-consent suspension after an arrest supported by probable cause and a reported breath-test refusal, emphasizing the State's interest in highway safety and the reliability of that predicate. Here the predicate is disputed at its root, documented

with no speed stated in its own citation, contradicted by video, and judicially found materially false. The governmental interest in removing genuinely dangerous drivers is compelling; it has no application to keeping a sanction in place after the danger finding has collapsed. Mathews balancing on pleaded facts — maximum private interest, demonstrated error, trivial burden of review — favors Plaintiff, and at Rule 12 that is enough.

## D. 'Just following policy' is the violation as pleaded, not a defense to it

To dismiss the RMV on the ground that it mechanically processed a police referral would announce the rule Plaintiff warns of: any officer may retaliate against any citizen — even a citizen later found innocent, even on a citation that states no speed at all — by filing an immediate-threat referral, and no institution in the chain bears responsibility for looking at the referral, the report, the video, or the dismissal. The Constitution does not require the RMV to re-try every criminal case. It requires, on these pleaded facts, a meaningful opportunity to be heard on the predicate, a hearing within the time § 22 promises in which innocence is not declared irrelevant, and a mechanism that responds when a court finds the predicate materially false. Plaintiff alleges he received none of the three. The hardships are pleaded and ongoing: extreme financial hardship, mental- and physical-health stress, lost employment and CDL opportunity, a $500 reinstatement charge, and the continuing insurance consequences documented in Part XI — most recently Allstate North American Insurance Company's refusal, on information as of November 14, 2026, to offer him the coverage he requested at all (Part XI, New Exhibit G). Those are not inconveniences to be 'voided behind the shield of just following policy.' They are the damages and the ongoing injury that make the due-process and retaliation claims justiciable and plausible.

## VIII. The Massachusetts State Police — training, supervision, knowledge, and ratification

The Complaint pleads the State Police not as a bystander but as the institution responsible for training, supervision, and discipline, Compl. § III, that employed both troopers at the stop, that holds the body-camera footage, the police reports, and the RMV notification, and that — through Investigator John Banik and its internal review mechanisms — had actual or constructive knowledge that Sobrinho Silva's version was contradicted by footage and judicial findings, yet failed to correct, discipline, or withdraw the false reports. Compl. § IV.I; Exhibit H. Plaintiff's pleaded account adds what the Court must credit at this stage: the State Police knew of Sobrinho Silva's flawed and dangerous history and put her in the field anyway; it authorized or permitted the further violation of the RMV referral; and at any moment it could have held its officers accountable and told prosecutors the case was false, and instead doubled down with every other defendant in sustaining a false narrative of guilt.

That history is documented, and Plaintiffs append it. New Exhibit E, appended to this Opposition, is Trooper Sobrinho Silva's IAdata Incident List (generated April 10, 2025). It records an internal-affairs entry for ID Number 4833 classified 'Employee Conduct,' subclassification 'Attitude,' allegation 'Conduct': received December 11, 2023; finding 'FILED,' with a finding date of December 13, 2023; completed December 13, 2023; status 'Completed'; disposition 'Filed'; incident type 'Informal Resolution.' The investigation was therefore received on December 11, 2023 and concluded on December 13, 2023 — some sixteen months before the April 9, 2025 stop. The record predates Trooper Sobrinho Silva's May 28, 2026 name change and lists her as 'Sobrinho, Yasmin P.' A department that had already received and filed a conduct-and-attitude complaint against this trooper, and that nevertheless kept her on uniformed highway patrol, cannot describe her history as a surprise discovered in this litigation. At Rule 12

the IA record is pleaded as notice: the State Police knew this trooper had been cited for her conduct and attitude before April 9, 2025, and the failure-to-train, failure-to-supervise, and ratification allegations of § IV.I must be read with that notice in hand.

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | **A. The failure-to-train / supervision elements, applied** |

**Element (deliberate-indifference framework)**

**Pleaded application**

1. A constitutional violation by the employee

Fabricated report, false arrest, excessive force in forcible removal, religious interrogation, retaliatory RMV referral — Counts I, II, III, VI. Exs. A, C, F.

2. Notice to the institution

Body-camera footage in the State Police's own possession; the report's internal contradictions and a citation listing no speed; judicial not-credible and materially-false findings; Banik's involvement and emails (Ex. H); Trooper Sobrinho Silva's documented prior history — an IAdata Employee Conduct / Attitude entry received December 11, 2023 and filed December 13, 2023 (New Ex. E); Plaintiff's public complaints.

3. Deliberate indifference in training / supervision / discipline

Policies (b), (c), and (e) in § IV.I: failure to discipline or retrain troopers who fabricate; ratification of false narratives after bodycam contradicts them; no safeguards requiring review of exculpatory footage before sanctions. 'Systemic deficiencies in training, supervision, and accountability, demonstrating deliberate indifference.'

4. Moving-force causation

Had the false report been corrected or withdrawn, the downstream probation, parole, and RMV proceedings that relied on it across four systems — policy (d) — would have lost their predicate. The failure to correct is pleaded as the mechanism by which a roadside fabrication became a year of liberty and license deprivations.

5. Ratification

Continued reliance, and failure to withdraw, after the October 22, 2025 findings is ratification by the institution with final responsibility for the report. Ratification is pleaded in § IV.I in terms. The movants will press a doctrinal point on reply, and Plaintiffs meet it now. *Monell v. Department of Social Services*, 436 U.S. 658 (1978), governs municipal liability, and *Will* holds that a State and its agencies are not § 1983 "persons" for damages. That does not end the State Police claim. The same pleaded facts support (i) prospective relief under *Ex parte Young* against the responsible State Police official to correct and withdraw the false report and to stop its continued use; (ii) supervisory and failure-to-act claims against the individuals through whom the State Police acted, including Investigator Banik (sued individually and addressed outside Doc. 32) and the John Doe supervisors; (iii) the ADA and state-law claims addressed in Parts IV and X; and (iv) in the alternative, leave to amend to restate the institutional claim against the proper official defendants without changing a single operative fact. A pro se plaintiff's choice of the word "Monell" for a deliberate-indifference policy claim, in a complaint that pleads every

element of that claim, is at most a pleading-label defect curable under Rule 15. It is not a failure to allege facts, and it cannot support dismissal with prejudice of the State Police from every form of relief. The framework for deliberate indifference in training and supervision — a pattern or notice, a conscious failure to act, and causation, see *City of Canton v. Harris*, 489 U.S. 378 (1989); *Board of County Commissioners v. Brown*, 520 U.S. 397 (1997) — is pleaded here in substance, and discovery (training files, discipline history, internal review of the bodycam, and Banik's communications) is the mechanism the Rules provide for testing it.

The State Police also cannot separate itself from the stop by pointing to Sobrinho Silva as a rogue. The Complaint alleges the opposite of a rogue-actor case: the institution held the exonerating evidence, received judicial findings against its trooper's credibility, watched her refuse court summonses, and still left her report — whose own speed and tailgating allegations cannot both be true, Part II — in circulation as the predicate for three other systems' proceedings. An institution that could have stopped the harm by correcting its own record, and did not, is pleaded as a cause of the harm that followed — 'as responsible, if not more responsible,' in Plaintiff's words, as the arresting officers, because its correction was the one act that would have ended every downstream proceeding at once.

## IX. The Massachusetts Parole Board — the same false predicate, a liberty finding, and months on an ankle monitor

The Parole Board argument parallels probation, with its own governing law. Parole revocation is governed federally by Morrissey's two-stage protections and in Massachusetts by Mass. Gen. Laws ch. 127, § 149A and the Board's regulations at 120 Code of Massachusetts Regulations (CMR) 303.00. Those regulations structure the process the Board must follow: a parole violation report (303.02); notice of the preliminary hearing and the charges, with the

parolee's procedural rights and the possible actions, delivered at least 48 hours before the preliminary hearing (303.06); an evidentiary process at the preliminary hearing (303.10) and at the final revocation hearing (303.22), including disclosure of information and the right to request the presence of adverse witnesses (303.21); and revocation decisions with notice to the parolee (303.24–303.25). Two substantive limits frame the whole chapter: parole may be revoked only on the grounds 303.01 specifies, and '[r]evocation of parole status and further imprisonment shall occur after consideration of less severe sanctions and alternatives to confinement.' 120 CMR 303.01(2).

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | Plaintiff's pleaded account fixes what the Board did, and when. At a hearing on April 17, 2025, at 11:00 a.m., the Parole Board found Plaintiff White guilty of the violation. It placed a GPS bracelet on him, with a 10:00 p.m. curfew. He remained on that ankle monitor for months, until he eventually got off parole. In parallel, the Suffolk Superior Court Probation Department and the Boston Municipal Court Juvenile Probation Department placed travel restrictions on him and had him going in and out of the courthouse repeatedly, as Part VI pleads. Those are the concrete liberty deprivations produced on the false predicate, pleaded as facts the Court must |

| | |
|---|---|
| | |
| | credit at this stage. |

**Element**

**Pleaded application to the Parole Board**

1. Liberty interest and state action

Plaintiff was on parole; the Board conducted parole proceedings against him. Compl. § III.

2. Reliance on the same tainted predicate

The Board was in direct contact with the State Police and had access to all material — body-camera footage, the self-contradictory police report — alleging 95 mph on RADAR for Plaintiff alone, no other vehicle above 75 mph, yet tailing another vehicle at less than 1 car length (Part II; Ex. C ¶ 1) — and the citation listing no speed — yet proceeded.

3. A finding without the required evidentiary basis

Plaintiff alleges he was found in violation on that predicate — the functional equivalent, in parole, of a finding that cannot survive the reliability and proof requirements that due process and 120 CMR 303 impose — despite evidence pointing to innocence.

4. A severe sanction without the required consideration

Plaintiff faced confinement at Souza-Baranowski Correctional Center, Massachusetts' maximum-security prison, on his account. Although he was not sentenced to prison time, he was found guilty at a hearing on April 17, 2025, at 11:00 a.m., and placed on a GPS ankle-monitor bracelet with a 10:00 p.m. curfew, on which he remained for months until he eventually got off parole — a substantial liberty restriction that 303.01(2)'s less-severe-sanctions consideration and Morrissey's protections were designed to gate.

5. Injury

'Tremendous mental and physical pain, grief and stress,' financial struggle, employment and driving restrictions — all, Plaintiff alleges, preventable had the Board done its due diligence and examined clear evidence, as stated in the Verified Complaint. Compl. §§ IV.F–G; Ex. G.

6. Ratification / deliberate indifference

The Board 'affirmatively relied on those false reports despite readily available exculpatory evidence, thereby ratifying the unconstitutional conduct.' Compl. § IV.I.

The Board, like the probation departments, will characterize its hearing as a process duly held. The claim is not that no hearing occurred. The claim is that a hearing built on a materially false report, conducted with access to the video that disproved it, ending in a violation finding at the April 17, 2025 hearing and months of GPS electronic monitoring under a 10:00 p.m. curfew for a man facing maximum-security confinement on a citation that states no speed at all, is a hearing in name only. Morrissey requires more than a room and a gavel: it requires disclosure of the evidence, a genuine opportunity to contest it, and a decision on evidence that can bear the weight of a liberty deprivation. Whether the Board's file shows that it reviewed the footage, disclosed it, and weighed the citation is a discovery question. The Complaint plausibly alleges it did not, and that allegation must be credited.

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | **X. Count by count — every element, against the Doc. 32 defendants** |

The Complaint pleads ten counts. Compl. § V. The movants addressed none of them count by count; they asserted globally that no facts support any of them. The table below does the work the motion omitted. It states the governing elements in summary form and the Complaint allegations that plausibly satisfy each as to one or more Doc. 32 defendants. A claim that clears the standard as to prospective relief, or as to any Doc. 32 defendant, may not be dismissed wholesale.

**Count**

**Elements (summary)**

**Pleaded as to Doc. 32 defendants**

I — Fourth Amendment, § 1983 (unreasonable seizure / false arrest)

State action; seizure; absence of probable cause; personal or institutional causation

Probation, parole, and RMV proceedings extended the April 9 seizure into months of GPS, curfew, compelled appearances, and monitoring on a predicate without probable cause (no speed stated in the citation; no contraband; video). Institutional reliance and failure to withdraw the report caused the continuation.

II — Excessive Force, § 1983

Force in effecting seizure; unreasonableness under Graham v. Connor

Directed principally at the troopers at the stop (forcible removal; Tobin gripping firearm). As to Doc. 32 defendants, pleaded through ratification and through the physical burdens of prolonged GPS / ankle monitoring imposed and maintained on a false predicate; Plaintiffs preserve the count and, in the alternative, seek leave to clarify its allocation among defendants.

III — Malicious Prosecution, § 1983

Proceedings initiated / continued without probable cause; favorable termination; malice / reckless disregard, Thompson v. Clark, 596 U.S. 36 (2022)

Criminal charges dismissed Oct. 22, 2025 on materially false information — favorable termination pleaded with a judicial finding. Probation and parole violations were parallel proceedings initiated and continued on the same predicate and, Plaintiff alleges, later dismissed. The RMV sanction is the administrative continuation of the same prosecution narrative.

IV — Fourteenth Amendment Due Process

Protected life / liberty / property interest; deprivation; process that was due and not given (procedural), or conduct that shocks the conscience / deliberate fabrication (substantive)

The core count against every Doc. 32 defendant: probation liberty (Part VI), parole liberty (Part IX), license property (Part VII), each taken or kept on knowingly false evidence without a meaningful hearing. Fabricating and knowingly reusing false evidence states substantive due process under Mooney and Limone.

V — ADA, 42 U.S.C. § 12132

Qualified individual with a disability; public entity; exclusion from or discrimination in services / programs / activities by reason of disability; deliberate indifference where damages are sought

Plaintiffs are individuals with mental-health disabilities; Plaintiff White is a DMH client. Compl. § IV.D. The stop was escalated despite visible distress; proceedings that took liberty and license were conducted, Plaintiff alleges, without accommodation of known mental-health and cognitive disabilities, causing panic attacks and acute harm. The probation, parole, and RMV processes are public-entity programs / activities. Georgia analysis: Part IV.C.

VI — First Amendment Retaliation and Religious Discrimination

Protected speech / religious exercise; adverse action likely to chill; causal connection; for religion, burden or discrimination motivated by religious identity

Public posts about the arrest (Ex. L) followed within days by the RMV referral and suspension (Exs. D, E); religious interrogation in transport (Ex. F); a Black Islamic plaintiff stopped and questioned about his religion, Compl. §§ IV.B, IV.E. The RMV mechanism is pleaded as the retaliatory instrument, policy (f).

VII — MCRA, ch. 12, §§ 11H–11I

Interference or attempted interference with secured rights by threats, intimidation, or coercion

Months of compelled court appearances, GPS, curfew, monitoring, and license loss, maintained after exoneration was in the defendants' hands, plausibly plead coercive interference with the rights secured by the Fourth and Fourteenth Amendments and the Massachusetts Declaration of Rights. Plaintiffs preserve the count, including against any defendant the Court holds is a 'person' under the MCRA, and ask that any immunity-based disposition be without prejudice to the individual-capacity MCRA claims pending elsewhere in this case.

VIII — Defamation and False Light

False statement published to third parties; fault; harm

Sobrinho Silva's report — the defamatory instrument — was republished across systems: to the clerk-magistrate, probation, parole, and the RMV, and it lives on in the RMV record that insurers now read. Institutional defendants are pleaded as republishers / ratifiers who kept the false statement in circulation after judicial findings of falsity, with reputational and professional harm documented by Ex. K (Emmy / Murrow standing) and § IV.G (lost licensing, sponsor, speaking, and booking opportunities). MTCA disposition, if any, should be without prejudice: Part IV.D.

IX — Intentional Infliction of Emotional Distress

Extreme and outrageous conduct; intent / knowledge; causation; severe distress

Knowingly sustaining a false prosecution, liberty proceedings, monitoring, and a license suspension for the better part of a year against a known DMH client, after judges found the predicate not credible, plausibly pleads outrageousness. Severe distress is documented, not merely asserted: panic attacks, PTSD symptoms, night terrors, asthma complications, hair loss. Compl. § IV.G; Ex. I. MTCA disposition, if any, without prejudice: Part IV.D.

X — Cruel and Unusual Punishment, § 1983

Punishment inflicted without lawful justification; deliberate indifference

Plaintiffs plead Count X as in the Complaint. To the extent the Court holds the Eighth Amendment applies only after conviction, Plaintiffs ask that the same pleaded conduct — punitive GPS, curfew, monitoring, and confinement exposure imposed and maintained on a false predicate — be assessed under the Fourteenth Amendment standards pleaded in Count IV, which govern the liberty of persons in Plaintiff's posture, and for leave to amend the count's caption accordingly rather than dismissal of the conduct.

## Massachusetts constitutional claims — preserved and pleaded in the alternative

In addition to the federal counts, the Complaint invokes Massachusetts law, including the MCRA (Count VII) and, as Plaintiff directs the Court's attention, violations of the Massachusetts Declaration of Rights — including Article 12 (no subject shall be deprived of liberty or property but by the judgment of his peers or the law of the land) and Article 14 (freedom from unreasonable searches and seizures) — arising from the same pleaded facts. Those state constitutional claims are within the Court's supplemental jurisdiction, 28 U.S.C. § 1367(a), share a common nucleus of operative fact with the federal claims, and should not be dismissed on a motion that never addresses them. If the Court declines supplemental jurisdiction over any state claim it dismisses on immunity grounds, Plaintiffs ask that the dismissal state that ground and be without prejudice to refiling in the Superior Court.

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | **XI. Additional RMV evidence — the violation is continuing, and the insurance market is applying it today** |

Plaintiff White directs the Court to additional evidence of ongoing harm from the RMV record, which he asks leave to add as exhibits to an amended or supplemented pleading and which, in any event, establishes his standing to seek the prospective relief in Part IV.B. Plaintiffs describe each item for exactly what it shows, and no more. New Exhibits B, C, and G below are appended to this Opposition, as are Exhibit C (the police report, Part II), New Exhibit E (the IAdata record, Part VIII), and New Exhibit F (Plaintiff White's SP-340 Public Response Form complaint to the State Police), so that the Opposition and its attachments print as a single package. New Exhibit G — Allstate North American Insurance Company's declination letter, information as of November 14, 2026, which Plaintiff received and provided on November 22, 2026 — is taken up in the subsection that follows the table below.

**New exhibit**

**What the document shows on its face**

**What Plaintiff alleges it means — to be proved**

A — RMV / citation record screenshot (provided Nov. 22, 2026)

Two citations, both with violation date April 9, 2025: Citation No. 330121AD and Citation No. 329626AD. Each shows Hearing Requested: (blank), Late Fees: 0.00, Citation Fees: 0.00, 'Pay: Not Payable Online.'

The April 9 citations remain on Plaintiff's record. Plaintiff alleges he was found not responsible for the speeding citation associated with the case and that the criminal charges were dismissed, yet the record was not cleared.

B — MyRMV reinstatement receipt

January 12, 2026, 5:55 PM; Confirmation Number 1-238-220-432; Reinstatement Fee $500.00; Total Paid $500.00; credit / debit card.

Corroborates Compl. §§ III, IV.E: the RMV required and Plaintiff paid $500 to reinstate a license suspended on the false predicate.

C — Foremost Insurance quote worksheet (AAA Northeast)

Quote No. Q54-1066190-00; quote date November 9, 2026; 2008 Mercedes-Benz C 300; 6-month total policy premium $5,033.00; installment options including $841.32 per installment (34% down plan) and $848.49 per installment (selected 16.7% down plan). The worksheet does not itself state the reason for the rate.

Plaintiff alleges this — at roughly $841 per month on the installment figures — is the only coverage practically available to him, against approximately $270 per month he previously paid, because other insurers refuse him due to the citation. The worksheet proves the price he was quoted; his allegation, and the GEICO conversation below, supply the asserted reason, which discovery and testimony will test.

D — GEICO conversation (flash drive, as described by Plaintiff)

Plaintiff states he has included, on a flash drive, a conversation with GEICO in which GEICO states the offense remains on his driving record, will remain for the next 10 years, refuses insurance on that basis, and states that only the RMV can remove it. Plaintiffs have not attached a transcript in this Opposition and do not ask the Court to treat Plaintiff's description as the recording itself.

If proved as described, the conversation establishes (i) the citation's continuing presence, (ii) a 10-year horizon of harm, (iii) refusal of coverage by reason of the citation, and (iv) that the remedy lies exclusively with the RMV — i.e., with a Doc. 32 defendant, through the prospective relief Plaintiffs seek. Plaintiffs ask leave to lodge the recording and a transcript in the form the Court directs.

G — Allstate North American Insurance Company declination letter (provided Nov. 22, 2026)

Letter addressed to Plaintiff White; information as of November 14, 2026; Offer ID 3a031eba-1469-49f2-993d-d98a4195a379. Headline: 'We're unable to offer the insurance you've requested.' Allstate states that, based on the consumer information it obtained, it was 'unable to offer the specific coverage you requested at this time,' and that its 'decision was based at least partially on information we obtained from the following source(s): LexisNexis Risk Solutions.' The enclosed notices (X73969 (10/20); XF25 (10/23)) state that Allstate 'was unable to offer you a policy due to information obtained from your consumer report(s),' and advise Plaintiff of his right to a free copy of the LexisNexis report within 60 days and to dispute its accuracy under the Fair Credit Reporting Act. The letter does not name the RMV and does not recite the contents of the LexisNexis report.

Another national carrier refusing Plaintiff the coverage he requested, acting on a consumer report. Plaintiff alleges the report rests on the RMV driving record that still carries the April 9, 2025 citations from the dismissed case — the same record behind the GEICO refusal and the Foremost price in New Exhibits C and D — and that only the RMV, a Doc. 32 defendant, can correct that record. The LexisNexis report Plaintiff is entitled to obtain under the enclosed notice, and discovery, are what will test that allegation.

## New Exhibit G — Allstate's refusal: another insurer acting on the same record

New Exhibit G, appended to this Opposition, is the declination letter of Allstate North American Insurance Company (Offer ID 3a031eba-1469-49f2-993d-d98a4195a379; information as of November 14, 2026), addressed to Plaintiff White at [REDACTED]. Its headline states the decision in terms: 'We're unable to offer the insurance you've requested.' Allstate states that, '[b]ased on the consumer information we obtained, we were unable to offer the specific coverage you requested at this time,' that its decision followed 'a thorough assessment' of consumer reports and of information Plaintiff provided, and that its 'decision was based at least partially on information we obtained from the following source(s): LexisNexis Risk Solutions.' The enclosed 'Things You Should Know' notices (Forms X73969 (10/20) and XF25 (10/23)) confirm that Allstate 'was unable to offer you a policy due to information obtained from your consumer report(s),' and advise Plaintiff of his rights under sections 611 and 612 of the Fair Credit Reporting Act to obtain a free copy of the LexisNexis report within 60 days of the notice and to dispute the accuracy of any information in it.

Plaintiffs describe the letter for exactly what it shows, and no more. The letter does not name the RMV, and it does not recite what the LexisNexis report contains. What Plaintiff alleges — to be proved through the LexisNexis report he is entitled to obtain under the very notice Allstate

enclosed, and through discovery — is that the consumer reporting on which insurer after insurer acts is built on the driving record the RMV maintains and has not corrected: the April 9, 2025 citations (Nos. 330121AD and 329626AD, New Exhibit A), arising from charges the Dudley District Court dismissed on October 22, 2025, on its finding that Trooper Sobrinho Silva submitted materially false information. On that allegation, the letter is the pattern repeating itself in documentary form. GEICO, on Plaintiff's account of the recorded conversation, refused him coverage and pointed to the record and to the RMV as the only institution that can remove it (New Exhibit D). Foremost would write him only at $5,033 for six months (New Exhibit C). And now Allstate, another national carrier, will not offer him the coverage he requested at all. The Commonwealth's record is doing in the insurance market today what the suspension did in 2025: it is keeping Plaintiff White from driving lawfully and affordably, long after the case behind it was dismissed.

That is why the letter belongs against the RMV, and why only the RMV can answer it. Allstate did not create the record it acted on, and LexisNexis reports records it does not control. The one institution that entered the April 9 citations, suspended the license on the false predicate, charged $500 to reinstate it, and still maintains the record is a Doc. 32 defendant. Each new refusal is a fresh, concrete injury fairly traceable to that uncorrected record and redressable by the prospective correction Plaintiffs seek under Ex parte Young (Part IV.B): so long as the record stands, Plaintiff alleges, the refusals will keep arriving — from Allstate in November 2026, and from the next carrier after that. A record that is still costing a man his insurance more than a year after the underlying charges were dismissed because the evidence was materially false is not a closed 2025 transaction. It is the ongoing violation, documented as it happens.

The legal significance is standing and remedy, as much as damages. A plaintiff who alleges a past suspension, fully paid off and expunged, might face an argument that injunctive relief is speculative. That is not this plaintiff. On his allegations, every insurance application he makes for the next decade will re-encounter a citation he already beat — a citation arising from charges a court dismissed because the evidence was materially false. Dismissing the RMV would not merely deny compensation for 2025. It would leave the only institution that can correct the record under no obligation to do so, and would tell every citizen in Plaintiff's position that an allegation, once entered, outlives its own disproof. The Court should not read the Eleventh Amendment, Rule 12, or any doctrine of administrative deference to compel that result where Ex parte Young supplies a prospective remedy.

## XII. Jurisdiction and venue are pleaded and satisfied

Subject-matter jurisdiction rests on 28 U.S.C. § 1331 (federal questions under 42 U.S.C. § 1983, the ADA, and the First, Fourth, Eighth, and Fourteenth Amendments) and 28 U.S.C. § 1343 (civil rights), with supplemental jurisdiction over the Massachusetts claims under 28 U.S.C. § 1367. Compl. § II. Venue is proper under 28 U.S.C. § 1391(b) because all events occurred in Massachusetts. Every Doc. 32 claim arises in this District, from a stop in Massachusetts, by Massachusetts troopers, processed by Massachusetts probation, parole, and RMV systems, and reviewed by Massachusetts courts whose findings are Exhibit B. No movant disputes venue or personal jurisdiction. The only jurisdictional dispute is immunity, and Part IV shows why immunity, properly scoped, does not end the case.

## XIII. If the Court finds any gap, the remedy is leave to amend — not dismissal with prejudice

Federal Rule of Civil Procedure 15(a)(2) directs that the Court 'should freely give leave [to amend] when justice so requires.' That direction carries special force for pro se litigants, whose complaints must be read liberally and who should ordinarily be afforded an opportunity to cure a pleading defect that is curable. Plaintiffs have identified, defendant by defendant, the only cures that could conceivably be needed: (1) naming the Registrar, the State Police Superintendent, the Parole Board Chair, and the Commissioner of Probation in their official capacities for prospective relief under Ex parte Young; (2) restating the State Police deliberate-indifference claim's label to match its pleaded elements; (3) clarifying the allocation of Counts II and X among defendants and, for Count X, its Fourteenth Amendment basis; and (4) adding the Part XI RMV exhibits; ; (5) clarifying the allocation of the damages prayer in Part XIV — compensatory damages against all defendants in the forms the law allows, and punitive damages against the individual defendants in their individual capacities; and (6) clarifying the alternative negligence allegations in Part XV. None of those changes adds a new occurrence or a new defendant in substance. All of them were foreseeable from the Complaint as filed. If the Court is inclined to grant any part of Doc. 32, Plaintiffs respectfully ask that it be granted only with leave to amend within the time the Court sets, and that the December 15, 2026 opposition schedule for the remaining motions (Docs. 52–54) not be converted, by a dismissal with prejudice here, into a forfeiture of claims the Complaint plausibly pleads.

## XIV. Damages — compensatory damages against all defendants, and punitive damages against the individuals

Plaintiff White directs the Court's attention to the relief the Complaint actually prays for, because Doc. 32 asks for dismissal of the case without ever addressing it. The Prayer seeks compensatory

damages, punitive damages, declaratory and injunctive relief including correction of Plaintiff White's driving record, and any further relief deemed just. Compl. § VI. As pleaded, Plaintiff White seeks $100 million in compensatory damages and $100 million in punitive damages, and Plaintiff Northcross seeks $3 million in compensatory damages and punitive damages. Plaintiffs address damages here for three reasons. First, no part of Doc. 32 carries a basis to strike, cap, or dismiss the damages prayer at the pleading stage. Second, compensatory damages are pleaded — with specific, documented injuries — against every defendant, through every channel the law allows, and a ruling that one channel is closed as to one defendant does not close the others. Third, punitive damages are pleaded against the individual defendants whose conduct the Complaint alleges was knowing, reckless, and callously indifferent, and the pleaded facts meet the governing standard for submitting punitive damages to a jury. Nothing in the Eleventh Amendment analysis in Part IV, and nothing the movants have argued, extinguishes that prayer.

## A. Rule 12 does not decide damages, and the prayer may not be struck on a motion to dismiss

A motion to dismiss tests whether a claim is plausibly pleaded, not what the claim is worth. Compensatory damages under 42 U.S.C. § 1983 are governed by principles of tort compensation: a plaintiff who proves a constitutional deprivation recovers for the actual injury caused by it, including out-of-pocket loss, physical injury, and mental and emotional distress proved in evidence. Carey v. Piphus, 435 U.S. 247, 257–59, 264 (1978); Memphis Community School District v. Stachura, 477 U.S. 299, 306–07 (1986). Whether an injury occurred, what caused it, and what it is worth are questions of proof for summary judgment and trial, on a record that does not yet exist. The movants have identified no allegation that is undamaged as a matter of law, no count for which damages are categorically unavailable in every form pleaded, and no basis under Rule 12(b)(6) — still less under the disfavored standard for striking matter under Rule 12(f) —

to delete a prayer for relief from a verified complaint. If any damages ruling is made at this stage at all, it should be limited to the specific defendant, capacity, and claim the ruling addresses, and should state expressly that it does not strike the damages prayer as to any other defendant, capacity, or claim.

## B. Compensatory damages are pleaded against every defendant — injury by injury, on a pleaded causal chain

The Complaint does not plead damages in the abstract. Section IV.G (Compounding Harm) and the exhibits plead a concrete injury inventory, each item tied to a pleaded act by one or more defendants, and Plaintiffs ask that compensatory damages be preserved against all defendants to the full extent each defendant's pleaded conduct caused them:

- Liberty taken and restricted for months: repeated compelled court appearances — two to three times a month for the better part of a year, on Plaintiff White's account — together with GPS monitoring, curfews, travel restrictions, months on a GPS ankle monitor with a 10:00 p.m. curfew in the parole proceedings, after the Board found him guilty at a hearing on April 17, 2025, and exposure to confinement at Souza-Baranowski Correctional Center on a predicate Plaintiff alleges was false. Compl. § IV.G; Ex. G.
- Money paid and money lost: the $500 RMV reinstatement fee, documented by the MyRMV receipt of January 12, 2026 (confirmation number 1-238-220-432) in Part XI; vehicle registration cancellation (Ex. J); and lost employment, including a paid-for CDL preparation path and mental-health employment requiring a valid license, lost because the license was suspended and an open case was carried. Compl. § IV.G.
- Continuing economic injury in the insurance market: the April 9, 2025 citations (Nos. 330121AD and 329626AD) remain on Plaintiff White's driving record; Plaintiff alleges insurers refuse him coverage because of the citation, that the only coverage practically

available was quoted at a 6-month total of $5,033.00 (Foremost Quote No. Q54-1066190-00, at roughly $841 per month on the installment figures) against approximately $270 per month he previously paid, and that GEICO told him the offense will remain on his record for the next 10 years and that only the RMV can remove it. Allstate North American Insurance Company has now likewise refused to offer him the coverage he requested, stating that its decision was based at least partially on a LexisNexis Risk Solutions consumer report (letter, information as of November 14, 2026). Part XI, New Exhibits A, C, D, and G.

- Physical and mental-health injury: panic attacks, PTSD symptoms, night terrors, asthma complications, hair loss, skin breakouts, and physical pain, documented in Exhibit I (mental-health documentation) and pleaded in §§ IV.D and IV.G — injuries inflicted on a plaintiff whose severe mental-health and cognitive disorders and DMH-client status were known and visible.
- Reputational and professional injury: the false report republished to a clerk-magistrate, probation, parole, and the RMV, and still circulating in the driving record insurers read, against the professional standing documented in Exhibit K, with lost licensing, sponsor, speaking, and booking opportunities pleaded in § IV.G.
- Harm to Plaintiff Northcross: held on scene, threatened, left not free to leave in any meaningful sense, and stranded for hours without transportation or shelter, Compl. § IV.C — a seizure and its consequences for which he separately seeks compensatory and punitive damages.

Causation is pleaded as a chain with no missing link, and every Doc. 32 defendant is a link in it. The State Police employed, trained, and supervised the troopers, held the body-camera footage,

and failed to correct or withdraw the report (Part VIII). The probation departments initiated and continued the liberty proceedings on it (Part VI). The Parole Board made a violation finding on it and imposed monitoring (Part IX). The RMV suspended the license on it, refused to revisit the suspension after exoneration, charged $500 to end it, and still maintains the record that produces the insurance injury today (Parts VII and XI). An injury that required every link to hold is compensable against each defendant whose pleaded conduct was a cause of it, in the form that defendant's capacity allows: retrospective compensatory damages against the individual defendants in their individual capacities; compensatory damages under Title II of the ADA to the extent the United States v. Georgia analysis in Part IV.C sustains them; compensatory damages on the Massachusetts claims in this Court under supplemental jurisdiction or, if the Court directs any such claim to the Superior Court, without prejudice there (Part IV.D); and, against the responsible officials in their official capacities, the prospective relief in Part IV.B that stops the injury from continuing to accrue. Plaintiffs seek compensatory damages against all defendants in that full sense, and ask the Court to deny Doc. 32 insofar as it would be read to cut off any of those channels without the claim-by-claim, defendant-by-defendant analysis the motion never performs.

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | **C. Punitive damages against the individual defendants — the Smith v. Wade standard is plausibly met on the pleaded facts** |

Punitive damages under § 1983 are governed by Smith v. Wade, 461 U.S. 30 (1983). A jury may assess punitive damages against an individual defendant 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' Id. at 56. The threshold is culpability, not the amount of compensatory loss: punitive damages punish the wrongdoer and deter others from the like conduct, and they may be awarded on the reckless-or-callous-indifference prong without proof of subjective malice. At Rule 12, Plaintiffs need only plausibly plead conduct from which a jury could find that standard met. They have pleaded far more than the minimum, individual by individual:

**Individual defendant**

**Pleaded conduct from which a jury could find evil motive or reckless / callous indifference**

Trooper Yasmin Sobrinho Silva

Fabrication of material evidence in the police report, contradicted by body-camera footage and by the report's own associated citation, which lists no speed at all; false statements found materially false by the Dudley District Court on October 22, 2025; testimony found not credible by multiple judges; interrogation of a handcuffed plaintiff about whether he was Christian or

Catholic; an RMV immediate-threat referral made about two days after the stop and, as pleaded, only after she viewed Plaintiff's social-media posts complaining about the arrest; and refusal to appear on court-ordered summonses, prolonging every proceeding; the report's own speed and tailgating allegations cannot both be true (95 mph on RADAR, alone, against traffic at no more than 75 mph, yet less than 1 car length behind another vehicle), Part II; Ex. C ¶ 1. Compl. §§ IV.B–F; Exs. A, B, C, E, F, L.

Trooper Christopher Tobin

Participation in the stop and arrest standing gripping his firearm in a threatening posture, and in the forcible removal, handcuffing, and arrest of Plaintiff White without lawful justification, with no weapons or contraband found. Compl. § IV.C; Ex. A.

Probation Officer Melinda Riordan and Probation Officer Curby

Initiating and continuing violation proceedings for the better part of a year on the false predicate after the body-camera footage was available, in proceedings Plaintiff alleges continued even after Riordan and her superior acknowledged in court that the officer was wrong and apologized for the false charges. Compl. § III; Part VI.B; Ex. G. (Addressed in full in the opposition to Doc. 36; preserved here so that no ruling on Doc. 32 is read to reach it.)

State Trooper Investigator John Banik

Actual or constructive knowledge, through supervisors and internal review, that Sobrinho Silva's version was contradicted by body-camera footage and judicial findings, and failure to correct, discipline, or withdraw the false reports — the failure that left the false predicate in circulation for probation, parole, and the RMV to use. Compl. § IV.I; Ex. H.

John Does 1–10 (Suffolk Superior Probation Supervisors)

Supervisory continuation and ratification of the violation proceedings on evidence known to be contradicted, as the supervisors responsible for the Suffolk Superior proceedings pleaded in the Complaint. Compl. §§ III, IV.I.

Each Smith v. Wade marker is present in the pleading taken as true. Knowledge: the defendants are alleged to have possessed the body-camera footage, the citation listing no speed, and, after October 22, 2025, judicial findings that the originating evidence was materially false and its author not credible. Continuation after knowledge: the probation, parole, and RMV consequences were not a single mistaken act but were sustained, re-imposed, and refused correction over months. A statement of indifference in terms: Plaintiff alleges he was told on his RMV call, preserved in Exhibits E and M, that regardless of whether he was innocent, his license would remain suspended — a pleaded declaration that innocence was irrelevant, which is callous indifference stated in words. Retaliatory timing: the license mechanism was used only after protected speech, Compl. § IV.E and policy (f) in § IV.I, from which a jury could infer the evil-motive prong as well. And a vulnerable plaintiff: the proceedings were sustained against a known DMH client with severe mental-health and cognitive disorders, Compl. § IV.D. A jury that credited the Verified Complaint could find reckless or callous indifference as to each individual defendant. That is all Rule 12 requires, and it requires denial of any request to dismiss the punitive prayer.

## D. The limits on punitive damages define where they run — they do not erase them, and they give the Doc. 32 movants nothing

Punitive damages under § 1983 run against officials in their individual capacities, and Plaintiffs seek them against the individual defendants. The reasoning of *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), confirms that punitive damages are a personal remedy aimed at the culpable individual, not a tax on the public fisc. Whether punitive damages may also run against

a State or state agency, or against an official in his official capacity, is a question Plaintiffs preserve for the Court to decide on *Will*, 491 U.S. at 71, and *Kentucky v. Graham*, 473 U.S. at 165–66. Whether punitive damages are available under Title II of the ADA is likewise for the Court to decide on *Barnes v. Gorman*, 536 U.S. 181, 187–89 (2002). Plaintiffs preserve punitive damages on their Massachusetts claims to the extent Massachusetts law authorizes them against the individuals responsible.

Those limits give the Doc. 32 movants no relief they have earned, for four reasons. First, Doc. 32 was filed for agencies; the punitive prayer runs against individuals who are defendants in this same case — Sobrinho Silva, Tobin, Riordan, Curby, Banik, and John Does 1–10 — and whose motions, if any, are separate (Docs. 36 and, as counsel have stated they intend, later filings). An order granting Doc. 32 should not be written, and Plaintiffs ask that it not be read, to strike or prejudice the punitive claims against any individual defendant. Second, the individuals acted through the agencies: the pleaded ratification, failure to correct, and continuation that make the agencies proper defendants for prospective relief (Part IV.B) are the same pleaded facts that establish the individuals' knowledge for Smith v. Wade, so the agencies cannot obtain a merits finding that 'nothing happened' without deciding the individuals' culpability in their absence. Third, if the Court holds that the Complaint's prayer allocates punitive damages imperfectly among defendants and capacities — a label-and-allocation question of the kind liberal construction and Rule 15 exist to cure — Plaintiffs ask for leave to amend to state the allocation in terms: punitive damages against each individual defendant in his or her individual capacity, in the amounts prayed for in § VI, and compensatory damages against all defendants as set out in Part XIV.B. Fourth, the size of the prayer is not a pleading defect. The amounts in § VI will be tested, if liability is proved, by the jury under Smith v. Wade and by post-verdict review under

the reprehensibility, ratio, and comparable-penalties guideposts that govern excessiveness review of an award actually made. No award has been made. There is nothing to review, cap, or remit at Rule 12, and the movants cite no authority for previewing that review on the pleadings.

In short: compensatory damages are sought against all defendants, in every form the law allows as to each, and punitive damages are sought against the individuals whose pleaded conduct — fabrication, knowing reuse of false evidence, continuation after judicial findings of falsity, and retaliation through an administrative lever — is exactly the conduct Smith v. Wade makes punishable. Plaintiffs ask the Court to deny Doc. 32 insofar as it seeks dismissal of any damages claim beyond the specific retrospective-damages-against-the-Commonwealth ruling Part IV already addresses, to preserve both prayers in full, and in the alternative to grant leave to amend the allocation as described above.

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | **XV. Negligence — pleaded in the alternative as to every Commonwealth defendant** |

Plaintiffs plead knowing and deliberate conduct, and Parts V through XIV are written on that pleading. In the alternative, and without conceding anything about knowledge, the same facts

plead negligence, and Plaintiffs ask that the negligence showing not be lost in the immunity argument. Each Doc. 32 defendant owed Plaintiff White a duty of reasonable care in handling the evidence on which his liberty and his license depended; each is alleged to have breached that duty by failing to look at what it already held; and the harm that followed is the same pleaded chain. A defendant that did not know the report was false was, at a minimum, careless with the body-camera footage, the citation that records no speed, and a report whose own numbers cancel each other out — and carelessness of that kind, sustained over months, is not a basis for dismissal either.

**Defendant**

**Duty of reasonable care, as pleaded**

**Breach pleaded in the alternative**

Massachusetts State Police

To train, supervise, and retain troopers with reasonable care, and to correct or withdraw its own reports when they are shown to be unreliable.

Negligent training, supervision, and retention of a trooper already cited for conduct and attitude in December 2023 (New Ex. E); negligent failure to review the body-camera footage and correct or withdraw the report.

Probation departments (Suffolk Superior; BMC Juvenile)

To exercise reasonable care before initiating and while continuing proceedings that restrict liberty, including reviewing the predicate evidence the department holds.

Negligent initiation and continuation of violation proceedings for months without reviewing the video, the citation recording no speed, or the report's contradictions, and negligent failure to use the termination and withdrawal exits the Rules provide.

Massachusetts Parole Board

To exercise reasonable care in examining the evidence before making a violation finding that restricts liberty.

Negligent failure to examine the body-camera footage, the police report, and the citation before the April 17, 2025 finding, the GPS bracelet, and the 10:00 p.m. curfew that followed.

Registry of Motor Vehicles

To exercise reasonable care before acting on a police referral, and in maintaining and correcting the driving record it controls.

Negligent acceptance of the referral without review of the report or citation; negligent failure to correct the record after the charges were dismissed and the citation resolved in Plaintiff's favor, leaving the entry to be used against him in the insurance market (Part XI).

Commonwealth of Massachusetts

To exercise reasonable care, through the agencies above, in the systems that took and kept Plaintiff's liberty and license.

The breaches above, pleaded against the Commonwealth through its agencies to the extent Massachusetts law permits.

Two points on the negligence pleading. First, negligence is pleaded in the alternative: it does not dilute the deliberate-indifference and knowledge allegations, and Plaintiffs do not ask the Court to choose between them at Rule 12. Second, negligence claims against the Commonwealth and its agencies are governed by the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, including its presentment requirement and exclusions; Plaintiffs preserve the negligence claims as pleaded, and to the extent the Court holds that any negligence claim belongs in the Superior Court, Plaintiffs ask that it be dismissed without prejudice, for the reasons in Part IV.D, and not

resolved on the merits here. What the movants may not have is a dismissal of the knowing-conduct claims that silently disposes of the negligence alternative with them.

## Conclusion

The Commonwealth Defendants ask the Court to hold that a verified, exhibit-backed complaint — alleging a stop contradicted by body camera, a report contradicted by its own citation, which lists no speed at all, and by its own terms — 95 mph on RADAR for Plaintiff alone, no other vehicle above 75 mph, yet tailing another vehicle at less than 1 car length — a religious interrogation, a license suspended days after protected speech and kept suspended after dismissal, probation and parole proceedings sustained for months on evidence Massachusetts law required to be proved by a preponderance and to be reliable, and judicial findings that the originating evidence was materially false and its author not credible — pleads nothing at all about the institutions that carried that narrative into four legal systems and kept it there. Taken as true, as the law requires, and read liberally, as pro se pleading requires, it pleads a great deal — including the documented injuries that support compensatory damages against all defendants and the knowing, continued use of false evidence that supports punitive damages against the individuals, Part XIV. The motion should be denied.

**WHEREFORE, Plaintiffs respectfully request that the Court:**

1. DENY the Commonwealth Defendants' Motion to Dismiss (Doc. 32);
2. In the alternative, DENY the motion as to all claims for prospective declaratory and injunctive relief, including correction of Plaintiff White's driving record, and as to Count V pending the claim-by-claim analysis required by United States v. Georgia;

3. To the extent any claim is held misdirected against a Commonwealth agency, SEVER that claim and GRANT leave to amend under Rule 15(a)(2) to name the responsible officials in their official capacities and to add the exhibits identified in Part XI;
4. Order that any dismissal of a state-law claim on Massachusetts Tort Claims Act grounds be WITHOUT PREJUDICE to refiling in the Massachusetts Superior Court;
5. PRESERVE the damages pleaded in the Complaint (Part XIV): compensatory damages against all defendants in every form the law allows as to each, and punitive damages against the individual defendants in their individual capacities under Smith v. Wade, 461 U.S. 30 (1983); DENY any request to strike, cap, or dismiss the damages prayer at the pleading stage; and ORDER that no ruling on Doc. 32 strike or prejudice the punitive-damages claims against Trooper Sobrinho Silva, Trooper Tobin, Probation Officers Riordan and Curby, Investigator Banik, or John Does 1–10;
6. To the extent the Court finds the damages prayer's allocation among defendants and capacities requires clarification, GRANT leave to amend under Rule 15(a)(2) to state that allocation in terms, without dismissing any damages claim with prejudice;
7. Set a hearing on the motion; and
8. Grant such other and further relief as the Court deems just.

*Respectfully submitted,*

______________________________

Onyx White, Plaintiff, Pro Se

50 Causeway Street, Apt. 708, Boston, MA 02114

ogtlwhite3@gmail.com

(857) 247-9359

Date: ~~December 15~~ 11-24, 2026

____________________________________

Sincere Northcross, Plaintiff, Pro Se

Address: ___________________________

Telephone: 857-995-34-37

Email: Northcross728@gmail.com

Date: 11/24/26

## Certificate of service

I, Onyx White, certify that on ~~December 15~~ 11 24, 2026, I served a true copy of this Opposition on counsel for the Commonwealth Defendants, Attorney Dayana Donisca, Massachusetts Attorney General's Office, and on counsel for all other defendants of record, by the method indicated in the Court's electronic filing / service records for this action, or by first-class mail where electronic service is not available to a pro se filer.

____________________________________

Onyx White, Plaintiff, Pro Se

## Appendix — authorities and standards relied on

### Federal cases

- Alfano v. Lynch, 847 F.3d 1 (1st Cir. 2017) — probable cause as hornbook Fourth Amendment law.
- Bell v. Burson, 402 U.S. 535 (1971) — license as protected interest; fault may not be excluded from the required hearing.